## EXHIBIT 1

***PROPOSED ORDER APPROVING (A) BIDDING PROCEDURES, (B) THE FORM AND MANNER OF NOTICES, (C) SALE AGREEMENTS WITH STALKING HORSE BIDDER; AND (D) SCHEDULING AN AUCTION, A SALE HEARING, AND ESTABLISHING DATES AND DEADLINES RELATED THERETO***

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE:                                                    Case No.:

HIGH RIDGE MANAGEMENT CORP., *et                          Chapter 11
al.*,[1]                                                   (Jointly Administered)

      Debtors.
_____/

**ORDER APPROVING (A) BIDDING PROCEDURES, (B) THE FORM
AND MANNER OF NOTICES, (C) SALE AGREEMENTS WITH STALKING
HORSE BIDDER, INCLUDING PURCHASER PROTECTIONS AND
(D) SCHEDULING AN AUCTION, A SALE HEARING, AND
<u>ESTABLISHING DATES AND DEADLINES RELATED THERETO</u>**

      THIS MATTER came before the Court on _____2015 at ___ a.m./p.m. in Fort

Lauderdale, Florida upon the *Debtors' Emergency Motion for Entry of: (1) An Order Approving*

*(A) Bidding Procedures, (B) Assumption Procedures, (C) The Form and Manner of Notices, (D)*

---

[1] The following cases are jointly administered pursuant to this Court's *Order Jointly Administering Chapter 11 Cases* [ECF No. 10], *In re High Ridge Management, Corp.*, Case No. 15-16388-JKO, *In re Hollywood Hills Rehabilitation Center, LLC*, Case No. 15-16389-JKO, and *In re Hollywood Pavilion, LLC*, Case No. 15-16390-JKO.

*Sale Agreements with Stalking Horse Bidder; and (E) Scheduling an Auction, a Sale Hearing, and Establishing Dates and Deadlines Related Thereto; (2) An Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets, Free and Clear of Liens, Claims, and Encumbrances, (B) Granting the Purchaser the Protections Afforded to a Good Faith Purchaser, and (C) Granting Related Relief* (the "Sale Motion") [ECF No. ____]. The Court, having considered the Sale Motion, proffers of counsel, and being otherwise informed of the record, finds:

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334;

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution;

C.      The venue of this proceeding and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

D.      The relief requested in the Sale Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest;

E.      Notice of and opportunity for a hearing on the Sale Motion were appropriate and no other notice need be provided;

F.      The Court reviewed the Sale Motion and heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing");

G.      The Court has determined that the legal and factual bases set forth in the Sale Motion and at the Hearing establish just cause for the relief granted herein;

Accordingly, it is **ORDERED** as follows:

1.      The Motion is **GRANTED** as set forth herein.[2]

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

2.      All objections to the Motion or the relief provided herein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, hereby are **OVERRULED** and denied on the merits.

3.      The Auction and Bidding Procedures attached to this Order as **Exhibit 1-A** are approved.

4.      The Debtors may sell the Purchased Assets and enter into the transactions contemplated by the Sale Agreements by conducting an auction in accordance with Bankruptcy Rule 6004(f).

5.      The Auction shall be held on **May 26, 2015 at 10:00 a.m.**, prevailing Eastern Time, at the office of Markowitz Ringel Trusty & Hartog, P.A., 101 NE 3rd Avenue, Suite 1210, Fort Lauderdale, Florida 33301.

6.      The Court shall conduct a hearing (the "Sale Hearing") to approve the results of the Auction on **May 27, 2015** at _____ a.m./p.m., prevailing Eastern Time, or at such other date as may be ordered by the Court.

7.      Objections, if any, to the Auction, Sale of the Purchased Assets to the Buyer as contemplated by the Sale Agreements, and/or the other relief requested in the Sale Motion must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the clerk of the Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division, First Floor, 299 East Broward Boulevard, Fort Lauderdale, Florida 33301 and served on (i) the proposed counsel for the Debtors: Timothy R. Bow, Esq., Markowitz Ringel Trusty & Hartog, P.A., 101 NE Third Avenue, Suite 1210, Fort Lauderdale, Florida 33301 and (ii) counsel for the Buyer: Leon R. Barson, Esq., Blank Rome

LLP, One Logan Square, 130 North 18th Street, Philadelphia, PA 19103-6998 in each case, on or before 4:00 p.m. (prevailing Eastern Time), on **May 21, 2015 at 4:00 p.m.** (the "Sale Objection Deadline").

8.      The form of *Notice of Sale, Auction and Sale Hearing* (the "Sale Notice") and the *Notice to Counterparties to Potentially Assumed and Assigned Executory Contracts and Unexpired Leases* (the "Assumption and Assignment Notice") attached to the Sale Motion as **Exhibit 1-B** is approved. On or before three (3) business days after entry of this Order, the Debtors will cause the Sale Notice to be sent to each of the following entities or their respective counsel, if known: (a) the Office of the United States Trustee for the Southern District of Florida; (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims; (c) Hollywood Property Investments, LLC; (d) the Buyer and its counsel; (e) all parties who have expressed a written interest in acquiring some or all of the Debtors' assets; (f) all known holders of liens, claims, and other encumbrances secured by the assets constituting the Purchased Assets; (g) all applicable federal, state, and local taxing authorities, including the Internal Revenue Service; (h) all known creditors of the Debtors, as reflected in the Debtors' books and records as of the Petition Date; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. In addition, on or before three (3) business days after entry of this Order, the Debtors will cause the Assumption and Assignment Notice to be served to the Counterparties listed in Exhibit A to the Assumption and Assignment Notice.

9.      The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before this Court on the date scheduled for such hearing or in the hearing agenda for such hearing.

10.     The forms of Sale Agreements with the Buyer are **APPROVED**. The Buyer shall be entitled to the Breakup Fee in the amount of $595,000, which shall constitute an allowed administrative expense claim with priority over all expenses of the kind specified in Section 503(b) and 507 of the Bankruptcy Code, if the Debtors sell the Purchased Assets to a party other than Buyer or as otherwise contemplated in section 4.6(ii) of the APA. The Buyer shall be entitled to the Expense Reimbursement in an amount not to exceed $75,000, which shall constitute an allowed administrative expense claim with priority over all expenses of the kind specified in Section 503(b) and 507 of the Bankruptcy Code, if the Sale Agreements with Buyer are terminated for any reason other than the reason set forth in section 12.1(i) of the APA.

11.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Order shall be effective immediately upon its entry.

12.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

13.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Sale Motion.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # #

**Submitted by:**
Grace E. Robson, Esq.
Markowitz, Ringel, Trusty & Hartog, P.A.
*Proposed Counsel to the Debtors-in-Possession*
101 NE Third Avenue, Suite 1210
Fort Lauderdale, Florida 33301
Tel: (954) 767-0030

**Copies to:**
Grace E. Robson, Esq. *(Attorney Robson is directed to mail a copy of this Order to all interested parties and to file a certificate of service).*

## **EXHIBIT 1-A**

### *PROPOSED AUCTION AND BIDDING PROCEDURES*

**HIGH RIDGE MANAGEMENT CORP.; HOLLYWOOD PAVILION, LLC;
HOLLYWOOD HILLS REHABILITATION CENTER, LLC**

**[PROPOSED] AUCTION AND BIDDING PROCEDURES**

The following procedures (the "Bidding Procedures") shall govern the sale and auction of certain of the assets and/or business operations of the Debtors to Hollywood Hills Operator, LLC and 1200 North 35th Avenue, LLC (collectively, the "Buyer") or any Qualified Bidder (defined herein). Capitalized terms used herein but not separately defined, shall have the meanings ascribed to such terms in that certain *Asset Purchase Agreement* and *Agreement for Purchase and Sale* by and between Buyer and the Debtors dated April 9, 2015 (collectively, the "Sale Agreements").

1. **Date, Time, and Location of Auction**. If the Debtors receive at least one Overbid from a Qualified Bidder, the Debtors will conduct an Auction on:

   a. Date and Time:     **May 26, 2015 at 10:00 a.m.**
   b. Location:          Markowitz Ringel Trusty & Hartog, P.A.
                         101 NE Third Avenue, Suite 1210
                         Fort Lauderdale, Florida 33301

2. **Date, Time, and Location of Sale Hearing**. The U.S. Bankruptcy Court for the Southern District of Florida will conduct a hearing (the "Sale Hearing") to approve the sale and the results of the Auction as follows:

   a. Date and Time:     **May 27, 2015 at _____ a.m./p.m.**

   b. Location:          United States Bankruptcy Court
                         299 East Broward Boulevard
                         Courtroom 301
                         Fort Lauderdale, Florida 33301

3. **Assets Being Sold**. Pursuant to the Sale Agreements, the Buyer has agreed to purchase all of the Debtors' right, title, and interest in, to, and under all of the assets, properties, real estate, goodwill, and rights of the Debtors' used in the conduct of business of every nature, kind, and description, tangible and intangible, wherever located, whether or not carried on the Debtors' books. The assets referenced in the Sale Agreements shall be collectively referred to as the "Purchased Assets." All bids shall be for all of the Purchased Assets and may not be for less than all of the Purchased Assets.

4. **Due Diligence**.  Upon receipt by Markowitz, Ringel, Trusty & Hartog, P.A. ("Debtors' Counsel") of (i) a completed and executed bidder information sheet (to be provided upon request), (ii) an executed non-disclosure agreement,  and (iii) evidence satisfactory to the Debtors' Counsel that the potential bidder is reasonably likely to be able to consummate a purchase of the Purchased Assets, and if each of the materials described in subclauses (i), (ii), and (iii) are in form and substance satisfactory to the Debtors in their sole discretion,

a potential bidder shall be provided with additional information regarding the Purchased Assets, the Debtors' operations and financial condition, and be afforded the opportunity to inspect the Purchased Assets. In addition, all reasonable efforts will be made to provide a potential bidder, who has satisfied the conditions of this Section 4, with such information as such potential bidder may determine is necessary or relevant to the formulation of its bid. **NEITHER THE DEBTORS' COUNSEL NOR ANY OF THE DEBTORS' OTHER PROFESSIONALS HAVE PREPARED ANY OF THE INFORMATION REGARDING THE DEBTORS, OR ANY OF ITS OPERATIONS, ASSETS OR FINANCIAL CONDITION TO BE PROVIDED TO A POTENTIAL BIDDER IN CONNECTION WITH THE PROCEDURES SET FORTH HEREIN. CONSEQUENTLY, NO REPRESENTATION IS MADE BY THE DEBTORS' COUNSEL OR OTHER AGENTS REGARDING THE ACCURACY, RELIABILITY, VERACITY, ADEQUACY, OR COMPLETENESS OF ANY INFORMATION PROVIDED IN CONNECTION WITH THE BIDDING PROCEDURES, AND ALL POTENTIAL BIDDERS ARE ENCOURAGED TO CONSULT WITH THEIR OWN ADVISORS REGARDING ANY SUCH INFORMATION.**

5. **Overbid Requirements**. Any person interested in purchasing the Purchased Assets and making a competitive bid at the Auction must first be deemed a Qualified Bidder by the Debtors by submitting a Qualified Bid (defined below) in conformance with these Bidding Procedures.

    a. Qualified Bidders. To be a Qualified Bidder for the purposes of the Auction, a prospective bidder must, on or before **May 22, 2015 at 4:00 p.m. (Eastern Time)**, or such other date that is 3 business days prior to the Auction (the "Overbid Deadline"):

        i. Written Offer. Submit to the Debtors an executed asset purchase agreement for the purchase of substantially all of the Purchased Assets and assumption of all Assumed Liabilities, which shall be made upon terms and conditions substantially similar to and no less economically favorable to the Debtors then those contained in the Sale Agreements with the Buyer, and must be accompanied by forms of the Sale Agreements that specifically sets forth those amendments and modifications to the Sale Agreements, including price, terms, agreements to be assumed, and liabilities not to be assumed, which such bidder would propose if it were selected as the Successful Bidder (the "Competing Offer");

        ii. Minimum Overbid. Submit a minimum bid ("Minimum Overbid") that is at least **$17,770,000**;

        iii. Good Faith Deposit. All parties interested in bidding must place an initial deposit by the Overbid Deadline, in cash or certified funds, in an amount equal to at least **$500,000.00** (the "Deposit"), to be held in the trust account of Perlman, Bajandas, Yevoli & Albright, P.A., 200 South

Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 (the "Escrow Agent");

 iv. <u>Proof of Ability to Close</u>. Submit to Debtors' counsel evidence of the bidder's financial ability to consummate its purchase of the Purchased Assets under and upon the terms and conditions of its Competing Offer, including proof of adequate assurance of future performance in connection with any leases or contracts being acquired as part of the Competing Offer;

 v. <u>Qualified Bidders' Obligation to Provide Evidence Regarding Good Faith</u>. Each Qualified Bidder shall provide the Debtors with evidence in the form satisfactory to the Debtors of such bidder's good faith, within the meaning of Section 363(m) of the Bankruptcy Code at or before the Auction.

b. <u>Identifying Qualified Bidders</u>. No prospective competitive bidder shall be permitted to bid at the Auction unless such prospective bidder is deemed a Qualified Bidder. No later than one (1) business day prior to the Auction, the Debtors shall determine which prospective bidder(s) constitute a Qualified Bidder, and whether the competitive bid of a Qualified Bidder complies with and satisfies the provisions of the Sale Notice and Procedures Order[1] and shall therefore be determined to be a qualified competitive bid, including any later bids that such Qualified Bidder may make at and during the Auction. The Buyer shall be deemed a Qualified Bidder;

c. <u>Disposition of Deposit</u>. A Qualified Bidder's deposit, without any accrued interest, shall be returned to a Qualified Bidder if such party's Qualified Bid is not approved by the Bankruptcy Court as the Successful Bid (as defined below). In the event such Qualified Bid is approved by the Bankruptcy Court as the Successful Bid, but the Qualified Bidder fails to timely close its purchase of the Purchased Assets, the deposit of such Qualified Bidder shall immediately thereafter be forfeited and become property of the bankruptcy estate;

d. <u>Terms of Auction</u>. The terms of the Auction shall be for "cash" or cash equivalent payable in accordance with the terms of the Sale Agreements or any Bidder Agreement approved by the Bankruptcy Court. Further, the Qualified Bid of any Qualified Bidder shall not be subject to any due diligence or any other contingency whatsoever, except for Bankruptcy Court approval and as otherwise contained in the any applicable Bidder Agreement, and any such Qualified Bid must be fully financed and may not have a financing contingency. All Qualified Bids must include a detailed description of the sources and relevant amounts of equity or debt financing. If financing shall be provided by external sources, a Qualified Bid must include copies of relevant commitment letters and identify the individuals (and their phone numbers) at the institutions involved so that Debtors may contact them;

---

[1] *See* ECF No. _____.

e.  <u>Terms of Qualified Bid</u>. A Qualified Bid must state that (i) it constitutes a binding offer and shall remain in effect through the Closing Date of the Successful Bid, and (ii) the Qualified Bidder is prepared to consummate the transaction under the Sale Agreements or any applicable Bidder Agreement on the Closing Date after the entry of an order of the Bankruptcy Court approving the Qualified Bid;

f.  <u>Bidding</u>. In the event that the Debtors receive one or more Qualified Bids, an Auction will be conducted.  The Buyer shall be given copies of all Qualified Bids prior to the start of any Auction.  Bidding at the Auction shall be limited to Qualified Bidders who have submitted Qualified Bids and/or Over-Bids. Commencing with the highest and best Qualified Bid (as determined by the Debtors), competitive bidding among Qualified Bidder(s) shall proceed in increments of $100,000 in excess of the highest Qualified Bid (or such other amounts and terms that the Debtors determine will result in the highest and best offer), with such competitive bidding to continue until the highest and best bid to purchase the Purchased Assets is received by Debtors. The Buyer shall get a credit in the amount of the Breakup Fee and Expense Reimbursement through each round of bidding. The highest and best Qualified Bid shall be recommended by the Debtors to the Bankruptcy Court for approval (the "Successful Bid" and the "Successful Bidder");

g.  <u>Back-up Bidder</u>. Upon the conclusion of the Auction, the Debtors shall have the right (but not the obligation) to designate the second highest and best Qualified Bid as the "Back-up Bid" and the party making the Back-up Bid as the "Back-up Bidder".  If, for any reason, the Successful Bidder is unable or unwilling to timely perform its obligations under the terms of the Successful Bid, the Debtors, in the exercise of their business judgment, may sell the Purchased Assets to the Back-up Bidder without further notice or a hearing and said Back-up Bidder shall be obligated to close its purchase of the Purchased Assets according to the terms of its Back-up Bid and, as the case may be, the terms and conditions of the Sale Agreements or the applicable Competing Offer. The Buyer shall not remain a Back-up Bidder for more than 60 days after the entry of the Sale Order.

6.  **General Terms of Sale**:

a.  <u>Highest and Best Offer</u>. The Purchased Assets will be sold to the Qualified Bidder(s) making the highest and best bid on the Purchased Assets;

b.  <u>Firm Offers</u>. All bids shall be "firm offers" and shall not contain any contingencies to the validity, effectiveness, and/or binding nature of the offer, including, without limitation, contingencies for financing, due diligence or inspection, except for the conditions to closing provided for in the Sale Agreements;

c. <u>Requirement for Qualified Bidders to Appear at Auction and Sale Hearing</u>. All Qualified Bidders shall appear in person at the Auction and the Sale Hearing, or through a duly authorized representative;

d. <u>Non-Conforming Bids Disqualified from Auction</u>. Any entity that fails to submit a timely, conforming Qualified Bid, as set forth above, shall be disqualified from bidding for the Purchased Assets at the Auction conducted during the Sale Hearing. In addition, the Debtors are not required to entertain any bids that are not more favorable to the Debtors' estates than the Sale Agreements;

e. <u>The Debtors' Business Judgment</u>. The Debtors: (a) may exercise their business judgment to recommend a sale of the Purchased Assets to any Qualified Bidder whose bid the Debtors determine, in their reasonable discretion, to be highest or best and in the best interests of the Debtors' estate; and (b) shall consult with any significant constituent they deem necessary in connection with the bidding process and the selection of the highest or otherwise best bid. In exercising their business judgment as to which bid constitutes the highest or otherwise best bid, the Debtors may consider all factors which the Debtors deem relevant, including but not limited to, the terms and conditions of the Sale Agreements, the bidder's ability to close the proposed transaction, the scope of the proposed transaction, the form and market value of any non-cash consideration offered, the aggregate value of any assets not included in such bid and the Debtors' ability to recognize such value, and the costs to the Debtors' estates of any bid. Each Qualified Bidder should be prepared to make its best and final offer at the Auction on the date of the Sale Hearing, and the Debtors reserve all rights to object to and oppose any request for a continuance or recess of the Auction and the Sale Hearing;

f. <u>No Warranties</u>. The sale of the Purchased Assets will be on an "as is, where is" basis, with all faults, without any representations or warranties by the Debtors, except as otherwise set forth in the Sale Agreements, but free and clear of all liens, claims, and encumbrances, with such liens, claims, and encumbrances to attach to the proceeds of the sale;

g. <u>Jurisdiction</u>. All Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction and/or the sale of the Purchased Assets;

h. <u>Bankruptcy Court Approval</u>. The Sale shall be subject to approval of the Bankruptcy Court at the Sale Hearing and the Sale Order shall be in form and substance reasonably satisfactory to the parties;

i. <u>Additional Terms</u>. The Debtors may, at, before, or during the Auction, impose such other and additional terms and conditions not inconsistent with these Bid Procedures as they reasonably determine to be in the best interest of the Debtors, the Estates, creditors, or other parties in interest;

j.  <u>Headings</u>. The headings of all sections of these Bid Procedures are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.

## EXHIBIT 1-B

*PROPOSED SALE NOTICE*
*And*
*PROPOSED ASSUMPTION AND ASSIGNMENT NOTICE*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE:                                                    Case No.:

HIGH RIDGE MANAGEMENT CORP., *et al*.,[1]      Chapter 11
                                                         (Jointly Administered)

      Debtors.
_____/

## NOTICE OF SALE, AUCTION, AND SALE HEARING

    ***PLEASE TAKE NOTICE THAT*** on April 10, 2015, High Ridge Management Corp., Hollywood Pavilion, LLC, and Hollywood Hills Rehabilitation Center, LLC (collectively, the "Debtors") filed the *Debtors' Emergency Motion for Entry of (1) An Order Approving (A) Bidding Procedures, (B) The Form and Manner of Notices, (C) Sale Agreements With Stalking Horse Bidder and (D) Scheduling an Auction, a Sale Hearing, and Establishing Dates and Deadlines Related Thereto; (2) An Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets, Free and Clear of Liens, Claims, and Encumbrances, (B) Granting the Purchaser the Protections Afforded to a Good Faith Purchaser, and (C) Granting Related Relief* (the "Sale Motion") [ECF No. ____]. The Sale Motion seeks to sell substantially all of the Debtors' assets (the "Purchased Assets") by public auction, free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. §§ 363(b) and (f) to the party making the highest and best bid (the "Successful Bidder"). Additionally, the Sale Motion seeks to: (1) approve the proposed sale and bidding procedures (the "Bidding Procedures"); (2) schedule a hearing to approve the bid procedures; (3) approve the form and notice of sale; (4) schedule an auction; (5) schedule a hearing to approve the sale; and (6) approve the forms of Sale Agreements to be used in connection with the sale.

    On April ____, 2015, the United States Bankruptcy Court for the Southern District of Florida approved the Bidding Procedures included in the Sale Motion and authorized an auction to take place on **May 26, 2015 at 10:00 a.m.** (the "Auction") at the offices of Markowitz Ringel Trusty & Hartog, P.A., 101 NE Third Avenue, Suite 1210, Fort Lauderdale, Florida 33301. Only parties that have submitted a Qualified Bid in accordance with the Bidding Procedures prior to the commencement of the Auction (the "Bidding Deadline") may participate in the Auction. Parties interested in receiving information regarding the Auction should contact Grace E. Robson, Esq. and Timothy R. Bow, Esq., Markowitz Ringel Trusty & Hartog, P.A., 101 NE Third Avenue, Suite 1210, Fort Lauderdale, Florida 33301, Tel. (954) 767-0030, email addresses: grobson@mrthlaw.com and tbow@mrthlaw.com.

---

[1] The following cases are jointly administered pursuant to this Court's *Order Jointly Administering Chapter 11 Cases* [ECF No. 10], *In re High Ridge Management, Corp.*, Case No. 15-16388-JKO, *In re Hollywood Hills Rehabilitation Center, LLC*, Case No. 15-16389-JKO, and *In re Hollywood Pavilion, LLC*, Case No. 15-16390-JKO.

The hearing to consider the approval of the sale of the Purchased Assets to the Successful Bidder, free and clear of all liens, claims, and encumbrances, will be held before the Honorable John K. Olson, United States Bankruptcy Judge, on May 27, 2015 at _____ a.m./p.m. at United States Bankruptcy Court, 299 East Broward Boulevard, Courtroom 301, Fort Lauderdale, Florida 33301 (the "Sale Hearing"). The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing.

Objections, if any, to the sale of the Purchased Assets, or the relief requested in the Sale Motion must: (1) be in writing; (2) comply with all applicable Federal Rules of Bankruptcy Procedure and/or Local Rules; (3) be filed with the Clerk of the Bankruptcy Court for the Southern District of Florida, 299 East Broward Boulevard, First Floor, Fort Lauderdale, Florida 33301, or filed electronically via CM/ECF, on or before **4:00 p.m. on May 21, 2015**, or such other time as the Debtors may agree upon; and (4) be served so as to be received no later than 5:00 p.m. on the same day, upon (i) counsel to the Debtors, Grace E. Robson, Esq. and Timothy R. Bow, Esq., Markowitz Ringel Trusty & Hartog, P.A., 101 NE Third Avenue, Suite 1210, Fort Lauderdale, Florida 33301, Tel. (954) 767-0030, or by email at grobson@mrthlaw.com and tbow@mrthlaw.com and (ii) counsel for the Buyer, Leon R. Barson, Esq., Blank Rome LLP, One Logan Square, 130 North 18th Street, Philadelphia, PA 19103-6998 or by email at Lbarson@blankrome.com

This Notice and the Sale Hearing are subject to the terms and conditions of the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety. Copies of the Sale Motion, the Bidding Procedures, and/or the Bidding Procedures Order may be obtained upon written request to counsel and the Debtors. In addition, copies of the aforementioned pleadings may be found on the internet at http://ecf.flsb.uscourts.gov, and are on file with the United States Bankruptcy Court, 299 East Broward Boulevard, First Floor, Fort Lauderdale, Florida 33301.

**PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS SALE HEARING NOTICE BECAUSE YOU ARE A CREDITOR OR CONTRACT COUNTERPARTY OF THE DEBTORS, OR OTHERWISE HAVE BEEN IDENTIFIED BY THE DEBTORS AS AN ENTITY WITH A PARTICULARIZED INTEREST IN THE SALE HEARING, AND THAT ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE SALE MOTION SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE PURCHASE AGREEMENT.**

DATED: April _____, 2015

**MARKOWITZ RINGEL TRUSTY & HARTOG, P.A.**
*Proposed Counsel for Debtor-in-Possession*
101 NE Third Avenue, Suite 1210
Fort Lauderdale, FL 33301
Tel: (954) 767-0030 // Fax: (954) 767-0035

By: /s/ *Timothy R. Bow*
    Grace E. Robson, Esq.
    Fla. Bar No. 178063
    grobson@mrthlaw.com
    Timothy R. Bow, Esq.
    Fla. Bar No. 104710
    tbow@mrthlaw.com

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                    Case No.:

HIGH RIDGE MANAGEMENT CORP., *et al*.,[1]    Chapter 11
                                                         (Jointly Administered)

      Debtors.

_____/

## NOTICE TO COUNTERPARTIES TO POTENTIALLY
## ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

> YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON **EXHIBIT A** ATTACHED HERETO

**PLEASE TAKE NOTICE** that, on April ___, 2015, the United States Bankruptcy Court entered an order (the "Order") [ECF No. _____] approving procedures for the assumption and assignment of executory contracts by High Ridge Management Corp. and Hollywood Hills Rehabilitation Center, LLC (collectively, the "Debtors") to Hollywood Hills Operator, LLC and 1200 North 35th Avenue, LLC in accordance with the Sale Agreements attached as Exhibit 1-C to the (the "Sale Motion") [ECF No. _____].

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Motion, the Debtors may assume and assign to the Buyer the contracts and leases listed on **Exhibit A** to this notice (the "Cure Notice") to which you are a counterparty. Exhibit A identifies the contract or lease proposed to be assumed and assigned as well as the proposed cure amount that the Debtors believe must be paid in order to assume the contract or lease (the "Cure Amount").

**PLEASE TAKE FURTHER NOTICE** that, if you disagree with the proposed Cure Amount, or the proposed assumption and assignment of the contract or lease, your objection must (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Bankruptcy Court and served so as to be actually received by no later than **May 21, 2015, at 4:00p.m. Eastern Time** (the "Objection Deadline") by the Bankruptcy Court and the following parties as follows:

---

[1] The following cases are jointly administered pursuant to this Court's *Order Jointly Administering Chapter 11 Cases* [ECF No. 10], *In re High Ridge Management, Corp.*, Case No. 15-16388-JKO, *In re Hollywood Hills Rehabilitation Center, LLC*, Case No. 15-16389-JKO, and *In re Hollywood Pavilion, LLC*, Case No. 15-16390-JKO.

| **Bankruptcy Court** |
| --- |
| United States Courthouse |
| 299 East Broward Blvd., Room 112 |
| Ft. Lauderdale, FL 33301 |
| Tel: (954) 769-5700 |
| Hours 8:30a.m. - 4:00p.m. |
| **Counsel to Debtor** |
| Grace E. Robson, Esq. |
| Markowitz Ringel Trusty &Hartog, P.A. |
| 101 NE Third Avenue, Suite 1210 |
| Fort Lauderdale, FL 33301 |
| **Counsel to Buyer** |
| Leon R. Barson, Esq. |
| Blank Rome LLP |
| One Logan Square |
| 130 North 18th Street |
| Philadelphia, PA 19103-6998 |

**PLEASE TAKE FURTHER NOTICE** that any objections filed by the Objection Deadline shall be heard on **May 27, 2015 at _____ a.m./p.m.** at United States Bankruptcy Court, 299 East Broward Boulevard, Courtroom 301, Fort Lauderdale, Florida 33301.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the contracts and leases or the validity, priority or amount of any claims of a counterparty to any contract or lease against the Debtors that may arise under such contract or lease, (ii) creates a post-petition contract or agreement or (iii) elevates to administrative expense priority any claims of a counterparty to any contract or lease against the Debtors that may arise under such contract or lease.

**This Notice is not an admission by the Debtors that such contract or lease is executory or unexpired.**

Dated: April __, 2015                    Markowitz Ringel Trusty &Hartog, PA
                                         101 NE Third Avenue, Suite 1210
                                         Fort Lauderdale, FL 33301
                                         T: (954) 767-0030
                                         F: (954) 767-0035


                                         By: _____
                                             GRACE E. ROBSON
                                             Fla. Bar No. 0178063
                                             grobson@mrthlaw.com

**Exhibit A**
**Proposed Cure Amounts**

| Party to Lease/Contract | Description of Lease/Contract | Proposed Cure Amount |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# **EXHIBIT 1-C**

*ASSET PURCHASE AGREEMENT*
*And*
*AGREEMENT FOR PURCHASE AND SALE*

Execution Copy

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "Agreement") is entered into as of the _____ day of April, 2015 (the "Effective Date"), by and among HOLLYWOOD HILLS REHABILITATION CENTER, LLC, a Florida limited liability company ("Seller"), and HOLLYWOOD HILLS OPERATOR, LLC, a Delaware limited liability company ("Buyer").

### Recitals

A.     Seller owns and operates Hollywood Rehabilitation Center, a one hundred fifty-two (152) bed Florida-licensed nursing home (the "Facility") engaged in the business of providing long-term and rehabilitation care services through various health care service providers (collectively, the "Service Providers") (herein referred to as the "Business");

B.     Seller desires to sell, transfer and assign to Buyer, and Buyer desires to purchase from Seller, pursuant to sections 105, 363 and 365 of the Bankruptcy Code (as defined below), substantially all of the assets used in the Business upon the terms and conditions set forth in this Agreement;

C.     In connection with the foregoing, High Ridge Management Corp., a Florida corporation ("Realty") shall, simultaneously with this agreement, enter into that certain Agreement for Purchase and Sale with 1200 NORTH 35TH AVENUE, LLC, a Delaware limited liability company ("Real Estate Buyer"), of even date herewith (the "Purchase and Sale Agreement"), for acquisition of the real estate and other assets relating to the Facility;

D.     This Agreement replaces and supersedes that certain Asset Purchase Agreement dated as of December 17, 2014 between the parties hereto as well as any and all amendments thereto; and

E.     The transactions contemplated herein are subject to the approval of the Bankruptcy Court (as defined and described below) and will be consummated only pursuant to the Sale Order (as defined and described below) to be entered in the Bankruptcy Cases (as defined and described below).

### Agreements

In consideration of the mutual promises, representations, warranties, covenants and agreements contained herein, the parties agree as follows:

1.     **Recitals**. The foregoing recitals are true and correct and expressly incorporated herein.

2.     **Purchase and Sale of Assets**.

2.1     Assets Purchased. Subject to the terms and conditions of this Agreement, at the Closing (as defined in Section 11.1), Seller shall sell, transfer, convey, assign and deliver to Buyer, and Buyer shall acquire and take assignment and delivery of all of Seller's right, title and interest in, to and under all of the assets, properties, goodwill and rights of Seller used in the

conduct of the Business of every nature, kind and description, tangible and intangible, wherever located, whether or not carried on the books of Seller (other than the Excluded Assets (as defined below)) (each referred to herein as an "Asset" and collectively as the "Assets"). Without limiting the generality of the foregoing, the Assets include the following:

(i)        Licenses and Authorizations. All transferable rights of Seller in and to any and all licenses and other regulatory approvals necessary for or incident to the operation of the Assets, and any third party warranties relating to the Assets, including without limitation, any transferrable rights in and to the nursing home license #1238096 ("Provider License") issued by the Florida Agency for Health Care Administration ("AHCA") (which will be subject to a change of ownership application and new license), and the Medicaid and Medicare provider agreements held by Seller (the "Provider Agreements");

(ii)        Intellectual Property. All registered and unregistered intellectual property rights (patents, trademarks, trade secrets, service marks, trade names, corporate names, copyrights and applications therefore) used in connection with the Business, including, without limitation, licenses for the use of computer software programs and the following trade names and logos: "Hollywood Hills Rehabilitation Center" and all goodwill associated therewith (collectively, the "Intellectual Property");

(iii)        Computer Programs. All computer hardware, software, and computer training or instructional materials owned by Seller and used in connection with the Business;

(iv)        Web Sites. All Internet domain names, web sites and software used in connection with the Business as listed on Schedule 2.1(iv) hereto, including all agreements and files relating thereto such as (a) hyperlink agreements, (b) agreements relating to the use of Seller's Intellectual Property on web sites, and (c) agreements and files relating to the hosting, development, local search marketing or other aspects of Seller's web sites;

(v)        Personal Property. All medical supplies, linens, food and other supplies used by Seller in the operation of the Facility ("Supplies");

(vi)        Information and Records. All books, patient records, employee records, files, databases, plans, specifications, technical information, confidential information, price lists, promotional materials, advertising copy and data, marketing research and information, competitive analyses, sales records, service records, files and lists of current patients who will be required to be serviced after Closing, Service Provider lists and background checks, material correspondence related to any Seller Contract or Service Provider, business plans, projections, budgets, personnel and labor relations records, and employee benefits and compensation plans and records in Seller's care, custody or control (collectively, the "Information and Records");

(vii)        Seller Contracts. All rights in, to and under any and all Contracts (as defined herein) to which Seller is a party or may be bound or receive benefits or by which the Assets may be affected, including, without limitation, all contracts with Service Providers and clients which are assumed by Buyer pursuant to Section 4.4, except for the Excluded Contracts (as defined in Section 2.2) (collectively, "Seller Contracts"), including those listed in the Assumption Order (as defined in Section 4.4) "Contract" means any agreement, contract,

consensual obligation, promise, understanding, arrangement, commitment or undertaking of any nature (whether written or oral and whether express or implied), whether or not legally binding;

(viii)    <u>Marketing Materials</u>. All marketing materials, telephone numbers used in the Business as listed on <u>Schedule 2.1(viii)</u>, and the right to receive and retain mail and other communications relating to the Business;

(ix)    <u>Resident Agreements</u>.  All contracts and agreements with residents of the Facility (the "<u>Resident Agreements</u>");

(x)    <u>Other Intangibles</u>. All customer relationships and goodwill, if any, used in, related to or arising in conjunction with the Business;

(xi)    <u>Permits</u>.  To the extent transferable, all permits use by Seller in the Business; and

(xii)    <u>Causes of Action</u>.  All rights, claims or causes of action of Seller or otherwise relating to the Business and the Assets.

2.2    <u>Excluded Assets</u>. Notwithstanding <u>Section 2.1</u> or anything else in this Agreement, the Assets shall not include, and Seller shall retain all of its right, title and interest in and to the following assets, which shall be referred to herein as "<u>Excluded Assets</u>": (i) the assets set forth on <u>Schedule 2.2(i)</u> of this Agreement, including, without limitation, cash in all bank accounts and any proceeds of the sale or the Purchase and Sale Agreement to which the Seller is entitled; (ii) the Contracts listed by Buyer, in its sole discretion, on <u>Schedule 2.2(ii)</u> (the "<u>Excluded Contracts</u>"); (iii) Seller's accounts receivable for services provided on or prior to the Closing; (iv) Seller's corporate books and records, voting securities and other similar books and records that Seller is required by law to retain, including tax returns, financial statements and corporate or other entity filings; provided, however, that Buyer will have the right, at its sole cost and expense, to make copies of any portions of such retained records that relate to the Business or any of the Assets (v) all rights, claims, causes of action and credits to the extent relating to any Excluded Asset or Excluded Liability, including any such item to the extent arising under any guarantee, warranty, indemnity or similar right in favor of a Seller in respect of an Excluded Asset or Excluded Liability; (vi) all avoidance actions or similar causes of action arising under sections 544 through 553 of the Bankruptcy Code, including any proceeds thereof (collectively, the "<u>Avoidance Actions</u>"); (vii) all post petition adequate assurance deposits provided to utilities and any deposits provided to suppliers or service providers to Seller on a prepetition or postpetition basis (collectively, the "<u>Chapter 11 Deposits</u>") unless specifically provided for under an Assumed Contract, in which case it will be a Purchased Asset; (viii) all employee benefit plans and all trust funds and Contracts related thereto; (ix) all membership interests of Seller; and (x) all potential rights, claims or causes of action (including any and all counter-claims) of Seller against Larkin Community Hospital, Inc., Hollywood Property Investments, LLC, Stabilis Fund II, LLC, Branch Banking and Trust Company or any other person or entity in connection with, arising out of,  or relating to that certain loan made to Leonore Kallen and High Ridge Management Corp. which is the subject of Case No.: 06-2-12-CA-26516 filed in the Circuit

Court of the Seventeenth Judicial Circuit in and for Broward County, Florida (the "<u>Foreclosure Action</u>").

2.3    <u>No Encumbrances</u>. At Closing, the Assets shall be sold, assigned, transferred, conveyed and delivered to Buyer free and clear of any and all liens, pledges, hypothecations, charges, mortgages, security interests, claims (as defined in section 101(5) of the Bankruptcy Code (defined below)), causes of action, defenses, debts, demands, damages, offset rights, setoff rights, recoupment rights, preferences, rights of possession, leases, tenancies, licenses, demands, orders, options, rights of first refusal, preemptive rights, community property interests, reservations, conditions, obligations, liabilities and all other encumbrances of any kind or nature under Contract, at law or in equity, known of unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto (collectively, "<u>Encumbrances</u>"), except as may be specifically assumed by Buyer pursuant to the terms of this Agreement.

2.4    <u>Non-Assignable Assets</u>. Notwithstanding anything in this Agreement to the contrary, neither the execution of this Agreement nor the consummation of the transactions contemplated hereby shall be construed as an attempt or agreement to assign or transfer to Buyer as "Assets" any asset of Seller which, by its terms or by applicable law, is not assignable without the consent of a third party thereto, or a governmental entity, or a novation thereof or is cancelable by a third party in the event of an assignment or transfer without such consent (a "<u>Non-Assignable Asset</u>"), unless and until such consent or novation is obtained. If any such consent or novation shall not be obtained or if any attempted assignment would be ineffective or would impair Buyer's rights under the proposed Asset such that Buyer would not, in effect, acquire the benefit of all such rights, then Seller, to the maximum extent permitted by law and the Asset, shall, after the Closing Date, act as the Buyer's agent in order to obtain for the Buyer the benefits thereunder. Unless and until such consent or novation is obtained, the Seller shall cooperate, to the maximum extent permitted by law and the applicable Asset, with each Buyer in any legal arrangement reasonably satisfactory to the Buyer and designed to provide the Buyer with all claims, rights and benefits to the Non-Assignable Asset and to relieve the Seller from any burden associated therewith.

2.5    <u>Assumption of Liabilities by Buyer</u>.

(i)    In consideration of the sale, transfer, assignment, conveyance and delivery of the Assets, and in reliance upon the representations and warranties made herein by Seller, Buyer shall undertake, assume, perform and otherwise pay, satisfy and discharge any and all liabilities and obligations of Seller arising out of or relating to the Business or the Assets on or after the Closing Date, other than the Excluded Liabilities (as defined in <u>Section 2.5(ii)</u>) (collectively, the "<u>Assumed Liabilities</u>"), including, without limitation, the following:

(a)    all liabilities and obligations arising following the Closing under or relating to any assumed Contracts;

(b)    Obligations with respect to any employee, Service Provider, or agent of Seller relating to, arising out of, or in connection with their employment by or contract for service with Buyer after the Closing Date, including all rights and benefits under any contract, document, policy or understanding with any such employee, Service Provider or agent,

all pension death benefit, retirement, medical, retiree, insurance, vacation, workers compensation and other liabilities and obligations with respect to such employee, Service Provider or agent;

(c)     all liabilities and obligations for (1) taxes relating to the Business, the Assets or the Assumed Liabilities for any period after the Closing Date, and (2) taxes for which Buyer is liable pursuant to, or as a result of, this Agreement; and

(d)     all other liabilities and obligations arising out of or relating to Buyer's ownership or operation of the Business and the Assets after the Closing.

(ii)     With the exception of the Assumed Liabilities, Buyer shall not assume, and shall not be liable or obligated to pay or discharge any liabilities or obligations of Seller arising before the Closing Date or in connection with any of the Assets (collectively, the "Excluded Liabilities") for any of the following:

(a)     liabilities or obligations arising out of or relating to Seller's ownership or operation of the Business and the Purchased Assets prior to the Closing Date;

(b)     liabilities or obligations relating to or arising out of the Excluded Assets;

(c)     liabilities or obligations for (i) taxes relating to the Business, the Assets or the Assumed Liabilities for any taxable period prior to the Closing Date and (ii) any other taxes of Seller or any members or Affiliates of Seller (other than taxes allocated to Buyer under this Agreement) for any taxable period;

(d)     except as specifically provided herein, any liabilities or obligations of Seller relating to or arising out of (i) the employment, or termination of employment, of any employee prior to the Closing, or (ii) workers' compensation claims of any employee which relate to events occurring prior to the Closing Date;

(e)     any costs or expenses incurred in connection with, or related to, the administration of the Bankruptcy Cases;

(f)     liabilities of Seller under this Agreement;

(g)     liabilities arising out of or related to any legal proceeding or government investigation commenced, instituted or threatened against Seller or any officer, director, employee, predecessor or affiliate of Seller;

(h)     liabilities or obligations of Seller arising or incurred in connection with the negotiation, preparation, investigation and performance of this Agreement, the other Transaction Documents (as defined in Section 5.2) and the transactions contemplated hereby and thereby, including, without limitation, fees and expenses of counsel, accountants, consultants, advisers and others; and

(i)    Seller's liabilities with respect to any monetary defaults or other Cure Costs (as defined and described below) arising prior to the Closing Date under any of the Seller Contracts.

3.    **Cost Reports; Overpayments; Civil Monetary Penalties**.

3.1    Seller shall cause final cost reports in respect to the operation of the Facility to be prepared and filed with the appropriate Medicare and Medicaid agencies its as soon as practicable after the Closing Date, but in any event prior to the expiration of the period of time as may be required by law for the filing of each such final cost report under the applicable third party payor program, it being specifically understood and agreed that the intent and purpose of this provision is to ensure that the reimbursement paid to Buyer for the period beginning on the Closing Date is not delayed, reduced or offset in any manner as a result of Seller's failure to timely file such final cost reports.

3.2    Each party hereto agrees to notify the other within five (5) business days after such party's receipt of any notice of any claim by AHCA, CMS, OIG or any other governmental or quasi governmental authority with respect to any of the following, relating to periods prior to the Closing: (i) an alleged Medicare or Medicaid overpayment, or any other recoupment or adjustment to reimbursement, (ii) an alleged underpayment of any bed tax, provider tax, or other tax or assessment or (iii) any other governmental or third-party payor claims (collectively "Recapture Claim").  For avoidance of doubt, the failure to provide notification of a Recapture Claim within the foregoing timeframe shall in no way effect a party's rights to indemnification with respect thereto.

3.3    In the event AHCA, CMS, OIG, any other governmental or quasi governmental authority or agency making payments to Buyer for services performed at the Facility after the Closing or any other third-party payor makes any Recapture Claim, then, subject to the indemnification and holdback provisions of this Agreement and the Purchase and Sale Agreement, Seller hereby agrees to save, indemnify, defend and hold Buyer harmless from and against any loss, damage, injury or expense incurred by Buyer arising from or related to any such claim.   Buyer understands and acknowledges that Seller and Realty will likely be making payments and disbursements in the Bankruptcy Cases and that the assets remaining with Seller and Realty to satisfy any Recapture Claim may be limited to the Escrow Holdback pursuant to the Purchase and Sale Agreement. In connection with the foregoing indemnification obligation (but subject to the indemnification and holdback provisions of this Agreement and the Purchase and Sale Agreement), in the event that AHCA, CMS, OIG or any other governmental or quasi governmental authority or agency or any other governmental or quasi governmental authority or agency or other third party payor source withholds amounts from Buyer's reimbursement checks as a result of such Recapture Claim, Seller shall pay such amounts to Buyer within three (3) business days following Buyer's demand therefor.  In the event Seller fails to pursue any issue or issues relating to appeal of a Recapture Claim, Buyer may, at Seller's expense, pursue an appeal of such issue or issues and Seller will reasonably cooperate with Buyer in such appeal at Buyer's expense, including by providing copies of any documentation required to substantiate costs reported on the cost reports.

3.4     Prior to the Closing, Seller shall use its best efforts (including, if applicable or necessary, requesting the state court receiver) to pay or (i) contest in good faith consistent with applicable appeal procedures, all outstanding Recapture Claims and any other fees and taxes due with respect to the Facility for periods prior to the Closing, and (ii) provide to Buyer, on or before the Closing, evidence reasonably satisfactory to Buyer of the foregoing payments or contest proceedings.  Seller shall also remain liable and responsible for the correction of all violations cited by AHCA or any other governmental authority in any survey prior to the Closing Date to the extent that correction of such violations is required and provided that Seller can perform or control the performance of such corrections (through contractors or suppliers of its choice that are reasonable acceptable to Buyer).  Notwithstanding the foregoing or anything to the contrary in this Agreement, Seller shall not be liable for any fines, fees or other amounts payable to any governmental authority (or an increase in any such amounts payable by Seller for conditions that existed prior to the Closing) arising out of or relating to Buyer's ownership or operation of the Business or the Purchased Assets from and after the Closing, including, without limitation, as a result of the recurrence or continued existence of any condition that gave rise to such obligations of Seller before Closing.

3.5     Seller shall reasonably cooperate with Buyer to facilitate reasonable access to any Medicare and Medicaid cost reports for the Facility that have not been filed as of the Effective Date and underlying documentation for such reports.  Seller shall use commercially reasonable efforts to ensure that such reports are made available to Buyer for its review prior to the time such cost reports are filed.

## 4.     Bankruptcy Court Matters

4.1     <u>Bankruptcy Cases</u>.  On or before April 10, 2015, Seller and Realty (as defined in the Purchase and Sale Agreement) shall file voluntary petitions for reorganization relief (the "<u>Bankruptcy Cases</u>") with the United States Bankruptcy Court for the Southern District of Florida (the "<u>Bankruptcy Court</u>") pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et seq</u>. (the "<u>Bankruptcy Code</u>").  The date on which the petitions are filed with the Bankruptcy Court shall be herein defined as the "<u>Petition Date</u>".

4.2     <u>Sale Motion</u>.  Seller shall file with the Bankruptcy Court on the Petition Date, a motion or motions (the "<u>Sale Motion</u>") seeking the Bankruptcy Court's approval of (i) an order (the "<u>Bidding Procedures Order</u>") that, among other things, establishes procedures for an auction process to solicit competing bids and authorizes payment of the Breakup Fee (defined below) and the Expense Reimbursement (defined below), and (ii) an order (the "<u>Sale Order</u>") that, among other things, approves this Agreement, the Purchase and Sale Agreement, and the sale, transfer and assignment of the Assets and the Property (as defined in the Purchase and Sale Agreement) by Seller and Realty (as defined in the Purchase and Sale Agreement) to Buyer and Real Estate Buyer, respectively, pursuant to sections 105, 363 and 365 of the Bankruptcy Code. Both the Bidding Procedures Order and the Sale Order must be in all material respects in forms and substance reasonably acceptable to Buyer and Real Estate Buyer, in their sole discretion. Seller shall file true, correct and complete copies of this Agreement and the Purchase and Sale Agreement with the Sale Motion.  The Sale Motion shall request, among other things, the scheduling of (i) the date for an auction (the "<u>Auction</u>") to be (a) conducted by the Seller and Realty for the sale of the Assets and Property if, and only if, any competing pre-qualified bid is

received pursuant to the Bidding Procedures Order, and (b) commenced no later than May 26, 2015, and (ii) the date, which shall be no more than two (2) business days after the Auction, for the hearing (the "Sale Hearing") to consider entry of the Sale Order.

4.3     Sale Order.  Seller shall use reasonable best efforts to obtain entry of the Sale Order approving the transactions contemplated by this Agreement and the Purchase and Sale Agreement and granting, among other things, that (i) such sale, transfer and conveyance shall be, to the fullest extent permitted by the Bankruptcy Code and pursuant to Bankruptcy Code sections 105, 363(b) and 363(f), free and clear of all Encumbrances, other than the Assumed Liabilities, (ii) all Contracts (including the Provider Agreements, the Resident Agreements and the Larkin Lease (as defined in the Purchase and Sale Agreement)) required to be assumed by Seller or Realty and assigned to Buyer or Real Estate Buyer, as the case may be, are so assumed and assigned free and clear of all Encumbrances, other than the Assumed Liabilities, to the fullest extent permitted by Bankruptcy Code section 365, (iii) Buyer and Real Estate Buyer are deemed to have purchased the Assets and the Property, respectively, in good faith pursuant to Bankruptcy Code section 363(m), and (iv) Seller and Realty are authorized and directed to execute, upon request by Buyer and Real Estate Buyer, one or more assignments in form, substance and number reasonably acceptable to Buyer and Real Estate Buyer, evidencing the sale, transfer and conveyance of the Assets and the Property to Buyer and Real Estate Buyer, respectively, and/or their designees.

4.4     Assumption and Assignment.

(i)     Seller shall assume and assign to Buyer the Provider Agreements and the Resident Agreements.  As required by 6.03(vii) of the Purchase and Sale Agreement, Realty shall assume and assign to Real Estate Buyer the Larkin Lease.  Buyer may, at any time and in its sole discretion, designate additional Contracts to be assumed by Seller and assigned to Buyer. Seller shall use reasonable best efforts to obtain entry of a Bankruptcy Court order (the "Assumption Order"), which Assumption Order may be the Sale Order, (i) authorizing, pursuant to Bankruptcy Code sections 105, 363 and 365, Seller to assume and assign to Buyer the Provider Agreements, the Resident Agreements, and any other Contract so designated by Buyer, (ii) authorizing, pursuant to Bankruptcy Code sections 105, 363 and 365, Realty to assume and assign to Real Estate Buyer the Larkin Lease, and (iii) fixing the amounts required by Bankruptcy Code section 365(b)(1) (the "Cure Costs").  Seller shall be responsible for all Cure Costs.  Buyer or Real Estate Buyer, as applicable, and with the reasonable cooperation and assistance of Seller, will provide adequate assurance of future performance under each assigned Contract. Seller shall not assume or reject any Contract without the prior written consent of Buyer.

4.5     Procedure. Subject to its obligations as a debtor-in-possession, Seller shall promptly make any filings, take all actions and use reasonable best efforts to obtain all relief from the Bankruptcy Court that is necessary or appropriate to consummate the transactions contemplated by this Agreement and the Purchase and Sale Agreement.  Seller shall provide Buyer with drafts of all papers and proposed orders to be filed or submitted in connection with this Agreement for Buyer's prior review and comment and shall cooperate with Buyer to make reasonable changes thereto.  Seller agrees to diligently prosecute the entry of the Bidding

Procedures Order, the Sale Order and the Assumption Order. In the event the entry of the Bidding Procedures Order, the Sale Order and/or the Assumption Order is/are appealed, Seller shall use its reasonable best efforts to oppose such appeal(s). Notwithstanding the foregoing, any resulting changes to this Agreement, the Bidding Procedures Order, the Sale Order or the Assumption Order shall be subject to Buyer's approval, in its sole discretion.

      4.6    <u>Purchaser Protections</u>.

      (i)    <u>Alternate Transaction</u>. "<u>Alternate Transaction</u>" means a transaction or series of related transactions pursuant to which Seller (a) accepts at the Auction a bid, other than that of Buyer and Real Estate Buyer, as the highest or best offer, or (b) sells, transfers, leases or otherwise disposes of, directly or indirectly, including through an asset sale, stock sale, merger, reorganization or bankruptcy plan of reorganization or liquidation, or other similar transaction (by Seller or otherwise), including a Bankruptcy Court-approved stand-alone plan of reorganization or refinancing, all or substantially all of the Assets and/or the Property (or agrees to do any of the foregoing) to a party or parties other than Buyer and Real Estate Buyer.

      (ii)    <u>Breakup Fee</u>. If this Agreement and/or the Purchase and Sale Agreement is/are terminated due to (i) the acceptance by Seller of an Alternate Transaction or (ii) the consummation of an Alternate Transaction, then Buyer and Real Estate Buyer shall be deemed to have earned a fee of $595,000.00 (the "<u>Breakup Fee</u>"). Additionally, if this Agreement is terminated pursuant to <u>Section 12.2(i)</u> or due to a material violation or breach by Seller of any representation, warranty or covenant contained in this Agreement and/or the Purchase and Sale Agreement that is within the control of Seller and within nine (9) months after such termination, Seller consummates an Alternate Transaction, then Buyer and Real Estate Buyer shall be deemed to have earned the Breakup Fee. The Breakup Fee shall be paid in cash to Buyer, without further order of the Bankruptcy Court, in cash at the closing of an Alternate Transaction.

      (iii)    <u>Expense Reimbursement</u>. If this Agreement and/or the Purchase and Sale Agreement is/are terminated for any reason (other than for the reason set forth in <u>Section 12.1(i)</u>), then Buyer and Real Estate Buyer shall be deemed to have earned the reasonable out-of-pocket costs, fees and expenses (including legal, financial advisory, accounting and other similar costs, fees and expenses) incurred by Buyer and Real Estate Buyer or their affiliates in connection with the negotiation, documentation and implementation of this Agreement and the Purchase and Sale Agreement and the transactions contemplated hereby and thereby and all proceedings incident thereto (the "<u>Expense Reimbursement</u>"); <u>provided</u>, that under no circumstances shall the amount of the Expense Reimbursement exceed $75,000.00 in the aggregate. The Expense Reimbursement shall be paid in cash, without further order of the Bankruptcy Court to the Buyer immediately following such termination.

      (iv)    The parties acknowledge that the agreements contained in this <u>Section 4.6</u> are an integral part of the transactions contemplated by this Agreement and that without these agreements neither Seller nor Buyer would enter into this Agreement.

      (v)    Any payment made pursuant to this <u>Section 4.6</u> shall be an administrative expense priority obligation under Bankruptcy Code section 364(c)(1) with priority over all

expenses of the kind specified in Bankruptcy Code sections 503(b) and 507, subject to any allowed super-priority claims of Seller's post-petition lender, if any.

**5.** **Seller's Representations and Warranties**. Except as otherwise set forth in the schedule of exceptions which shall be completed by the parties within thirty (30) days of the Effective Date and attached hereto (the "Schedule of Exceptions") (which exceptions set forth in the Schedule of Exceptions shall specifically identify the Section or Sections of this Section 5 to which such exceptions relate and shall constitute exceptions to such identified Sections only), Seller hereby represents and warrants to Buyer, on the date hereof and as of the Closing Date, as follows:

     5.1    Organization and Authority of Seller. Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the state of Florida, and, subject to approval by the Bankruptcy Court, has the corporate power to own its properties and Assets, conduct the Business as it is now being conducted, and consummate the transactions contemplated by this Agreement. Seller is not required to qualify to do business as a foreign corporation in any jurisdiction in which it is not so qualified.

     5.2    Enforceability; No Conflicts. Subject to entry of the Bidding Procedures Order and the Sale Order and such other authorization required to be obtained by the Seller and Realty from Bankruptcy Court, the execution and delivery of this Agreement and the agreements and instruments delivered in connection with this Agreement, including, without limitation, the Purchase and Sale Agreement (the "Transaction Documents"), and the performance of the transactions contemplated hereby and thereby, have been duly authorized and approved by all necessary corporate action of Seller, including but not limited to the adoption of the resolution set forth in Schedule 5.2. Seller has full corporate power to enter into and perform this Agreement, each Transaction Document and the transactions contemplated hereby and thereby. Assuming the due authorization, execution and delivery by the other parties hereto and the entry of the Bidding Procedures Order, the Sale Order and such other authorization required to be obtained by the Seller and Realty from the Bankruptcy Court, this Agreement and each Transaction Document constitutes the valid and binding agreement of Seller and are enforceable in accordance with each of their terms, subject to the effect of applicable bankruptcy, insolvency, reorganization or other similar laws affecting the rights of creditors and the effect, availability of rules of law governing specific performance, injunctive relief or other equitable remedies, and principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

     5.3    No Violation. Except to the extent that the consent of certain Governmental Authorities is required to close the transactions contemplated by this Agreement and the other Transaction Documents, including, without limitation, the approval of the Bankruptcy Court, if applicable, the United States District Court for the Southern District of Florida in connection with Case No. 12-23601 and/or, to the extent applicable or required to obtain such Court's approval, the U.S. Department of Justice (the "DOJ") (collectively, "Court Approval"), and the approval of the change of ownership by AHCA, the execution and delivery of each Transaction Document by Seller, the performance by such parties of their respective obligations thereunder and the consummation by them of the transactions contemplated by the Transaction Documents will not (i) contravene any provision of Seller's Articles of Organization, any amendments

thereto, Seller's operating agreement, any amendments thereto, or other organizational or governing document of Seller, (ii) violate or conflict with any Law (as defined below) or any arbitration award which is either applicable to, binding upon or enforceable against any such parties, or their property or assets (including the Assets), (iii) result in or require the creation or imposition of any Encumbrance upon or with respect to any of the properties or assets of any such parties, (iv) give to any individual or entity a right or claim against any such parties. "Law" means any provision of any foreign, federal, state or local law, statute, ordinance, charter, constitution, treaty, code, rule, regulation, decree, writ, injunction, judgment, order or guideline, including common law.

5.4  <u>Subsidiaries</u>. Seller does not own, directly or indirectly, any outstanding voting securities of or other interests in, nor does it control, any other corporation, partnership, limited liability company, joint venture or other entity.

5.5  <u>Title to and Condition of the Assets</u>.  Except as otherwise set forth on <u>Schedule 5.5</u>, Seller has good and marketable title to, and has the right to sell, assign, transfer, convey and deliver the Assets. The Assets are free and clear of all Encumbrances of any kind or nature except for any liens or encumbrances permitted hereunder.  Subject to entry of the Sale Order, at the Closing, Buyer will be vested with good and valid title to such Assets, free and clear of all encumbrances other than as permitted hereunder, to the fullest extent permissible under Law, including Section 363 of the Bankruptcy Code.

5.6  <u>Financial Statements and Liabilities of Seller</u>.

(i)  Attached as <u>Schedule 5.6(i)</u> is a true and correct copy of Seller's (a) unaudited balance sheet as of July 31, 2014, together with the related statements of earnings, changes in financial conditions and shareholder's equity of Seller for the same period ("<u>Interim Balance Sheet</u>"), and (b) unaudited balance sheets and statements of income as of and for the fiscal years ended December 31, 2013 and December 31, 2012 for the Business (collectively with the Interim Balance Sheet the "<u>Financial Statements</u>").  Notwithstanding the foregoing, Buyer acknowledges that the Financial Statements were not prepared by Seller, and the representations provided with respect to the Financial Statements in this <u>Section 5.6</u> are made to the best of Seller's knowledge.

(ii)  Except for payments owed to the mortgagor of the Real Property, any payments due to AHCA which will be paid at Closing out of the proceeds of this transaction, and as otherwise set forth on <u>Schedule 5.6(ii)</u>, to Seller's knowledge, Seller is not in default with respect to any liabilities or obligations shown or reflected in the Financial Statements, and such liabilities incurred or accrued subsequent to the date of the Financial Statements, have been, or are being paid and discharged by Seller as they become due, and all such liabilities and obligations were incurred in the ordinary course of business.

(iii)  The Financial Statements are in accordance with the books and records of Seller.

5.7    Employees, Service Providers and Other Contractors.

(i)    At Closing, Seller shall use commercially reasonable efforts to provide Buyer with an updated list of (a) the names of all officers, directors, and employees of Seller, their respective title or position, present annual compensation (including bonuses, commissions and deferred compensation), and (b) individuals and advisors, excluding Service Providers (an initial copy of which has been provided to Buyer, who are currently performing services for Seller related to the Business who are classified as "consultants" or "independent contractors", which shall be attached as Schedule 5.7(i).

(ii)    At Closing, Seller use commercially reasonable efforts to set forth on Schedule 5.7(ii) a list of (a) any guaranteed or other payments due to Service Providers, contractors or other agents; (b) bonuses, severance payments, termination pay and other special compensation of any kind paid to, or that would be payable to (as a result of this Agreement and/or Transaction Documents), any Service Provider or other contractor since the Interim Balance Sheet Date; and (c) increases in any Service Provider's wage or salary since the Interim Balance Sheet Date (provided that Seller shall use best efforts to ensure that no such increases shall be made other than in accordance with prior practice);

(iii)    At Closing, Seller will use commercially reasonable efforts to cause all of Seller's employees to be terminated, and Buyer will have no liability related to the employment or termination of such employees.

(iv)    As of the Receivership Date (as defined below) Seller did not have, and to Seller's knowledge, Seller has no collective bargaining agreements with any of its employees. To Seller's knowledge, there is no labor union organizing activity pending or, to the Seller's knowledge, threatened with respect to Seller.

5.8    Licenses. To Seller's knowledge, Seller has all Licenses that are necessary for the conduct of the Business as presently conducted, including, without limitation, the Provider License and all licenses and permits required as a mental health hospital in the state of Florida. To Seller's knowledge, each of the Licenses are currently valid, binding, and in full force and effect.

5.9    Intellectual Property. Schedule 5.9 shall contain a true and complete list of all Intellectual Property, internet domain names and all web sites owned or operated by or on behalf of Seller. Seller has, and the Assets include, full legal right, title and interest in and to the Intellectual Property, internet domain names and web sites used in the conduct of the Business. The conduct of the Business of Seller, and the conduct and use of the Intellectual Property, to the knowledge of Seller, does not infringe or misappropriate any rights held or asserted by any person and, to the knowledge of Seller, no person is infringing on any Intellectual Property. None of the Intellectual Property is the subject of any pending or, to the knowledge of Seller, threatened action for opposition, cancellation, declaration, infringement, or invalidity, unenforceability or misappropriation or like proceeding.

5.10    Material Contracts. Section 5.10 of the Schedule of Exceptions shall set forth a complete list of all Seller Contracts, as of the Effective Date, whether or not made in the ordinary

course of business, which are material to the operation of the Business (collectively, the "Material Contracts"). Except as set forth on Schedule 5.10, to Seller's knowledge all Material Contracts are in effect.

5.11  Real Property.  Seller leases the premises located at 1200 North 35th Ave., Hollywood, FL 33021, which Seller leases from High Ridge Management Corp. (the "Landlord").  Seller has not received any notice of any violation of any applicable deed restriction, building code, zoning ordinance, covenant, lease agreement, or other law or regulation with respect to the Premises.  No default or breach exists under any of the terms, covenants, conditions, or restrictions of its use of the Premises. Seller does not own any interest in real property.

5.12  Litigation. Except for the Bankruptcy Cases, the Foreclosure Case and as set forth on Schedule 5.12, and except for legal proceedings that do not have and could not reasonably be expected to have, individually or in the aggregate, a material adverse effect, as of the date hereof, there are no legal proceedings pending or, to Seller's knowledge, threatened against Seller that involve or relate to any of the transactions contemplated by this Agreement or affect any of the Assets or the Business or that could reasonably be expected to adversely affect Buyer's ownership of the Assets after the Closing.

5.13  Investigations.  Except as disclosed in Schedule 5.13, to Seller's knowledge, Seller is not the subject or target of any civil, criminal or administrative investigation or a defendant, respondent, or any of their equivalents in any federal, Florida or local investigation, criminal prosecution, civil complaint or administrative action.

5.14  Schedules; Updates prior to Closing.  The parties acknowledge and agree that, as of the date this Agreement is executed, the Schedules shall be in draft form.  However, Seller shall work in good faith to update and finalize each schedule as soon as possible, and shall further update all schedules prior to Closing.

5.15  Overpayments.  Except as set forth on Schedule 5.15, there are no pending, nor, to Seller's knowledge, threatened claims, demands or other notices of or action alleging the overpayment of Medicaid, Medicare or other governmental or quasi-governmental reimbursements or demanding the return of such alleged overpayments by any third party payor, nor is Seller aware of any grounds for such claim or demand.

5.16  Audits.  Seller agrees to fully cooperate with Buyer in connection with any audit by any applicable governmental regulatory agency in connection with any Medicaid or Medicare cost reports filed by Seller, including but not limited to providing Buyer with any and all necessary documentation, supporting schedules in its possession as reasonably requested by Buyer

5.17  Licensure.  The Facility is and shall on the Closing Date be licensed by AHCA as a 152 bed skilled care nursing home facility.  Such license is and shall on the Closing Date be in good standing and in full force and effect, without the requirement for any waiver and subject to no limitations.  Except for a notice received from AHCA and as otherwise set forth on Schedule

5.17, to Seller's knowledge, Seller has not received any written notice from any governmental agency requiring the correction of any condition with respect to such license which has not been the subject of a plan of correction for which compliance has been affected and Seller has no reason to believe that the good standing of any such license is in jeopardy.

5.18   Certification.  The Facility is, and shall be on the Closing Date, certified for participation of the Medicare and Medicaid reimbursement programs.  Such certification is and shall on the Closing Date be in good standing and full force and effect and subject to no restrictions or limitations.   Except as provided on Schedule 5.18, to the best of Seller's knowledge, Seller has not received any notice from AHCA, CMS or any other governmental agency requiring the correction of any condition with respect to such certification which has not been the subject of a plan of correction for which compliance has been affected and Seller has no reason to believe that the good standing of such certification is in jeopardy.  Seller shall use its best efforts to reasonably promptly comply (or cause the state court receiver to comply) with any violation notices concerning the Facility received after the date hereof and before the Closing Date to the extent that any such notice requires compliance activities. In addition to, and not in any manner limiting the generality of, the foregoing, during the three-year period prior to the Closing Date, except as set forth in Schedule 5.18, to Seller's knowledge, Seller has not received any of the following with respect to the Facility:

1.   A notice of "immediate jeopardy" violations;
2.   A notice of termination of the license issued by AHCA to operate the Facility as a 152 bed skilled nursing facility;
3.   A notice of termination of the certification issued by AHCA or CMS of the Facility to participate in the Medicare and/or Medicaid reimbursement programs;
4.   A notice that the Facility is not in substantial compliance with the requirements for participation in the Medicare and/or Medicaid reimbursement programs;
5.   a notice of imposition of civil monetary penalties or other intermediate sanctions in accordance with 42 CFR § 488.430 et seq;
6.   a notice of denial of payment for new admissions to the Facility, or prohibition on acceptance of new admissions; or
7.   a notice that the Facility is being placed on the Special Focus Facility list.

5.19   Cost Reports.  To Seller's Knowledge, the receiver in the Foreclosure Action has filed, within the appropriate reporting period and with the appropriate authority, all cost reports required to be filed with respect to periods prior to the date hereof relating to the Facility, other than cost reports remaining to be filed pursuant to Section 3.1 hereof.

5.20   Life Care Contracts.  To the best of Seller's knowledge, the Facility is not a party to any life care contract with respect to any resident of the Facility, which would require ongoing care for such resident in return for a lump sum payment.

5.21    Personal Property and Residents.  Unless specifically permitted pursuant to the terms of this Agreement, Seller shall use commercially reasonable efforts to ensure that items of personal property are not removed from the Facility, and Seller shall not transfer residents from the Facility to a skilled/intermediate care nursing home facility owned or operated by an entity which is owned in whole or part, directly or indirectly, by the principals of Seller.  The information set forth in the admission agreements and patient rolls pertaining to residents of the Facility is true and correct in all material respects as of the respective dates of such admission agreements and patient rolls, and there are no patient care agreements with respect to any resident of the Facility which differs materially from the standard form used at the Facility.

5.22    Personal Needs Allowance.  To the best of Seller's knowledge, the Facility is currently in material compliance with all state and federal regulations relating to maintaining and accounting for the personal needs allowance ("PNA") for residents who request the establishment of a PNA account.  To Seller's knowledge, neither Seller nor the Facility has received any notice from any governmental authority citing or alleging any violation by Seller or the Facility of any state or federal PNA regulations.

5.23    Furniture.  To the best of Seller's knowledge, (i) there are at the Facility a number of beds equal to the maximum bed capacity as permitted under the Facility license; (ii)  each bed is in good repair and conforms with the minimum standards set forth under the regulations adopted by AHCA; and (iii) for each such bed, there exists the minimum furnishings, fixtures and other accessories required by AHCA.

5.24    Multi-Employer Plans.  As of the Receivership Date, Seller did not, and to Seller's knowledge, since the Receivership Date Seller does not, and is not required to, contribute (and has not ever contributed or been required to contribute) to any multi-employer plan, as defined in Section 3(37) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") with respect to the Current Employees.

5.25    Compliance with Applicable Laws.  Prior to the Receivership Date, the Facility was and, to the best of Seller's knowledge, since the Receivership Date, the Facility has been and is presently used and operated in material compliance with any applicable statute, law, regulation, rule, licensing requirement, ordinance, order or permit of any kind whatsoever affecting the Facility or any part thereof, and any rules or regulations promulgated thereunder, as well as any thereof relating to wages, hours, hiring, promotions, retirement, working conditions, nondiscrimination, health, safety, pensions and employee benefits, but not including any environmental laws.  In addition, no waivers have been obtained or are required to make the representations contained in this Section 5.25 fully true and correct.

5.26    No Additional Representations or Warranties.  Except as set forth in this Section 5, Seller makes no representations or warranties to Buyer regarding the Assets or the Business, whether express or implied, and further expressly disclaims all such representations and warranties, including, without limitation, warranties of merchantability and/or fitness for a particular purpose.  Further, Buyer acknowledges and agrees that NEITHER SELLER'S COUNSEL NOR ANY OF SELLER'S OTHER PROFESSIONALS HAVE PREPARED ANY OF THE INFORMATION REGARDING SELLER OR REALTY, OR ANY OF THEIR

RESPECTIVE OPERATIONS, ASSETS OR FINANCIAL CONDITION.  CONSEQUENTLY, NO REPRESENTATION IS MADE BY SELLER'S COUNSEL OR OTHER AGENTS REGARDING THE ACCURACY, RELIABILITY, VERACITY, ADEQUACY, OR COMPLETENESS OF ANY INFORMATION PROVIDED IN CONNECTION WITH THIS AGREEMENT, AND BUYER AND REAL ESTATE BUYER ARE ENCOURAGED TO CONSULT WITH THEIR OWN ADVISORS REGARDING ANY SUCH INFORMATION.

5.27    Knowledge of Seller.  The parties agree and acknowledge that a receiver has been present at and in control of the Facility, the Business and the Assets since approximately January 16, 2014 (the "Receivership Date"), and as such any provisions of this Agreement that are limited to Seller's "knowledge" (or the best of Seller's knowledge or whether or not Seller has any "knowledge of" an event or circumstance) (a "Knowledge Qualifier") shall only mean the actual knowledge of Tamir Zury, Leonore Kallen, or any other member, shareholder, manager or director of Seller or Realty, and shall only be deemed subject to the Knowledge Qualifier for periods following the Receivership Date, and shall apply without any Knowledge Qualifier for periods prior to the Receivership Date.  In addition, in the event Seller regains control of the facility from the receiver following the date hereof, then any Knowledge Qualifier hereunder shall not apply with respect to any periods following such date (the "Control Date") and the provisions hereof shall apply with respect to periods following the Control Date without any Knowledge Qualifier.

**6.**    **Buyer's Representations and Warranties**.  Buyer represents and warrants to Seller, as of the Effective Date and as of the Closing Date as follows:

6.1    Authorization.  The execution and delivery of this Agreement and each Transaction Document, and the performance of the transactions contemplated hereby and thereby, have been duly authorized and approved by all necessary action of Buyer.  Buyer has full power to enter into and perform this Agreement and each Transaction Document and the transactions contemplated hereby and thereby. This Agreement and each Transaction Document constitutes a valid and binding agreement of Buyer enforceable in accordance with its terms (assuming the due authorization, execution and delivery by Seller and Bankruptcy Court approval and entry of the Sale Order), subject to the effect of applicable bankruptcy, insolvency, reorganization or other similar laws affecting the rights of creditors and the effect or availability of rules of law governing specific performance, injunctive relief or other equitable remedies.

6.2    No Material Claim. There is no material proceeding currently pending, or to Buyer's knowledge threatened, against Buyer which would prevent the consummation of the transactions contemplated by this Agreement or any Transaction Document, and Buyer does not know of any basis, grounds for, or threat of, any such proceeding.

6.3    Examination. Buyer and Buyer's representatives have received or been given access to all of the information described or referred to in this Agreement and all other information requested by them in respect of Seller. Buyer and its representatives have been afforded the opportunity to meet with, ask questions of and receive answers from the management of Seller regarding the Business and the Assets in connection with the determination by the Buyer to enter into this Agreement and consummate the transactions contemplated hereby.

6.4     <u>Sufficient Funds</u>.  Buyer has, on the date hereof and shall have as of the Closing Date, the financial capability to purchase the Assets on the terms and subject to the conditions set forth in this Agreement.

6.5     <u>Litigation</u>. As of the date hereof, there are no legal proceedings pending or, to the knowledge of Buyer, threatened against Buyer that involve or relate to any of the transactions contemplated by this Agreement.

7.     **<u>Additional Covenants and Further Agreements</u>**.

7.1     <u>Brokers and Consultants</u>.  Buyer and Seller each represent and warrant to the other that the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby will not give rise to any valid claim against either for a finder's fee, brokerage commission, or other like payment.

7.2     <u>Audits</u>.  Seller agrees to fully cooperate with Buyer in connection with any audit by any applicable governmental regulatory agency in connection with any Medicaid or Medicare cost reports filed by Seller, including but not limited to providing Buyer with any and all necessary documentation, supporting schedules in its possession as reasonably requested by Buyer

7.3     <u>Further Assurances</u>. The parties agree to execute and deliver or cause to be executed and delivered at the Closing, or at other reasonable times and places such additional instruments as the other party or its counsel may reasonably request for the purpose of carrying out this Agreement. Without limiting the generality of the foregoing, Seller shall cooperate with Buyer and take such actions as are necessary or expedient to (i) facilitate the process of the transfer of the Provider License and Provider Agreements, and (ii) cause all telephone numbers utilized by Seller in connection with the Business to be transferred to Buyer on the Closing Date.

7.4     <u>Indemnification of Buyer</u>. Subject to the limitations set forth in <u>Section 7.6</u>, Seller shall indemnify, defend and hold harmless Buyer, its managers, members officers, employees and agents (each, a "<u>Buyer Indemnified Party</u>") from and against any and all loss, liability, damage, cost or expense (including, but not limited to, reasonable legal fees and expenses) (collectively, the "<u>Losses</u>") which any Buyer Indemnified Party may incur or suffer that results from, relates to or arises out of (a) the inaccuracy or breach of any representation or warranty made by Seller in this Agreement or any other Transaction Document, (b) the failure of Seller to comply with any covenants or other agreements made by Seller in this Agreement or any Transaction Document, (c) any and all taxes (including, penalties and interest) arising out of or related to the possession or use of the Assets or operation of the Business prior to the Closing Date, (d) the Excluded Assets and the Excluded Liabilities, (e) any Recoupment Claim, (f) any resident admitted by Seller prior to the Closing, who is determined to be ineligible for Medicaid reimbursement and (g) any other actual Losses actually and properly incurred by Buyer as a result of Seller's operation of the Facility prior to the Closing ("<u>Pre-Closing Losses</u>"); provided, however, that Seller shall not be required to indemnify any Buyer Indemnified Party to the extent that of any Losses incurred as a result of the negligence or willful misconduct of any Buyer Indemnified Party, or for any amounts payable by Buyer pursuant to <u>Section 3.4</u>. Reasonably promptly after receipt by any Buyer Indemnified Party of any claim or action for which

indemnification may be available under this Section 7.4, such Buyer Indemnified Party shall give written notice of such claim or action to Seller, but the failure to so notify Seller shall not relieve it of any liability, except to the extent Seller is actually prejudiced thereby. Seller shall assume the sole control of the defense of such claim or action, provided that the Buyer Indemnified Party may, at such Buyer Indemnified Party's sole cost and expense, engage counsel of its choosing to participate in such defense. No compromise or settlement of such claim or action may be effected by Seller without the Buyer Indemnified Party's prior written consent unless (i) there is no finding or admission of any violation of law by the Buyer Indemnified Party, or any violation of Buyer's rights to the Assets, and (ii) no Losses will be incurred by the Buyer Indemnified Party. The provisions of this Section 7.4 shall expressly survive the termination of this Agreement.

7.5     Indemnification of Seller. Subject to the limitations set forth in Section 7.6, Buyer shall indemnify, defend and hold harmless Seller, its managers, members officers, employees and agents (each, a "Seller Indemnified Party") from and against any and all Losses which any Seller Indemnified Party may incur or suffer that results from, relates to or arises out of (a) the inaccuracy or breach of any representation or warranty made by Buyer in this Agreement or any other Transaction Document, (b) the failure of Seller to comply with any covenants or other agreements made by Buyer in this Agreement or any Transaction Document, (c) the operation of the Business or ownership of the Assets after the Closing Date, (d) any and all taxes (including, penalties and interest) arising out of or related to the possession or use of the Assets or operation of the Business after to the Closing Date; provided, however, that Buyer shall not be required to indemnify any Seller Indemnified Party to the extent that of any Losses incurred as a result of the gross negligence or willful misconduct of any Buyer Indemnified Party.  Reasonably promptly after receipt by any Buyer Indemnified Party of any claim or action for which indemnification may be available under this Section 7.5, such Seller Indemnified Party shall give written notice of such claim or action to Buyer, but the failure to so notify Buyer shall not relieve it of any liability, except to the extent Buyer is actually prejudiced thereby. Buyer shall assume the sole control of the defense of such claim or action, provided that the Seller Indemnified Party may, at such Seller Indemnified Party's sole cost and expense, engage counsel of its choosing to participate in such defense. No compromise or settlement of such claim or action may be effected by Buyer without the applicable Seller Indemnified Party's prior written consent unless (i) there is no finding or admission of any violation of law by the Seller Indemnified Party, and (ii) no Losses will be incurred by the Seller Indemnified Party. The provisions of this Section 7.5 shall expressly survive the termination of this Agreement.

7.6     Limitations.

(i)     Except for: (i) Seller's representations and warranties set forth in Sections 5.1, 5.2, 5.3, 5.5 and 5.6 (the "Fundamental Representations") which shall survive with respect to any matters subject to a written claim prior to the second anniversary of the Closing Date, and (ii) Losses relating to Recoupment Claims, for which indemnification shall be available with respect to any matters subject to a written claim prior to the fourth (4th) anniversary of the Closing, Seller's representations and warranties and obligations related to Pre-Closing Losses (and indemnification obligations with respect thereto) shall expire and be of no further force or effect on the first anniversary of the Closing Date.

(ii)    Other than with respect to Recoupment Claims, for which no threshold shall apply hereunder, no claim for indemnity by a Buyer Indemnified Party pursuant to Section 7.4 hereof shall be made unless and until the aggregate dollar amount of all such claims shall have exceeded $25,000.00 (in which case Seller shall be obligated to indemnify, defend and hold harmless each Buyer Indemnified Party for all Damages from the first dollar, including the initial $25,000.00). ("Damages" means losses, liabilities, damages, costs (including court costs and costs of appeal), taxes and expenses (including reasonable attorney's fees).

(iii)    Other than with respect to Recoupment Claims, with respect to which the ceiling shall equal the purchase price of the Purchased Assets (provided that the parties agree and acknowledge that Seller is in bankruptcy, and may not have assets following the Closing other that the Escrow Holdback held pursuant to the Purchase and Sale Agreement), the indemnification to which Buyer Indemnified Parties are entitled pursuant to Section 7.4 shall be subject to an aggregate ceiling equal to Seven Hundred Fifty Thousand Dollars (US $750,000.00).

(iv)    All obligations of Seller hereunder shall be secured by the Escrow Holdback, held pursuant to the Purchase and Sale Agreement.

(v)    NO PARTY SHALL BE RESPONSIBLE FOR OR HAVE ANY OBLIGATION TO INDEMNIFY, DEFEND OR HOLD HARMLESS THE OTHER PARTY OR ANY OTHER PERSON FOR SPECIAL, CONSEQUENTIAL, PUNITIVE OR EXEMPLARY DAMAGES

7.7    Access to Seller.  From and after the Effective Date until the sooner to occur of the Closing Date or the termination of this Agreement, Seller shall use its best efforts to make appropriate arrangements to provide, Buyer and its representatives with access, at reasonable times, and upon reasonable prior notice, to the books, records, employees and property of Seller as Buyer reasonably requests to facilitate further investigation, inspection and analysis by Buyer of the Assets and Seller, its Business and prospects. Seller shall make available to Buyer (and its representatives) its attorneys, accountants and other outside consultants for the purpose of discussing the Business and the prospects of Seller.

7.8    Provider Agreements. For any periods following the Closing that Buyer is not yet able to bill Medicare and/or Medicaid, Seller shall allow Buyer to bill under Seller's provider number(s) (and any agreement(s) in connection therewith, to the extent so used by Seller), and Seller shall promptly forward to Buyer any payments received with respect thereto.

7.9    Resident Trust Funds.

(a)    Reasonably promptly after the Closing, Seller shall provide to Buyer a true, correct and complete accounting (properly reconciled) certified as being true, correct and complete by Seller's accountants or financial advisors of any patient trust funds and an inventory of all residents' property held by Seller on the Closing Date for patients at the Facility, a copy of which shall be attached hereto as Schedule 7.9. ("Patient Trust Funds and Property"), together with the funds and property shown on such accounting.

(b)    Seller will indemnify, defend and hold Buyer harmless from any and all liabilities, claims, demands and causes of action of any nature whatsoever, including reasonable attorneys' fees: (i) in the event the amount of funds or any property, if any, transferred to Buyer did not represent the full amount of the funds and/or property delivered to Seller as of the Closing Date, (ii) with respect to any Patient Trust Funds and Property delivered, or claimed to have been delivered, to Seller, but which were not delivered by Seller to Buyer, or (iii) for claims which arise from actions or omissions of Seller with respect to the Patient Trust Funds and Property prior to the Closing Date; provided however that Seller shall be allowed a period of five (5) business days following receipt of written notice, to cure any of the foregoing prior to being required to indemnify.

(c)    Buyer will indemnify, defend and hold Seller harmless from all liabilities, claims, demands and causes of action of any nature whatsoever, including reasonable attorneys' fees, in the event a claim is made against Seller with respect to the Patient Trust Funds and Property where said funds were transferred to Buyer pursuant to the terms hereof, or for claims which arise from actions or omissions of Buyer after the Closing Date with respect to Patient Trust Funds and Property actually received by Buyer.

7.10    <u>Access to Books and Records</u>.  From and after the Closing Date, upon reasonable prior written notice from Seller, Buyer and Real Estate Buyer shall reasonably cooperate with Seller and provide Seller, at Seller's reasonable cost and expense, with free and full access to all books and records and other information related to the operation of the Facility and the Business prior to the Closing Date as Seller or its counsel deem reasonably necessary or appropriate in connection with the investigation, defense, prosecution, or settlement of any claim, suit, demand, legal action, investigation, fine, charge, penalty or other proceeding, including, without limitation, all electronic and written communications, patient records, billing records, maintenance records, case files, marketing materials, contracts and other agreements.

7.11    <u>Conduct of Business.</u>    Until the Closing, Seller shall use commercially reasonable efforts, except as otherwise restricted by the Bankruptcy Code or an order of the Bankruptcy Court, to operate the Business in the ordinary course of business.  Seller shall use commercially reasonable efforts to (A) preserve intact its business organization and goodwill, (B) maintain the Business and the Assets, (C) maintain satisfactory relationships with its suppliers, contractors, distributors, vendors and residents, (D) pay all of its post-petition obligations in the ordinary course of business, and (E) continue to operate the Business in all material respect in compliance with all laws applicable to the Business and the Seller.

7.12    <u>Allocation of Purchase Price</u>.  Buyer and Seller shall allocate the Purchase Price (together with Assumed Liabilities properly included, if any) among the Assets in a manner consistent with the fair market values determined in good faith and on a reasonable basis by Buyer and Seller prior to the Closing Date. Such allocation shall be consistent with Section 1060 of the Internal Revenue Code and the Treasury Regulations thereunder.

7.13    <u>Cooperation and Audits</u>. Buyer and Seller will cooperate fully with each other regarding tax matters (including the execution of appropriate powers of attorney) and will make

available to the other as reasonably requested all information, records and documents relating to taxes governed by this Agreement until the expiration of the applicable statute of limitations or extension thereof or the conclusion of all audits, appeals or litigation with respect to such taxes.

## 8.    <u>Employees</u>.

8.1    Buyer shall determine, in its sole discretion, which of the Seller's employees shall be offered employment with Buyer after the Closing Date, pursuant to employment terms acceptable to Buyer (hereinafter, the "<u>Retained Employees</u>").   Nothing in this paragraph, however, shall create any right in favor of any person not a party hereto, including without limitation, the Current Employees, or constitute an employment agreement or condition of employment for any employee of Seller or any affiliate of Seller who is a Current Employee.

8.2    On the Closing Date, Seller shall provide Buyer with a credit (which credit shall be applied towards the Purchase Price paid pursuant to the Purchase and Sale Agreement) of an amount equal to all of the accrued (whether vested, unvested, contingent or mature) paid time off (which shall include all days for which Retained Employees are paid but do not actually work, such as sick days, vacation days, and holidays) and all other accrued but unpaid payroll obligations including but not limited to all FICA, withholding, unemployment, workmen's compensation or other employment related taxes in connection with the foregoing ("<u>Seller's Employment Expenses</u>"). Buyer expressly acknowledges that Buyer shall assume all obligations related to Seller's Employment Expenses.  Seller shall use commercially reasonable efforts to provide Buyer with a schedule of Seller's Employment Expenses prior to Closing which shall be attached <u>hereto as Schedule 8.2</u>, and to update such schedule at Closing to reflect amounts outstanding at the Closing.   In the event that Buyer discovers after the Closing Date that the amount credited is less than the amounts required under this <u>Section 8.2</u>, Seller shall pay to Buyer, within ten (10) days after Buyer provides notice thereof, an amount equal to such deficiencies.

8.3    Seller and Buyer agree and acknowledge that the employees at the Facility provide valuable services that are crucial for the success of the Facility, and Buyer's decision to serve as certified operator of the Facility is based upon the skills and qualifications of such employees.  As such, in the event that during the period beginning on the Effective Date and ending upon the date that is two (2) years following Closing, any Current Employee who is then-employed by (or whose employment by Buyer was terminated within the prior three months) is hired for employment by any person or entity that either directly or indirectly controls, is under common control with or is otherwise affiliated with Seller, then Seller shall pay to Buyer an amount equal to Fifty Thousand Dollars ($50,000.00) as liquidated damages, for each such Current Employee.  The parties agree and acknowledge that actual damages with respect to the foregoing would be difficult to ascertain and that Fifty Thousand Dollars ($50,000.00) is a fair and reasonable approximation of such actual damages.

## 9.    <u>Accounts Receivable</u>.

9.1    If at any time after the Closing Date, Buyer shall receive any payment from any federal or state agency, which payment includes any reimbursement with respect to payments or underpayments made to Seller for services rendered prior to the Closing Date, then Buyer shall

promptly remit such payments to Seller. Buyer and Seller shall send copies of all Medicare and Medicaid remittance advices to the other party for purposes of recording and pursuing accounts receivable for the period of twelve (12) months following the Closing Date and thereafter as reasonably requested by each party. If at any time after the Closing Date, Seller shall receive any payment from any federal or state agency, which payment represents reimbursement with respect to payments or underpayments made to Buyer for services rendered on or after the Closing Date, then Seller shall remit such payments to Buyer. Any such remittances pursuant to this <u>Section 9.1</u> shall occur within five (5) days from the date the party required to make such remittance receives payment thereof. In connection with the foregoing, Buyer and Seller shall each, upon reasonable prior written notice from the other party, provide the other party or its representatives with access to books and records relating to such payments and services to permit such party verify payment of all amounts it is entitled to receive under this Section.

9.2     Any non-designated payments received by Buyer or Seller shall be applied to the services to which such payments relate, and shall be payable to Seller to the extent that services provided pre-Closing and payable to Buyer to the extent that such services were rendered by Buyer after the Closing).

## 10.     <u>Conditions to Closing</u>.

10.1     <u>Seller's Conditions to Closing</u>. The obligations of Seller to consummate the transactions contemplated by this Agreement are subject to the satisfaction, on or before the Closing Date, of the following conditions:

(i)     The representations and warranties of Buyer contained in this Agreement and in any exhibit or other Transaction Documents delivered pursuant hereto shall be true and correct on and as of the Closing Date;

(ii)     AHCA shall have approved the change of ownership of the Provider License that will result from the transactions contemplated under this Agreement ("Licensure Transfer Approval"), and each other Government Authority with jurisdiction over the transfer of Assets and the Business as contemplated herein shall have approved the transactions contemplated by this Agreement and each Transaction Document, to the extent applicable;

(iii)     The Bidding Procedures Order shall have been entered by the Bankruptcy Court, shall not have been modified, amended, rescinded or vacate in any respect and shall not be subject to a stay.

(iv)     The Sale Order shall have been entered by the Bankruptcy Court, shall not have been modified, amended, rescinded or vacate in any respect and shall not be subject to a stay.

(v)     The Provider Agreements, the Resident Agreements, the Larkin Lease and any other Contract designated by Buyer shall be assumed and assigned to Buyer or Real Estate Buyer by order of the Bankruptcy Court.

(vi)    Each agreement of Buyer to be performed on or before the Closing Date pursuant to the terms hereof or as contemplated herein shall have been duly performed;

(vii)    As and to the extent necessary, the United States District Court for the Southern District of Florida shall have approved the sale and transfer of the Assets pursuant to this Agreement in connection with Case No. 12-23601 and/or, to the extent applicable or required in connection to obtain the court's approval, the U.S. Department of Justice;Real Estate Buyer and Realty shall have entered into the Purchase and Sale Agreement and the closing of the transactions contemplated shall occur concurrently with the Closing; and

(viii)    Buyer shall have delivered to Seller all of the Closing deliveries described in <u>Section 11.2(ii)</u> below and such deliveries and documents shall be acceptable in form and substance to Seller.

10.2    <u>Buyer's Conditions to Closing</u>. The obligations of Buyer at the Closing to consummate the transactions herein contemplated are subject to the fulfillment at or prior to the Closing of each of the following conditions:

(i)    The representations and warranties of Seller contained in this Agreement and in any exhibit or other Transaction Document delivered pursuant hereto shall be true and correct on, and as of, the Closing Date;

(ii)    Each agreement of Seller to be performed on or before the Closing Date pursuant to the terms hereof or as contemplated by this Agreement, including, without limitation, the obligations set forth in <u>Section 7.7</u>, shall have been duly performed;

(iii)    Buyer obtains, through its good faith efforts, Licensure Transfer Approval;

(iv)    Buyer obtains a satisfactory Phase II environmental report with respect to the Business, the Assets and the underlying real estate;

(v)    The Bidding Procedures Order shall have been entered in form and substance reasonably acceptable to Buyer by the Bankruptcy Court, shall not have been modified, amended, rescinded or vacate in any respect and shall not be subject to a stay;

(vi)    The Sale Order shall have been entered in form and substance reasonably acceptable to Buyer by the Bankruptcy Court, shall not have been modified, amended, rescinded or vacate in any respect and shall not be subject to a stay;

(vii)    The Provider Agreements, the Resident Agreements, the Larkin Lease and any other Contract designated by Buyer shall be assumed and assigned to Buyer or Real Estate Buyer, as the case may be, by order (in form and substance reasonably acceptable to Buyer) of the Bankruptcy Court;

(viii)    As and to the extent necessary, the United States District Court for the Southern District of Florida shall have approved the sale of the Assets pursuant to this

Agreement in connection with Case No. 12-23601 and/or, to the extent applicable or required in connection to obtain the court's approval, the U.S. Department of Justice;

(ix)     Buyer shall approve, in its reasonable discretion, any material and adverse update made by Seller to any informational schedules and exhibits hereto, between the Effective Date and the Closing date;

(x)     There shall not be at the Facility an open survey deficiency of the severity of "D" or worse;

(xi)     Seller shall have delivered to Buyer all of the Closing deliveries described in Section 11.2(i) below; and

(xii)     The Sale Order shall have become final and non-appealable by June 12, 2015.

**11.     Closing**.

11.1     Closing; Manner of Closing. The consummation of the transactions contemplated by this Agreement ("Closing") shall be concurrently with the closing pursuant to the Purchase and Sale Agreement (the "Closing Date"), subject to the closing conditions provided herein, either (i) at the offices of Seller's counsel; (ii) by exchange of documents via facsimile, PDF email, or nationally-recognized overnight courier; or (iii) at such other place and in such other manner as the parties may mutually agree.     Sections 5.00(a)-(b) of the Purchase and Sale Agreement (Closing) are incorporated herein by reference as if set forth at length herein.

11.2     Closing Deliveries.

(i)     At Closing, Seller shall deliver to Buyer the following:

(a)     a Bill of Sale in a form to be mutually agreed and attached hereto at Closing as Exhibit A;

(b)     a Closing Statement in a form to be mutually agreed (the "Closing Statement");

(c)     an Assignment with respect to intangible property, in a form to be mutually agreed and attached hereto at Closing as Exhibit B (the "Assignment");

(d)     a certificate of status for Seller dated not more than five (5) business days prior to the Closing Date issued by the Florida Secretary of State;

(e)     copies of actions of the members and managers of Seller approving this transaction;

(f)     any updates or modifications to the Schedules to this Agreement as necessary to reflect the operations of the Business from the execution of this Agreement to the Closing Date;

(g)     an assignment and assumption agreement with respect to all of Seller's rights and obligations under any assigned Contracts; and

(h)     such other documents, consents and instruments as are necessary to convey the Assets to Buyer, and all other instruments and documents required to be delivered by Seller under this Agreement or which counsel for Buyer may reasonably request for the purpose of Closing the transaction contemplated by this Agreement.

(ii)     At Closing, Buyer shall deliver to Seller, all of which shall be subject to Seller's prior approval:

(a)     the Closing Statement;

(b)     a countersigned copy of the Assignment; and,

(c)     such other documents and instruments required to be delivered by Buyer under this Agreement, or which counsel for Seller may reasonably request for the purpose of Closing the transaction contemplated by this Agreement.

## 12.     <u>Termination</u>.

12.1     <u>Termination by Seller</u>. Seller may terminate this Agreement at any time prior to the Closing Date if:

(i)     Buyer materially breaches any obligation or covenant to be performed by it pursuant to this Agreement or any Transaction Document, and such breach has not been cured within ten (10) business days following Buyer's receipt of written notice of such breach from Seller; or

(ii)     Any of the conditions to Seller's obligations set forth in <u>Section 10.1</u> have not been satisfied as of the Closing Date and Seller has not waived such condition in writing on or before the Closing Date;

(iii)     Seller enters into or consummates an Alternative Transaction or Buyer is not determined to be the winning bidder at the Auction under the Bidding Procedures Order; or

(iv)     Any Governmental Authority indicates in writing that Buyer is not a qualified candidate for Licensure Transfer Approval.

12.2     <u>Termination by Buyer</u>.  This Agreement is subject to termination at any time prior to the Closing Date by the Buyer if:

(i)       Seller materially breaches any obligation or covenant to be performed by it pursuant to this Agreement or any Transaction Document, and such breach has not been cured within ten (10) business days following Buyer's receipt of written notice of such breach from Buyer;

(ii)      Any of the conditions to Buyer's obligations set forth in Section 10.2 have not been satisfied as of the Closing Date and Buyer has not waived such condition in writing on or before the Closing Date;

(iii)     Within fifteen (15) business days of the Petition Date, Buyer's authorized agents are not afforded reasonable access to the Property to conduct a Phase II environmental site assessment;

(iv)      The Bidding Procedures Order, in all material respects in form and substance reasonably acceptable to Buyer and Real Estate Buyer, including, but not limited to, approval of the Breakup Fee and Expense Reimbursement, has not been entered by the Bankruptcy Court on or before April 24, 2015 (or such later date as Buyer may have designated in writing to Seller);

(v)       The Auction has not commenced on or before May 26, 2015 (or such later date as Buyer may have designated in writing to Seller);

(vi)      The Sale Order, in all material respects in form and substance reasonably acceptable to Buyer and Real Estate Buyer, has not been entered by the Bankruptcy Court on or before May 28, 2015 (or such later date as Buyer may have designated in writing to Seller);

(vii)     The Sale Order does not become final and non-appealable on or before June 12, 2015 (or such later date as Buyer may have designated in writing to Seller).

(viii)    Seller enters into or consummates an Alternative Transaction or Buyer is not determined to be the winning bidder at the Auction under the Bidding Procedures Order;

(ix)      Prior to the Closing Date, the Bankruptcy Cases are dismissed, converted to a case under Chapter 7 of the Bankruptcy Code, or if a trustee is appointed in the Bankruptcy Cases; or

(x)       Between the Effective Date and the Closing, any party with control over the day-to-day operation of the Facility, including a court-appointed receiver or Seller, as applicable, materially impairs Buyer's access, or refuses (i) to timely provide the Buyer and its agents reasonable access, upon reasonable notice during normal business hours, to the Facility and the personnel of the Facility, or (ii) grant Buyer and its agents reasonably prompt access to, or provide Buyer with, any materials and/or information relating to the Facility reasonably requested by the Buyer, Real Estate Buyer, and/or any of their lender(s), in connection with the Closing which materials and/or information are material to the Business and/or the Property; provided, however, that prior to exercising any right of termination pursuant to this Section 12.2(x), Buyer shall provide Seller with written notice specifying the actions undertaken or materials not provided which constitute Buyer's claim of breach pursuant to this Section 12.2(x)

in reasonable detail and providing Seller with five (5) business days to cure such breach; provided, further, that in the event that Seller disagrees that the events or circumstances alleged by Buyer are sufficient to constitute a claim for termination under this <u>Section 12.2(x)</u>, the parties agree to submit the matter to the Bankruptcy Court for expedited determination.

12.3    <u>Mutual Termination</u>. The parties may terminate this Agreement at any time prior to the Closing Date by mutual written consent.

12.4    <u>Failure To Close</u>. Either party may terminate this Agreement by giving the other party written notice at termination in the event that the Closing does not occur by August 31, 2015 through no fault of such party; provided that in such a case, the Deposit (as such term is defined and described in the Purchase and Sale Agreement) held pursuant to the Purchase and Sale Agreement shall be immediately returned to the Buyer thereunder.

12.5    <u>Effect of Termination</u>.    In the event that the Agreement is terminated in accordance with Section 12.2, this Agreement shall terminate and the Deposit shall be immediately returned to Buyer, and Buyer shall retain any and all rights and remedies attendant to a breach by Seller under this Agreement.  If this Agreement is terminated in accordance with Section 12.3 or 12.4, this Agreement shall terminate and each party shall be relieved of its respective duties and obligations under this Agreement after the date of such termination and the Deposit shall be immediately returned to Buyer.  If this Agreement is terminated by Seller pursuant to Section 12.1(a), Seller's sole remedy against Buyer shall be to retain the Deposit.

12.6    <u>Frustration of Closing Conditions</u>. No party may rely on the failure of any condition set forth in <u>Sections 12.1</u>, or <u>12.2</u>, as the case may be, if such failure was caused by such party's failure to comply with or breach of any provision of this Agreement.

**13.**    **<u>Name Change</u>**.  Within fourteen (14) days after the Closing, Seller shall take all steps necessary to effect a change in its corporate name to remove the words "Hollywood Hills" from such name.  Seller agrees that it shall (i) as soon as practicable after the Closing Date, and in any event within fourteen (14) days thereafter, cease to make any use of the name "Hollywood Hills Rehabilitation Center" or "Hollywood Hills Pavilion" or any service marks, trademarks, trade names, logos, symbols, signs or insignia related thereto or containing or comprising the foregoing, including any name or mark confusingly similar thereto, and (ii) immediately after the Closing cease to hold itself out as having any affiliation with the Business.

**14.**    **<u>Miscellaneous</u>**.

14.1    <u>Notices</u>. All notices, requests, consents, and other communications required or permitted under this Agreement shall be in writing (including electronic transmission) and shall be (as elected by the party giving such notice) hand delivered by messenger or courier service, electronically transmitted or mailed by first class mail (postage prepaid) addressed to:

**If to Seller:**                              **If to Buyer:**

Hollywood Hills                        Hollywood Hills Operator, LLC
Rehabilitation Center, LLC        Attn: Eliezer Friedman

Execution Copy

Attn:Tamir Zury                                    16 Fifth Street
2421 NE 32 Court                                   Lakewood, NJ 08701
Lighthouse Point, FL 33064
Fax:
Email: tzsabra@gmail.com

*With a copy to*:                                  *With a copy to*:

Perlman, Bajandas, Yevoli & Albright, P.L.         GUTNICKI LLP
Attn: Mark Albright                                Attn: Abraham A. Gutnicki
200 South Andrews Ave., Suite 600                  4711 Golf Road, Suite 200
Fort Lauderdale, FL 33301                          Skokie, IL 60076
Fax: (954) 566-7117                                Fax: (847) 933-9285
Email: malbright@pbyalaw.com                       Email: agutnicki@gutnicki.com

-AND-                                              -AND-

Markowitz Ringel Trusty + Hartog, P.A.             Blank Rome LLP
Attn: Grace E. Robson                              Attn:  Leon R. Barson
101 NE Third Avenue, Suite 1210                    One Logan Square
Fort Lauderdale, FL 33301                          Philadelphia, PA  19103
Fax:  954.767.0035                                 Fax: (215) 832-5576
Email: GRobson@mrthlaw.com                         Email: lbarson@blankrome.com

or such other address as any party may designate by notice complying with the terms of this Section. Each such notice shall be deemed delivered (a) on the date delivered if by hand delivery or by messenger or courier service; (b) on the date of transmission if by electronic transmission; and (c) two days after deposit with the United States Post Office, if mailed via first class mail.

14.2     Binding Effect. All of the terms and provisions of this Agreement shall be binding upon, inure to the benefit of, and be enforceable by the parties and their respective legal representatives, successors and permitted assigns and designees, whether so expressed or not.

14.3     Counterparts; Facsimile and PDF Email Signatures. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original (including via facsimile or PDF email), but all of which together shall constitute one and the same instrument.

14.4     Enforcement Costs. If any civil proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any provision of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees, court costs, sales and use taxes and all expenses even if not taxable as court costs (including, without limitation, all such fees, taxes, costs and expenses incident to arbitration, appellate, bankruptcy and post-judgment proceedings), incurred in that proceeding, in addition to any other relief to which such party or parties may be entitled. Attorneys' fees shall include, without limitation, paralegal fees, investigative fees, administrative

costs, sales and use taxes and all other charges billed by the attorney to the prevailing party (including any fees and costs associated with collecting such amounts).

14.5    <u>Expenses</u>. Except as otherwise provided in this Agreement, each of the parties shall bear and pay all direct costs and expenses incurred by it or on its behalf in connection with the transactions contemplated by this Agreement, including, without limitation, the fees and expenses of its own financial or other consultants, accountants, and counsel, which in the case of Seller, shall be paid (or, or fees that have been previously paid on Seller's behalf, reimbursed to the party(ies) making such payments) at Closing from the Purchase Price.

14.6    <u>Interpretation</u>. The headings preceding the text of Articles and Sections included in this Agreement and the headings to Schedules attached to this Agreement are for convenience only and shall not be deemed part of this Agreement or be given any effect in interpreting this Agreement. The use of the masculine, feminine or neuter gender or the singular or plural form of words herein shall not limit any provision of this Agreement. The use of the terms "including" or "include" shall in all cases herein mean "including, without limitation" or "include, without limitation," respectively. Reference to any Person includes such Person's successors and assigns to the extent such successors and assigns are permitted by the terms of any applicable agreement, and reference to a Person in a particular capacity excludes such Person in any other capacity or individually. Reference to any agreement (including this Agreement), document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time in accordance with the terms thereof and, if applicable, the terms hereof. Reference to any Law means such Law as amended, modified, codified, replaced or re-enacted, in whole or in part, and in effect on the date hereof, including rules, regulations, enforcement procedures and any interpretations promulgated thereunder. Underscored references to Articles, Sections, clauses, Exhibits or Schedules shall refer to those portions of this Agreement, and any underscored references to a clause shall, unless otherwise identified, refer to the appropriate clause within the same Section in which such reference occurs. The use of the terms "hereunder", "hereof", "hereto" and words of similar import shall refer to this Agreement as a whole and not to any particular Article, Section or clause of or Exhibit or Schedule to this Agreement.

14.7    <u>No Waiver</u>. No delay or omission by any party hereto to exercise any right or power occurring upon any noncompliance or default by any other party with respect to any of the terms of this Agreement shall impair any such right or power or be construed to be a waiver thereof. A waiver by any of the parties hereto of any of the covenants, conditions, or agreements to be performed by the other shall not be construed to be a waiver of any succeeding breach thereof or of any covenant, condition, or agreement herein contained.

14.8    <u>Assignment</u>. Seller shall not assign or transfer this Agreement or any of its rights or obligations incurred hereunder.  Buyer shall have the right prior to Closing to assign its rights to receive all or part of the Assets and its obligations to assume all or any part of the Assumed Liabilities, in each case, to one or more designees, provided that not such assignment shall relieve Buyer of any of its obligations hereunder.

14.9    <u>Amendments</u>. The provisions of this Agreement may not be amended, supplemented, waived or changed orally, but only by a written instrument specifically referencing this Agreement and signed by all parties.

14.10    <u>Governing Law</u>. This Agreement and all transactions contemplated by this Agreement shall be governed by, and construed and enforced in accordance with, the internal laws of the state of Florida without regard to principles of conflicts of laws.

14.11    <u>Jurisdiction and Venue</u>. The parties acknowledge that a substantial portion of the negotiations, anticipated performance and execution of this Agreement occurred or shall occur in Broward County, Florida. ANY CIVIL ACTION OR LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE BROUGHT EXCLUSIVELY IN THE BANKRUPTCY COURT. EACH PARTY CONSENTS TO THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT IN ANY SUCH CIVIL ACTION OR LEGAL PROCEEDING AND WAIVES ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUCH CIVIL ACTION OR LEGAL PROCEEDING IN THE BANKRUPTCY COURT. Service of any court paper may be effected on such party by mail, as provided in this Agreement, or in such other manner as may be provided under applicable laws, rules of procedure or local rules.

14.12    <u>No Construction Against Draftsmen</u>. The parties acknowledge that this is a negotiated agreement, and that in no event shall the terms of this Agreement be construed against any party on the basis that such party, or its counsel, drafted this Agreement.

14.13    <u>Severability</u>. If any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions of this Agreement nor the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby. If any provision of this Agreement may be construed in two or more ways, one of which would render the provision invalid or otherwise voidable or unenforceable and another of which would render the provision valid and enforceable, such provision shall have the meaning which renders it valid and enforceable.

14.14    <u>Remedies Cumulative</u>. Except as otherwise expressly provided in this Agreement, no remedy in this Agreement conferred upon any party is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Agreement or now or hereafter existing at law or in equity or by statute or otherwise. No single or partial exercise by any party of any right, power or remedy under this Agreement shall preclude any other or further exercise thereof.

14.15    <u>Entire Agreement</u>. This Agreement, all Exhibits and Schedules attached to this Agreement, represent the entire understanding and agreement between the parties with respect to the subject matter of this Agreement, and supersede all other negotiations, understandings and representations (if any), whether oral or written, made by and between such parties.

14.16    <u>Seller Disclosures</u>.    After notice to and consultation with Buyer, Seller shall be entitled to disclose, if required by applicable law or order of the Bankruptcy Court, this

Agreement and all non-confidential information provided by Buyer in connection herewith to the Bankruptcy Court and any other party in interest in the Bankruptcy Cases. Other than statements made in Bankruptcy Court or pleadings filed therein, Seller shall not issue any press release or make any public statement or public communication with respect to the Agreement or the transactions contemplated hereby without the prior written consent of Buyer, which consent shall not be unreasonably withheld.

      14.17  <u>Bulk Sales Laws</u>.  To the greatest extent permitted by applicable law, Buyer and Seller hereby waive compliance with the terms of any bulk sales or similar laws in any applicable jurisdiction in respect of the transactions contemplated by this Agreement.

**[Remainder of page intentionally left blank]**

**IN WITNESS WHEREOF**, Buyer and Seller have executed this Agreement as of the date first set forth above.

**BUYER:**                                **SELLER:**

**Hollywood Hills Operator, LLC**, a Delaware limited liability company

**Hollywood Hills Rehabilitation Center**, a Florida limited liability company

By: _____

By: _____

Print Name: _____

Print Name: _____ TAMIR CUR-

Title: _____

Title: _____ DV

**IN WITNESS WHEREOF**, Buyer and Seller have executed this Agreement as of the date first set forth above.

**BUYER:**                                                    **SELLER:**

**Hollywood Hills Operator, LLC**, a Delaware          **Hollywood Hills Rehabilitation Center**, a
limited liability company                               Florida limited liability company

By: _____          By: _____

Print Name: ___Eliezer Friedman___          Print Name: _____

Title: ___Authorized Signator___          Title: _____

**List of Exhibits and Schedules**

Exhibits:

|          |                |
|----------|----------------|
| Exhibit A: | Bill of Sale |
| Exhibit B: | Assignment   |

Schedules:

Schedules of Assets

| Schedule 2.1(iv)   | Domain Names, Web Sites and software |
|--------------------|--------------------------------------|
| Schedule 2.1(viii) | Marketing materials, telephone numbers |

Schedules of Excluded Assets

| Schedule 2.2(ii) | Excluded Contracts |
|------------------|--------------------|

Schedules related to Purchase Price

| Schedule 3.3(c) | Payments to be Pro-rated |
|-----------------|--------------------------|
| Schedule 3.4    | Allocation of Purchase Price [To be completed prior to Closing] |

Schedules related to Representations and Warranties

| Schedule 5.2     | Resolution of Seller |
|------------------|----------------------|
| Schedule 5.5     | Title to Assets |
| Schedule 5.6(i)  | Seller's Financial Statements |
| Schedule 5.6(ii) | Liabilities |
| Schedule 5.7(i)  | Employees |
| Schedule 5.7(ii) | Guaranteed Payments |
| Schedule 5.9     | Intellectual Property |
| Schedule 5.10    | Material Contracts |
| Schedule 5.12    | Litigation |
| Schedule 5.13    | Investigations |
| Schedule 5.15    | Overpayments |
| Schedule 5.17    | Licensure |
| Schedule 5.18    | Certifications |

Schedules related to Additional Covenants and Further Agreements

| Schedule 7.9 | Patient Trust Funds and Property |
|--------------|----------------------------------|
| Schedule 8.2 | Seller's Employment Expenses |

Execution Copy

## AGREEMENT FOR PURCHASE AND SALE

THIS AGREEMENT FOR PURCHASE AND SALE (this "<u>Agreement</u>") is entered into this ___ day of April 2015, by and between High Ridge Management Corp., Florida corporation ("<u>Realty</u>"), Hollywood Hills Rehabilitation Center, LLC, a Florida limited liability company ("<u>Old Operator</u>", and together with Realty, the "<u>Seller</u>") and 1200 North 35th Avenue, LLC, a Delaware limited liability company ("<u>Real Estate Buyer</u>").

## <u>RECITALS:</u>

Realty is currently the owner of that certain property located in Broward County, Florida, containing approximately 1.85 acres located at 1200 N 35th Avenue, Hollywood, Florida, which is more particularly described as HOLLYWOOD HILLS 6-22 B LOTS 1 TO 12 BLK 45 and in Exhibit "A" attached hereto and made a party hereof ("<u>Property</u>"), and Old Operator is currently the licensed operator of Hollywood Rehabilitation Center, the 152 bed nursing home located on the Property.  The parties to this Agreement have agreed to the sale and purchase, pursuant to sections 105, 363 and 365 of the Bankruptcy Code (as defined in the Asset Purchase Agreement (defined below)), of the Property and related assets on the terms and conditions which are set forth in this document.  The effective date of this Agreement shall be the date upon which the last party to sign has executed this Agreement ("<u>Effective Date</u>").

In connection with the foregoing, Old Operator shall simultaneously with this agreement enter into that certain Asset Purchase Agreement with Hollywood Hills Operator, LLC, a Delaware limited liability company ("<u>New Operator</u>") of even date herewith (the "<u>Asset Purchase Agreement</u>"), relating to transition of operation of the Facility.

This Agreement replaces and supersedes that certain Agreement for Purchase and Sale dated as of December 17, 2014 between the parties hereto as well as any and all amendments thereto.

The transactions contemplated herein are subject to the approval of the Bankruptcy Court (as defined and described in the Asset Purchase Agreement) and will be consummated only pursuant to the Sale Order (as defined and described in the Asset Purchase Agreement) to be entered in the Bankruptcy Cases (as defined and described in the Asset Purchase Agreement).

## <u>AGREEMENT:</u>

### 1.00    <u>Purchase and Sale.</u>

Subject to all of the terms and conditions of this Agreement, Seller will sell to Real Estate Buyer and Real Estate Buyer will purchase from Seller (the "<u>Purchased Assets</u>"): (i) the Property, together with all appurtenances, rights, easements and rights of way incident thereto, (ii) all buildings and all other structures, facilities or improvements presently or hereafter located in or on the Land (the "<u>Improvements</u>"), including without limitation, that certain 152 bed nursing home facility commonly known as Hollywood Hills Rehabilitation Center (the "<u>Facility</u>"), and all other items of furniture, fixtures, equipment and any other personal property attached or appurtenant to, located on or used in connection with the ownership, use, operation or maintenance of the Improvements and/or the Facility (collectively, the "<u>Personal Property</u>"), other than the Supplies (as such term is defined in the Asset Purchase Agreement) which shall be transferred to New Operator pursuant to the Asset Purchase Agreement (iii) all right, title and interest, if any, of Seller in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof, (iv) all right, title and interest, if any, of Seller to any unpaid award for (1) any taking by condemnation or (2) any damage to the Land or the Improvements by reason of a change of grade of any street or highway, (v) all easements, licenses, rights and appurtenances relating to any of the foregoing, (vi) all intangible property of Seller; (vii) all of the goodwill symbolized and associated with the Facility, and (vii) any bed rights and other assets located at or used in connection with the Facility.

**1.01    Liabilities of Seller.**

Real Estate Buyer shall not assume and shall not be liable for, any debts, liabilities or obligations of Seller of any kind or nature, at any time existing or asserted, whether or not accrued, whether fixed, contingent or otherwise, whether known or unknown, arising out of this or any other transaction or event, including, but not limited to, any (i) liabilities or obligations of Seller to any of their creditors, shareholders or owners, (ii) liabilities or obligations of Seller with respect to any acts, events or transactions occurring prior to, on or after the Closing Date (as defined and described herein), or (iii) liabilities or obligations of Seller for any federal, state, county or local taxes applicable to or assessed against Seller or the assets or business of Seller. Unless specifically and unambiguously set forth herein to the contrary, Real Estate Buyer is not the successor to liability of Seller and is not herein assuming any liability arising from, out of, or relating to, Sellers' ownership or operation of the Purchased Assets.  Purchaser does not assume any payable of Seller, governmental claim or charge, malpractice, professional liability, resident rights violations, or violations of employee rights or  contracts, whether such claims arise in law, equity, in tort, contract, from statute, common law, or from any other source or precedent.

**2.00    Purchase Price.**

The purchase price to be paid by Real Estate Buyer to Seller for the Purchased Assets, including the assets being acquired under the Asset Purchase Agreement, is Seventeen Million Dollars ($17,000,000.00) ("Purchase Price"), subject to prorations provided herein and payable as hereinafter described.

**2.01    Deposit.**

Upon the Effective Date of this Agreement, Real Estate Buyer shall deposit with the law firm of Perlman, Bajandas, Yevoli & Albright, P.L., 200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 ("Escrow Agent") the sum of Five Hundred Thousand Dollars ($500,000.00) (the "Deposit").  The disposition of the Deposit shall be in accordance with the terms and conditions of this Agreement.

**2.02    Payment of Purchase Price.**

At the time of closing, Real Estate Buyer will pay to Seller by cashier's check or by wire transfer of funds the Purchase Price as adjusted for prorations, deposits, applicable portions of extension fees and adjustments as set forth in this Agreement.  Upon closing, the Escrow Agent shall deliver the Deposit to an account designated by Realty (subject to Court Approval (as defined below)).

**2.03    Allocation.**

The parties shall use best efforts to agree upon a joint allocation of the Purchase Price, as set forth in Exhibit "B" attached hereto, including, without limitation an allocation for the Property, Improvements, Facility, Personal Property and other components of the Purchase Assets.  Each party agrees (i) to complete jointly and file separately Form 8594 with its federal income tax return consistent with such allocation for the tax year in which the Closing (as defined and described herein) occurs, and (b) that no party shall take a position on any income, transfer, gains or other tax return, or before any federal, state or local governmental or quasi-governmental authority or in any judicial proceeding that is in any manner inconsistent with the terms of such agreed upon allocation.

**3.00    Title and Title Insurance.**

Real Estate Buyer, at Real Estate Buyer's expense, shall obtain a commitment ("Title Commitment") for an ALTA Form owner's title insurance policy issued by a title insurance company.  The title insurance commitment shall have a date subsequent to the Effective Date of this Agreement and shall show that title to the Property is good and marketable and insurable subject to no liens, encumbrances, exceptions or qualifications not accepted by Real Estate Buyer, in its sole discretion, in accordance with the terms of this Agreement.  Real Estate Buyer

2

shall have ten (10) days from receipt of both the Title Commitment and Survey ("Title Review Period") in which to examine the condition of title and survey matters, including without limitation the legal compliance of the Property and its available parking with zoning and other legal requirements.  If Real Estate Buyer fails to provide Seller with written notice of specific defects to title and survey matters relating to the Property, other than as required by this paragraph to be cured by Seller, prior to the end of the Title Review Period, then, for all purposes of this Agreement, Real Estate Buyer shall be deemed to have accepted title in the condition described in the Title Commitment and as shown by the Survey.  Any title exceptions which are not objected to prior to the end of the Title Review Period shall be deemed to be permitted exceptions.  If Real Estate Buyer timely notifies Seller that title does not satisfy the requirements of this paragraph, then Seller agrees to use reasonable diligence to make title good, marketable and insurable, for which purpose Seller shall have a reasonable time but in no event more than sixty (60) days from the receipt of Real Estate Buyer's written notice that title is unacceptable.  After reasonable diligence on the part of Seller, if title is not rendered as required by this paragraph, then at the end of the sixty (60) day period, any money deposited by Real Estate Buyer, at the election of Real Estate Buyer, shall be returned to Real Estate Buyer, this Agreement shall be terminated and all parties hereto shall be released from any and all obligations and liabilities hereunder.  At any time prior to such termination, Real Estate Buyer may elect by written notice to Seller to waive any defects in title, in which event the closing shall take place pursuant to this Agreement without any abatement in price.  The obligation of Seller to cure title defects shall not include an obligation to expend money and pursue litigation, other than with respect to monetary liens which may be cured by a specified sum of money which shall be removed by Seller prior to the Closing, and for purposes of which Seller may utilize the Purchase Price.

**4.00    Reserved.**

**5.00    Closing.**

a.    Subject to the prior approval by the Bankruptcy Court (as defined in the Asset Purchase Agreement), the United States District Court for the Southern District of Florida in connection with Case No. 12-23601 (as and to the extent necessary) and/or, to the extent applicable or required to obtain Court Approval, the U.S. Department of Justice (the foregoing, collectively, the "Court Approval"), the closing ("Closing") of the purchase and sale contemplated by this Agreement shall be on the first day of the first calendar month that follows satisfaction of all conditions to the Closing (the "Closing Date").  The Closing will be held at the offices of Escrow Agent or at such other place as the parties may mutually agree upon.

b.    Notwithstanding anything contained herein to the contrary, at any time prior to the scheduled closing, and subject to prior Court Approval, Licensure Transfer Approval and Section 5.c. below, Real Estate Buyer, in its sole discretion, may elect to extend by thirty (30) days the closing of this transaction and the transactions contemplated by the Asset Purchase Agreement.  Real Estate Buyer shall exercise this election by delivering to Seller written notice of Real Estate Buyer's intention to so extend the closing which notice shall set a closing date not more than thirty (30) days from the originally scheduled closing.

c.    Real Estate Buyer's right to close this transaction is subject to New Operator closing on the purchase of the Assets in accordance with the terms and conditions of that certain Asset Purchase Agreement of even date herewith by and between New Operator and Hollywood Hills Rehabilitation Center, LLC.

d.    This Agreement may be terminated by mutual agreement of the parties, and shall automatically terminate upon termination of the Asset Purchase Agreement in accordance with the terms thereof.  Section 12.5 of the Asset Purchase Agreement (Effect of Termination) is incorporated herein by reference as if set forth at length herein.

Purchase and Sale Agreement

**6.00    Seller's Deliveries.**

Seller shall deliver to Real Estate Buyer at closing the following documents dated as of the closing date, the delivery and accuracy of which shall be a condition to Real Estate Buyer's obligation to consummate the purchase and sale;

a.    <u>Special Warranty Deed</u>.  A special warranty deed in recordable form, in the form attached hereto as Exhibit "C" duly executed by Seller, conveying to Real Estate Buyer good, marketable and insurable fee simple title to the Property subject only to those exceptions contained in the title commitment, with the legal description provided in the title commitment.

b.    <u>Bill of Sale</u>.  A bill of sale, in the form attached hereto as Exhibit "D", duly executed and acknowledged by Seller (as applicable), sufficient to convey to Purchaser good and indefeasible title, free of all liens, encumbrances and security interests, in and to the Personal Property.

c.    <u>General Assignment</u>. An assignment by Seller (as applicable), in substantially the form annexed hereto as Exhibit "E", of all of Seller's right, title and interest in, to any intangible property included in the Purchase Assets.

d.    <u>Affidavit</u>.  A no-lien, gap and exclusive possession affidavit in form and content customarily used in Broward County, Florida.  The no-lien affidavit shall relate to any activity of Seller at the Property within the period that a mechanic's lien can be filed based on such activity prior to the closing.

e.    <u>FIRPTA Affidavit</u>.  In order to comply with the requirements of the Foreign Investment Real Property Tax Act of 1980 ("<u>FIRPTA</u>"), Seller will deliver to Real Estate Buyer at closing Seller's affidavit under penalty of perjury stating Seller is not a "foreign person," as defined in Section 1445 of the Internal Revenue Code of 1986 and the U.S. Treasury Regulations thereunder, setting forth Seller's taxpayer identification number, and that Seller intends to file a United States income tax return with respect to the transfer.  Seller represents and warrants to Real Estate Buyer that it has not made nor does Seller have any knowledge of any transfer of the Property or any part thereof that is subject to any provisions of FIRPTA that has not been fully complied with by either transferor or transferee.

As required by law, if Seller fails to comply with the requirement of this paragraph, Real Estate Buyer shall withhold ten percent (10%) of the Purchase Price in lieu of payment thereof to Seller and pay it over instead to the Internal Revenue Service in such form and manner as may be required by law.

f.    <u>Seller's Certificate</u>.  A duly executed certification that every warranty of Seller under this Agreement is true and correct in all material respects as of the closing as if made by Seller at such time.

g.    <u>Shareholder Resolution</u>.  Seller shall provide a duly executed shareholder resolution, authorizing the appropriate officer(s) of Seller to execute and deliver any of the above-listed documents on behalf of Seller.  Additionally, Seller shall deliver to Real Estate Buyer current certificate of status for Seller issued by the Florida Secretary of State. Notwithstanding anything contained herein to the contrary, within five (5) days from the Effective Date hereof, Seller shall deliver to Real Estate Buyer a duly executed corporate resolution, authorizing the appropriate officers of Seller to, subject to Court Approval, execute, deliver and consummate the transaction contemplated herein.

Seller shall also deliver to Real Estate Buyer and Real Estate Buyer's attorney, copies of all of the foregoing documents at least five (5) days prior to closing for Real Estate Buyer's review.

**6.01    Real Estate Buyer's Deliveries.**

At the closing, and after Seller has complied with all of the terms and conditions of this Agreement and simultaneously with Seller's delivery of the documents required in Paragraph

Purchase and Sale Agreement

6.00, Real Estate Buyer shall pay to Seller by wire transfer of funds the Purchase Price, adjusted for the prorations, deposits, applicable portions of the extension fees and other payments provided for in this Agreement.

### 6.02    Closing and Recording Costs.

Seller shall pay the cost of documentary stamps to be affixed to the deed, surtax on the deed of conveyance, if any. Real Estate Buyer shall pay for all recording costs (except the costs of recording corrective documents required pursuant to the terms of Paragraph 3.00 hereof, which costs shall be paid by Seller), all title related costs, including the cost of the owner's title insurance policy premium, and the cost of the Survey. The closing and title agent shall be Perlman, Bajandas, Yevoli & Albright, P.L.

### 6.03    Closing Conditions of Real Estate Buyer.

Real Estate Buyer's obligation to consummate the transactions contemplated in this Agreement, pay the Purchase Price and accept title to the Purchased Assets shall be subject to the following conditions precedent on and as of the Closing Date to the reasonable satisfaction of Real Estate Buyer or the waiver thereof by Real Estate Buyer, which waiver shall be binding upon Real Estate Buyer only to the extent made in writing and dated on or prior to the Closing Date.

(i)    Seller shall have performed and complied with all covenants and conditions required by this Agreement and the Asset Purchase Agreement to be performed or complied with by Seller.

(ii)    Possession of the Property shall be delivered to Real Estate Buyer free and clear of all liens, claims, encumbrances, tenancies and other occupancies and the Purchased Assets shall be delivered to Purchaser free and clear of any liens and Encumbrances (as defined in the Asset Purchase Agreement) except, to the extent applicable, for the tenancy of Larkin Community Hospital pursuant to the Larkin Lease (as defined below), any matters accepted by Real Estate Buyer in accordance with the terms hereof, and any occupancy rights of any patients and/or residents of the Facility.

(iii)    Old Operator and New Operator shall have entered into and consummated the transactions contemplated by the Asset Purchase Agreement.

(iv)    Real Estate Buyer obtains a satisfactory Phase II environmental report.

(v)    As of the Closing Date, there shall have been no Material Adverse Change from the date hereof. For purposes of this Agreement, "Material Adverse Change" means a material and adverse change in the condition of the Property, financial condition, results of operations, Purchased Assets or business of the Company the Facility's right to participate in Medicare or Medicaid, or claims for Recapture (as defined in the Asset Purchase Agreement) which will not be satisfied from the proceeds of the purchase price provided, however, that (a) changes due to general economic conditions not specifically affecting the Property, the Purchased Assets or the nursing home industry, and (b) any continued action ("Continued Action") by AHCA with respect to the nursing home license granted to Hollywood Hills Rehabilitation Center (to the extent AHCA approval of the Change in Ownership has been received, and New Operator's license is not materially and adversely effected by the Continued Action) shall not constitute a Material Adverse Change for purposes of this Section.

(vi)    The representations and warranties of Seller contained in this Agreement shall be true and complete as of the Closing Date and Seller shall be in full compliance with the terms and provisions of this Agreement, in each case subject only to exceptions permitted by this Agreement.

(vii)    There shall be a lease agreement entered into and in effect, between Real Estate Buyer and/or Seller (which shall be assigned to Real Estate Buyer at Closing pursuant to the terms and conditions of the Asset Purchase Agreement) and Larkin

Community Hospital, with respect to the operation of the psychiatric hospital in that portion of the Building specified therein, in the form attached hereto as Exhibit "F" (the "Larkin Lease").

**6.04    Closing Conditions of Seller**.    Seller's obligation to consummate the transactions contemplated in this Agreement shall be subject to:

(i)    Real Estate Buyer shall have performed and complied with all covenants and conditions required by this Agreement and the Asset Purchase Agreement to be performed or complied with by Real Estate Buyer.

(ii)    The Old Operator and New Operator shall have entered into and consummated the transactions contemplated by the Asset Purchase Agreement.

(iii)    The transactions contemplated by this Agreement shall have received Court Approval.

**7.00    Taxes and Prorations.**

At the Closing, the taxes on the Property shall be prorated between the parties on the basis of the taxes paid for the most recent year that has been assessed and billed.  If the actual taxes for the year of Closing are not determinable at the closing date, then the parties agree to re-prorate taxes promptly upon issuance of the tax bill for the year of Closing.  All payments due prior to the Closing Date on certified special assessment liens shall be paid by Seller.  All payments due on or after the Closing Date on certified special assessment liens shall be paid by Real Estate Buyer, but prorated in accordance with the terms of this Paragraph 7 to the extent of any amounts relating to periods prior to the Closing.  Notwithstanding the foregoing, Seller's counsel or accountants shall collect and remit directly to the account of the I.R.S. where the transaction is properly reported the amount set forth on Schedule 7.2 of the Asset Purchase Agreement for taxes payable as a result of the transactions contemplated by this Agreement and the Asset Purchase Agreement.

In addition to the foregoing, Seller shall utilize funds with respect to the Purchase Price to pay any bed or provider taxes of Old Operator that are outstanding at the Closing.

**8.00    Possession.**

Real Estate Buyer shall be granted full possession of the Property as of the Closing.

**9.00    Survey.**

During the Title Review Period, Real Estate Buyer, at Real Estate Buyer's expense, shall obtain a current survey of the Property ("Survey").  The survey shall be certified to Real Estate Buyer, the institutional lending institution designated by Real Estate Buyer, if any, and the title insurance company.  The survey shall be prepared by a licensed Florida land surveyor in accordance with the minimum technical standards established by the Florida Board of Land Surveyors and shall be sufficient to cause the deletion from the title commitment matters which would be disclosed by an accurate survey.  The survey shall contain a certification of the acreage contained within the Property and shall disclose all instruments of record as designated in the title commitment.  The survey shall show that there are no encroachments on the Property.  Any encroachments shown shall be treated as a title defect.  Real Estate Buyer shall notify Seller in writing of survey defects prior to the expiration of the Title Review Period.

**10.00    Seller's Warranties.**

Seller hereby warrants to Real Estate Buyer as follows:

a.    That Seller is vested with good and marketable fee simple title to the Property subject only to the permitted title exceptions as provided herein.

6

b.      There are no condemnation or eminent domain proceedings pending or to the best of Seller's knowledge contemplated against the Property or any part thereof, and Seller has received no notice of the desire of any public authority to take or use the Property or any part thereof.

c.      Except for the Bankruptcy Cases (as defined in the Asset Purchase Agreement), the foreclosure action maintained by Larkin Community Hospital or an affiliate thereof in connection with the mortgage on the Property, the Asset Purchase Agreement and Case No. 12-23601 filed in United States District Court for the Southern District of Florida, there are no pending suits or proceedings against or affecting Seller or any part of the Property which (i) do or could affect title to the Property or any part thereof; or (ii) do or could prohibit or make unlawful the consummation of the transaction contemplated by this Agreement, or render Seller unable to consummate the same.

d.      Seller and the party on behalf of Seller executing this Agreement has full power and authority to execute and deliver this Agreement and all documents now or hereafter to be delivered by it pursuant to this Agreement and to perform all obligations arising under this Agreement.

e.      Seller is a corporation duly organized and validly existing under the laws of the State of Florida and clear of all liens except for ad valorem taxes for the year of Closing, not yet due and payable, and for all subsequent years.

f.      The Property is or at the time of Closing will be free and clear of all liens, claims and Encumbrances except for ad valorem taxes for the year of Closing, not yet due and payable, and for all subsequent years.

g.      No Seller not received any written notice from any insurance company which has issued a policy with respect to Purchased Assets or from any board of fire underwriters (or other body exercising similar functions) and governmental authority or any other third party, claiming any defects or deficiencies in Purchased Assets or suggesting or requesting the performance of any repairs, alterations or other work to the Purchased Assets. The Purchased Assets shall be delivered at the time of the Closing in the same condition as they are in on the date hereof, reasonable wear and tear excepted.

At the Closing, Seller shall, in writing, reaffirm to Real Estate Buyer the truth and correctness, as of the Closing Date, of each of the warranties and, subject to the limitations on the duration and amount of Seller's indemnification obligations set forth in the Asset Purchase Agreement, agrees to indemnify and hold Real Estate Buyer harmless from any loss or damage suffered by Real Estate Buyer on account of the untruth or incorrectness of any such warranties.

AS A MATERIAL PART OF THE CONSIDERATION FOR THIS AGREEMENT, SELLER AND BUYER AGREE THAT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT AND ANY OTHER APPLICABLE PROVISIONS OF THIS AGREEMENT (TO THE EXTENT SUCH WARRANTIES SURVIVE CLOSING FOR THE PERIOD OF THEIR SURVIVAL) AND IN THE CLOSING DOCUMENTS, BUYER IS ACQUIRING THE PROPERTY "AS IS" WITH ALL FAULTS AND DEFECTS, LATENT AND PATENT, AND BUYER ACKNOWLEDGES AND AGREES THAT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT AND IN THE CLOSING DOCUMENTS, SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY DISCLAIMS ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL, AND GEOLOGY, OR THE PRESENCE OR ABSENCE OF ANY POLLUTANT, HAZARDOUS WASTE, GAS OR SUBSTANCE OR SOLID WASTE ON OR ABOUT THE PROPERTY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH BUYER MAY

7

Purchase and Sale Agreement

INTEND TO CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY GOVERNMENTAL AUTHORITY OR BODY HAVING JURISDICTION INCLUDING, WITHOUT LIMITATION, ALL APPLICABLE ZONING LAWS, (E) THE HABITABILITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, (F) ANY VESTED RIGHTS FOR THE DEVELOPMENT OR USE OF THE PROPERTY, OR (G) ANY OTHER MATTER RELATED TO OR CONCERNING THE PROPERTY. BUYER SHALL NOT SEEK RECOURSE AGAINST SELLER ON ACCOUNT OF ANY LOSS, COST OR EXPENSE SUFFERED OR INCURRED BY BUYER WITH REGARD TO ANY OF THE MATTERS DESCRIBED IN CLAUSES (A) THROUGH (F) ABOVE AND HEREBY ASSUMES THE RISK OF ANY ADVERSE MATTERS RELATED TO THE MATTERS DESCRIBED IN CLAUSES (A) THROUGH (F) ABOVE. BUYER ACKNOWLEDGES THAT BUYER, HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY OR ON BEHALF OF SELLER OR ANY STATEMENT, REPRESENTATION OR OTHER ASSERTION MADE BY SELLER WITH RESPECT TO THE PROPERTY, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT (TO THE EXTENT SUCH WARRANTIES SURVIVE CLOSING FOR THE PERIOD OF THEIR SURVIVAL) AND IN THE CLOSING DOCUMENTS. BUYER FURTHER ACKNOWLEDGES THAT NO INDEPENDENT INVESTIGATION OR VERIFICATION HAS BEEN OR WILL BE MADE BY SELLER WITH RESPECT TO ANY INFORMATION SUPPLIED BY OR ON BEHALF OF SELLER CONCERNING THE PROPERTY, AND SELLER MAKES NO REPRESENTATION AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION, IT BEING INTENDED BY THE PARTIES THAT BUYER SHALL VERIFY THE ACCURACY AND COMPLETENESS OF SUCH INFORMATION ITSELF. BUYER ACKNOWLEDGES THAT THE DISCLAIMERS, AGREEMENTS AND OTHER STATEMENTS SET FORTH IN THIS SECTION ARE AN INTEGRAL PORTION OF THIS AGREEMENT AND THAT SELLER WOULD NOT AGREE TO SELL THE PROPERTY TO BUYER FOR THE PURCHASE PRICE WITHOUT THE DISCLAIMERS, AGREEMENTS AND OTHER STATEMENTS SET FORTH IN THIS SECTION.

**11.00    Covenants of Seller.**

Seller hereby covenants with Real Estate Buyer as follows:

a.    Between the date of this Agreement and the Closing, Seller will not, without Real Estate Buyer's prior written consent, create by its consent any encumbrances on the Property. For purposes of this provision the term "encumbrances" shall mean any liens, claims, options, mortgages or other encumbrances, encroachments, right-of-way, leases, easements, covenants, conditions or restrictions.

b.    Between the date of this Agreement and the Closing Date, Seller will not file any application for any change of the present zoning classification of the Property unless such change is requested by Real Estate Buyer.

**12.00    Jury Waiver.** SELLER AND BUYER HEREBY MUTUALLY KNOWINGLY, WILLINGLY AND VOLUNTARILY WAIVE THE RIGHT TO TRIAL BY JURY, AND NO PARTY NOR ANY ASSIGNEE, SUCCESSOR, HEIR OR LEGAL REPRESENTATIVE OF THE PARTIES (ALL OF WHOM ARE HEREINAFTER REFERRED TO AS THE "PARTIES") SHALL SEEK A JURY TRIAL ON ANY LAWSUIT, PROCEEDING, COUNTERCLAIM OR ANY OTHER LITIGATION PROCEEDING BASED UPON OR ARISING OUT OF THIS AGREEMENT OR ANY OF THE TRANSACTIONS RELATED THERETO, OR ANY COURSE OF ACTION, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS RELATING TO THIS TRANSACTION. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY OTHER ACTION IN WHICH A JURY TRIAL HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY NEGOTIATED BY THE PARTIES. THE WAIVER CONTAINED HEREIN IS IRREVOCABLE, CONSTITUTES A KNOWING AND VOLUNTARY WAIVER AND SHALL BE SUBJECT TO NO EXCEPTION. SELLER HAS

8

IN NO WAY AGREED WITH OR REPRESENTED TO BUYER OR ANY OTHER PARTY THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.   THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE CLOSING OR EARLIER TERMINATION OF THIS AGREEMENT.

     **13.00   Real Estate Commissions.**

     Seller and Real Estate Buyer hereby warrant to each other that there are no brokers with respect to the purchase and sale of the Property as contemplated by this Agreement.  Each party shall indemnify and hold the other party harmless against any and all liability, cost, damage and expense (including, but not limited to, attorneys' fees and costs of litigation and appeals) the indemnified party shall ever suffer or incur because of any claim by any broker or agent claiming to have dealt with the non-indemnified party, whether or not meritorious, for any commission or other compensation with respect to this Agreement or to the purchase and sale of the Property in accordance with this Agreement.

     **14.00   Condemnation.**

     In the event of the institution against the record owner of the Property of any proceedings, judicial, administrative or otherwise, relating to the taking, or to a proposed taking of any portion of the Property by eminent domain, condemnation or otherwise (which materially impairs the proposed development of the Property), prior to Closing, or in the event of the taking of any portion of the Property by eminent domain, condemnation or otherwise, prior to Closing, then Seller shall notify Real Estate Buyer promptly and Real Estate Buyer shall have the option, in its sole and absolute discretion of either (i) terminating this Agreement and obtaining a full refund of the Deposit; or (ii) Closing in accordance with the terms of this Agreement, but at such Closing Seller shall assign to Real Estate Buyer all of its right, title and interest in and to any net awards that have been or may be made with respect to such eminent domain proceeding or condemnation.  Such election must be made by Real Estate Buyer within thirty (30) days of the notice furnished by Seller.  If Real Estate Buyer fails to make an election in writing, he shall be deemed to have elected alternative (i).

     **14.01   Casualty.**

     In the event of a casualty with respect to the Purchased Assets, prior to Closing, then Seller shall notify Real Estate Buyer promptly and Real Estate Buyer shall have the option, in its sole and absolute discretion of either (i) terminating this Agreement and obtaining a full refund of the Deposit; or (ii) Closing in accordance with the terms of this Agreement, but at such Closing Seller shall assign to Real Estate Buyer all of its right, title and interest in and to any insurance awards that have been or may be made with respect to such casualty and the Purchase Price shall be reduced by any deductible in connection therewith.  Such election must be made by Real Estate Buyer within thirty (30) days of the notice furnished by Seller.  If Real Estate Buyer fails to make an election in writing, he shall be deemed to have elected alternative (i).

     **15.00   Default; AHCA**

     If this transaction does not close solely due to a refusal or default on the part of Real Estate Buyer, then any deposits placed under this Agreement shall be delivered by the Escrow Agent to Seller as liquidated and agreed upon damages and which shall be Seller's sole recourse as against Real Estate Buyer; and thereafter, Real Estate Buyer shall be relieved from all further obligations under this Agreement and Seller shall have no further claim against Real Estate Buyer for specific performance or for damages by reason of the failure of Real Estate Buyer to close this transaction.

     If this transaction fails to close due to either (i) a default on the part of Seller, or (ii) failure of Real Estate Buyer's Closing conditions pursuant to Section 6.03 to be satisfied through no fault or delay of Real Estate Buyer or New Operator, then at the option of Real Estate Buyer, any deposits and extension payments placed under this Agreement shall be immediately returned by the Escrow Agent to Real Estate Buyer, together with all interest earned thereon, provided however, that in the event of a breach of default hereunder by Seller such return shall not limit

Purchase and Sale Agreement

Real Estate Buyer's right to maintain an action for Seller's breach of this Agreement, whether by way of damages or specific performance or any other relief whatsoever.

In the event AHCA requires corrective action with respect to the Facility, as a condition to approval of New Operator's licensure, and Real Estate Buyer requires that Seller and/or Old Operator pay the costs of such corrective action, then Seller may elect to terminate this Agreement and upon any such termination the Deposit shall be returned to Real Estate Buyer and the parties shall have no further obligations pursuant to this Agreement.

**16.00   Escrow.**

Any Escrow Agent receiving funds is authorized and agrees by acceptance thereof to promptly deposit and to hold same in escrow and to disburse same subject to clearance thereof in accordance with terms and conditions of this Agreement. Failure of clearance of funds shall not excuse performance by Real Estate Buyer. In the event of doubt as to its duties or liabilities under the provisions of this Agreement, the Escrow Agent may, in its sole discretion, continue to hold the monies which are the subject of this escrow until the parties mutually agree to the disbursement thereof, or until a judgment of a court of competent jurisdiction shall determine the rights of the parties thereto, or it may deposit all the monies then held pursuant to this Agreement with the Clerk of the Bankruptcy Court, and upon notifying all parties concerned of such action, all liability on the part of the Escrow Agent shall fully terminate, except to the extent of accounting for any monies theretofore delivered out of escrow. In the event of any suit between Real Estate Buyer and Seller wherein the Escrow Agent is made a party by virtue of acting as such Escrow Agent hereunder, or in the event of any suit wherein Escrow Agent interpleads the subject matter of this escrow, the Escrow Agent shall be entitled to recover a reasonable attorney's fee and costs incurred, said fees and costs to be charged and assessed as court cost in favor of the prevailing party. All parties agree that the Escrow Agent shall not be liable to any party or person for drawing upon a letter of credit, if any, delivered in accordance with the terms of this Agreement, notwithstanding any subsequent notice or communication received by Escrow Agent to the contrary. All parties further agree that the Escrow Agent shall not be liable to any party or person whomsoever for misdelivery to Real Estate Buyer or Seller of monies subject to this escrow, unless such misdelivery shall be due to willful breach of this Agreement or gross negligence on the part of the Escrow Agent. Seller and Real Estate Buyer agree that the status of Seller's counsel as Escrow Agent under this Agreement does not disqualify such law firm from representing Real Estate Buyer in connection with this transaction and in any disputes that may arise between Seller and Real Estate Buyer concerning this transaction, including any dispute or controversy with respect to the Deposit.

**17.00   Indemnification by Real Estate Buyer.**

Real Estate Buyer shall indemnify, save, protect, defend and hold harmless Seller, their employees, members, managers, shareholders, officers, directors and agents, from and against all claims, liabilities, losses, demands and causes of action of any nature whatsoever ("Losses") arising out of: (i) any breach by Real Estate Buyer of its obligations, representations, warranties, agreements or covenants hereunder, and (ii) Real Estate Buyer's ownership of the Purchased Assets following the Closing. Real Estate Buyer further agrees to pay any reasonable attorneys fees and expenses of Seller arising from any indemnification obligation hereunder.

**17.01   Indemnification by Seller.**

Seller shall indemnify, save, protect, defend and hold harmless Real Estate Buyer, its employees, members, managers, shareholders, officers, directors and agents in accordance with terms and subject to the conditions set forth in the Asset Purchase Agreement.

**17.02   Escrow Holdback.**

The obligations of Seller hereunder, and of Old Operator under the Asset Purchase Agreement, shall be secured by an escrow holdback ("Escrow Holdback") of the Purchase Price in the amount of One Million Dollars ($1,000,000.00), which shall be held for a period of up to four (4) years following the Closing Date (and thereafter, with respect to any amounts subject to

10

a written claim for indemnification under this Agreement or the Asset Purchase Agreement or Recapture (as defined in the Asset Purchase Agreement) prior to the earlier to occur of: (i) the expiration of the applicable indemnification period under the Asset Purchase Agreement), or (ii) the expiration of such four (4) year period; provided however that funds in the Escrow Holdback may be released prior thereto as follows, less any amounts previously released as payment for indemnification obligations or subject to written claim in connection therewith during the applicable period: (i) on the two (2) year anniversary of the Closing, an amount equal to Five Hundred Thousand Dollars ($500,000.00), (ii) on the three (3) year anniversary of the Closing, an amount equal to Two Hundred Fifty Thousand Dollars ($250,000.00) and (iii) on the four (4) year anniversary of the Closing, an amount equal to Two Hundred Fifty Thousand Dollars ($250,000.00).

**18.00    Entire Agreement; Binding Effect.**

This Agreement constitutes the entire agreement between the parties with respect to the transaction contemplated herein, and it supersedes all prior understandings or agreements between the parties. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, devisees, personal representatives, successors and permitted assigns.

**19.00    Survival of Paragraphs.**

The terms, conditions and warranties contained in Paragraphs 4.00, 6.00(c), 6.00(d), 7.00, 10.00, 13.00 and 17.00 herein shall survive the Closing and delivery of the deed of conveyance contemplated by this Agreement.

**20.00    Waiver; Modification.**

The failure by Real Estate Buyer or Seller to insist upon or enforce any of their rights shall not constitute a waiver thereof, and nothing shall constitute a waiver of Seller's or Real Estate Buyer's right to insist upon strict compliance with the terms of this Agreement. Either party may waive the benefit of any provision or condition for its benefit which is contained in this Agreement. No oral modification of this Agreement shall be binding upon the parties and any modification must be in writing and signed by the parties.

**21.00    Governing Law; Venue.**

This Agreement shall be governed by and construed under the laws of the State of Florida. The venue of any litigation arising out of this Agreement shall be the Bankruptcy Court.

**22.00    Headings.**

The paragraph headings as set forth in this Agreement are for convenience or reference only and shall not be deemed to vary the content of this Agreement or limit the provisions or scope of any paragraph herein.

**23.00    Notices.**

Any notice, request, demand, instruction or other communication to be given to either party, except where required by the terms of this Agreement to be delivered at the closing, shall be in writing and shall be sent by registered or certified mail, return receipt requested, or by express overnight courier, or by email, as follows:

If to Real Estate Buyer:                    1200 North 35th Avenue, LLC
                                            Attn: Eliezer Friedman
                                            16 Fifth Street
                                            Lakewood, NJ 0870
                                            Email: eli@inv360.com

Purchase and Sale Agreement

with copy to:

GUTNICKI LLP
Attn: Abraham A. Gutnicki
4711 Golf Road, Suite 200
Skokie, IL 60076
Fax: (847) 933-9285
Email: agutnicki@gutnicki.com

-AND-

Blank Rome LLP
Attn:  Leon R. Barson
One Logan Square
Philadelphia, PA  19103
Fax: (215) 832-5576
Email: lbarson@blankrome.com

If to Seller:

High Ridge Management Corp.
2421 NE 32 CT
Lighthouse Point, FL 33064
Attn: Tamir Zury

with copy to

Perlman, Bajandas, Yevoli & Albright, P.L.
200 South Andrews Avenue, Ste. 600
Fort Lauderdale, Florida 33301
Attn: Mark Albright, Esq.
Fax: (954) 566-7115
Email: malbright@pbyalaw.com

-AND-

Markowitz Ringel Trusty + Hartog, P.A.
Attn: Grace E. Robson
101 NE Third Avenue, Suite 1210
Fort Lauderdale, FL 33301
Fax:  954.767.0035
Email: GRobson@mrthlaw.com

Notice shall be deemed given if forwarded by certified mail through the facilities of the United States Postal Office on the day following the date that the notice in question is deposited in the facilities of the U. S. Postal Service.  If notice is forwarded by express overnight courier, it shall be deemed given on the day following the date that the notice in question is deposited in the facilities of an express overnight courier.

**24.00  Assignment.**

Seller shall not assign or transfer this Agreement or any of its rights or obligations incurred hereunder.  Real Estate Buyer shall have the right prior to Closing to assign its rights to receive all or part of the Purchased Assets to one or more designees, provided that not such assignment shall relieve Real Estate Buyer of any of its obligations hereunder.

**25.00  Attorneys' Fees.**

In the event that it becomes necessary for either party to bring suit to enforce the terms of this Agreement, then the prevailing party shall be entitled to recover all costs, including attorneys' fees, incurred in connection with such litigation (including appellate proceedings) against the nonprevailing party.

12

Purchase and Sale Agreement

**26.00  Time of the Essence.**

All time periods shall be measured in calendar days.  Time is of the essence with respect to each provision of this Agreement which requires that action be taken by either party within a stated time period, or upon a specified date.  Provided, however, if the date for performance is on a Saturday, Sunday or federal holiday, the date for performance shall be extended to the next business day.

**27.00  Construction.**

Each party hereto hereby acknowledges that all parties hereto participated equally in the drafting of this Agreement and that, accordingly, no court construing this Agreement shall construe it more stringently against one party than the other.

**28.00  Section Headings.**

The section headings as herein used are for convenience or reference only and shall not be deemed to vary the content of this Agreement or the covenants, agreements, representations and warranties herein set forth or limit the provision or scope of any section herein.

**29.00  Counterparts; Electronic Signature.**

To facilitate execution, this Agreement may be executed by electronic or facsimile signature, and in as many counterparts as may be required; and it shall not be necessary that the signature of, or on behalf of, each party, or that the signatures of all persons required to bind any party, appear on each counterpart; but it shall be sufficient that the signature of, or on behalf of, each party, or that the signature of the persons required to bind the party appear on one or more of such counterparts.  All counterparts and electronic or facsimile signatures shall collectively constitute a single binding agreement.

**30.00  Radon Gas.**

The following disclosure is required to be furnished to Real Estate Buyer under Florida law:

> Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time.  Levels of radon that exceed federal and state guidelines have been found in building in Florida.  Additional information regarding radon and radon testing may be obtained from your county public health center.

**31.00  Further Assurances.**   Each of Seller and Purchaser shall provide to the other such further assurances as may reasonably be required hereunder to effectuate the purposes of this Agreement and the transactions contemplated herein and, without limiting the foregoing, shall execute and deliver such affidavits, certificates and other instruments as may be provided for  necessary and/or appropriate in connection therewith.

[Signature Page Follows]

Purchase and Sale Agreement

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year last below written.

**BUYER:**   1200 North 35th Avenue, LLC

By: _____

Name: _Eliezer Friedman_

Title: _Authorized Signator_

Date: _4-8-15_

**SELLER:**   High Ridge Management Corp.

By: _____

Name: _____

Title: _____

Date: _____

Hollywood Hills Rehabilitation Center, LLC

By: _____

Name: _____

Title: _____

Date: _____

The undersigned acknowledges and agrees to act as Escrow Agent in accordance with the terms of this Agreement.

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.

By: _____

Signature Page to Purchase and Sale Agreement

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year last below written.

**BUYER:**    1200 North 35th Avenue, LLC

By: _____

Name: _____

Title: _____

Date: _____

**SELLER:**    High Ridge Management Corp.

By: _Tami Zur_ (signature)

Name: _Tamir Zur_

Title: _Dir_

Date: _4-9-15_

Hollywood Hills Rehabilitation Center, LLC

By: _Tami Zur_ (signature)

Name: _Tamir Zur_

Title: _Dir_

Date: _4-9-15_

The undersigned acknowledges and agrees to act as Escrow Agent in accordance with the terms of this Agreement.

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.

By: _____

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year last below written.

|  |  |  |
|---|---|---|
| **BUYER:** | 1200 North 35th Avenue, LLC | |
| By: | _____ | |
| Name: | _____ | |
| Title: | _____ | |
| Date: | _____ | |

|  |  |  |
|---|---|---|
| **SELLER:** | High Ridge Management Corp. | |
| By: | _____ | |
| Name: | _____ | |
| Title: | _____ | |
| Date: | _____ | |

|  |  |
|---|---|
| | Hollywood Hills Rehabilitation Center, LLC |
| By: | _____ |
| Name: | _____ |
| Title: | _____ |
| Date: | _____ |

The undersigned acknowledges and agrees to act as Escrow Agent in accordance with the terms of this Agreement.

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.

By: _____

MARK ALBRIGHT,
FOR THE FIRM

Signature Page to Purchase and Sale Agreement

# EXHIBIT A

## LEGAL DESCRIPTION OF THE PROPERTY

**PARCEL A:**
Lots 1 through 12, Block 45, HOLLYWOOD HILLS, according to the Plat thereof, as recorded in Plat Book 6, Page 22 of the Public Records of Broward County, Florida.

TOGETHER WITH:

**PARCEL B:**
Lessee's interest under that certain lease by and between the City of Hollywood and High Ridge Management Corp., a Florida Corporation, for the following described property:
That portion of Garfield Street right-of-way lying south of and adjacent to Block 45 of Hollywood Hills, according to the Plat thereof, recorded in Plat Book 6, Page 22, of the Public Records of Broward County, Florida being more particularly described as follows:

> Said portion of Garfield Street bounded on the north by the south line of said Block 45, bounded on the south by a line 18.0 feet south of and parallel with the South line of said Block 45, bounded on the west by a line of 20.0 feet east of and parallel with the southerly extension of the west line of said Block 45 and bounded on the east by a line 79.0 feet west of and parallel with the southerly extension of the east line of said Block 45.

# **EXHIBIT 2**

*PROPOSED ORDER AUTHORIZING DEBTORS' TO SELL PURCHASED ASSETS FREE
AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE:                                            Case No.: 15-16388-JKO

HIGH RIDGE MANAGEMENT CORP., et al.,[1]        Chapter 11
                                                 (Jointly Administered)

    Debtors.

_____/

**ORDER (I) AUTHORIZING THE SALE OF THE DEBTORS' ASSETS FREE**
**AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER**
**INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT**
**OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN**
**CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

        Upon the motion (the "Motion") of the above-captioned debtors and debtors in

possession (the "Debtors" or "Sellers") in the above-captioned cases (the "Chapter 11 Cases"),

pursuant to sections 105(a), 363, 365 and 1123 of title 11 of the United States Code (the

"Bankruptcy Code"), rules 2002, 6004, 6006, 9008, and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and rules 6004-1, 6006-1 and 9075-1 of the Local Rules of

---

[1] The following cases are jointly administered pursuant to this Court's *Order Jointly Administering Chapter 11 Cases* [ECF No. 10], *In re High Ridge Management, Corp.*, Case No. 15-16388-JKO, *In re Hollywood Hills Rehabilitation Center, LLC,* Case No. 15-16389-RBR, and *In re Hollywood Pavilion, LLC*, Case No. 15-16390-RBR.

the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules"),
seeking entry of an order (this "Order"), among other things, (i) authorizing the sale of
substantially all of the Debtors' assets (the "Purchased Assets")[2] to Hollywood Hills Operator,
LLC and 1200 North 35th Avenue, LLC (collectively, the "Buyer")[3], pursuant to that certain
Asset Purchase Agreement ("APA") and that certain Agreement for Purchase and Sale ("Real
Estate Agreement" and together with the APA, the "Sale Agreements")[4], respectively, free and
clear of all liens, claims and encumbrances ("Liens and Claims") and other interests, except to
the extent specifically provided in the Sale Agreements, including, without limitation, rights or
claims based on successor or transferee liability (the "Sale Transaction"), (ii) authorizing the
assumption and assignment of certain executory contracts and unexpired leases in connection
with the Sale Transaction (the "Assumed Contracts")[5], and (iii) granting certain related relief, all
as more fully described in the Motion and the Sale Agreements; and the Court having entered an
order on _____, 2015 (the "Bidding Procedures Order", see ECF No. ___) (a) authorizing and
approving bidding procedures for submitting bids for the purchase of the Purchased Assets
("Bidding Procedures") and conducting an auction for the Purchased Assets (the "Auction"), (b)
authorizing and approving procedures for the assumption and assignment of executory contracts

---

[2] For the avoidance of doubt, as defined herein, "Purchased Assets" shall mean the Assets (as defined in
the APA) and the Purchased Assets (as defined in the Real Estate Agreement).

[3] To the extent the Buyer assigns its/their rights under the Sale Agreements, in whole or in part, to one or
more designees or assignees, any such designee or assignee shall be deemed to be a "Buyer" as and to the
extent of such assignment(s) and thereby entitled to all of the benefits and protections afforded hereunder.

[4] Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings ascribed
to such terms in the Sale Agreements.  The Sale Agreements are collectively attached hereto as Exhibit A.

[5] For informational purposes, the Assumed Contracts include only the Provider Agreements and the
Resident Agreements (each as defined in the APA) and the Larkin Lease (as defined in the Real Estate
Agreement). [The Buyer did not specify any other contracts, agreements, or leases for assumption and
assignment and, therefore, no other contracts, agreements, or leases are being assumed and assigned to the
Buyer in connection with the Sale Transaction.]

and unexpired leases in connection with the Sale Transaction (the "<u>Assumption and Assignment Procedures</u>"), (c) scheduling a deadline to submit bids for the Purchased Assets, the date and time of the Auction, and the date and time of the hearing to consider the approval of the proposed sale of the Purchased Assets (the "<u>Sale Hearing</u>"), (d) authorizing the form and manner of notice of the Auction, the Sale Hearing, the Bid Deadline (as that term is defined in the Bidding Procedures), the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale Transaction, and the date, time and place of the Sale Hearing, and (e) granting certain related relief; and the Debtors having selected the combined bid proffered by the Buyer as their "stalking horse" bid; [and the Auction having been held on _____, 2015]; and the Debtors having determined that the Buyer's combined bid for the Purchased Assets was (and remains) the highest and best bid therefor; and the Sale Hearing having been held on _____, 2015; and upon the record of the Sale Hearing and all of the proceedings held before the Court; and the Court having reviewed the Motion and all affidavits, declarations, responses, and objections thereto, if any, and having found and determined that the relief requested in the Motion is in the best interests of the Debtors, the estates and creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**IT IS FOUND AND DETERMINED, that:**[6]

---

[6] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

143828.01401/100069214v.1

**Jurisdiction and Venue**

A.      This Court has jurisdiction over the Motion, the Sale Agreements, the Sale Transaction, the assumption and assignment of the Assumed Contracts, and all of the other transactions contemplated by the Sale Agreements, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and proceedings is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

**Statutory Predicates**

B.      The statutory predicates for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9008, and 9014.

**Final Order**

C.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order and that waiver of any applicable waiting period is appropriate, and expressly directs entry of judgment as set forth herein.

**Compliance with Bidding Procedures Order**

D.      As demonstrated by (i) the testimony and other evidence proffered or introduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have thoroughly and fairly marketed the Purchased Assets and conducted the related sale process in good faith and in compliance in all respects with the Bidding Procedures and the Bidding Procedures Order.  All interested persons and entities have been afforded a full, fair, and reasonable opportunity to (i) conduct due diligence investigations,

4

(ii) submit bids and to submit higher or otherwise better bids to purchase the Purchased Assets, and (iii) object or be heard with respect to the Motion and the relief granted by this Order.  The Bidding Procedures were non-collusive, designed and implemented in good faith, substantively and procedurally fair to all parties, and obtained the highest and best value for the Purchased Assets for the Debtors, their creditors, and the estates.   In accordance with the Bidding Procedures, the Debtors determined that the combined bid submitted by the Buyer and reflected in and memorialized by the Sale Agreements is the highest and best bid for the Purchased Assets.

### Notice

E.        As evidenced by the affidavits and certificates of service previously filed with the Court, in light of the exigent circumstances of these bankruptcy cases and based on the representations of counsel at the Bidding Procedures Hearing and the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures, the Assumption and Assignment Procedures, the Auction, the Bidding Procedures Hearing, the Sale Transaction and the assumption and assignment of the Assumed Contracts, all of the other transactions contemplated by the Sale Agreements, and the Sale Hearing have been provided in accordance with Bankruptcy Rules 2002(a), 6004(a), 6006(c), 9008 and 9014 and all applicable provisions of the Bankruptcy Code and the Local Rules and in compliance with the Bidding Procedures Order; (ii) such notice was good, sufficient, reasonable, and appropriate under the particular circumstances of the Debtors' Chapter 11 Cases, and reasonably calculated to reach and apprise all holders of Liens and Claims, and other interests, including, without limitation, any holder asserting any rights or claims based on any successor or transferee liability, about the Motion, the Bidding Procedures, the Assumption and Assignment Procedures, the Auction, the Bidding Procedures Hearing, the Sale Transaction and the assumption and assignment of the Assumed Contracts, all of the other transactions contemplated by the Sale Agreements, and the Sale

5

Hearing; and (iii) no other or further notice of the Motion, the Bidding Procedures, the Assumption and Assignment Procedures, the Auction, the Bidding Procedures Hearing, the Sale Transaction and the assumption and assignment of the Assumed Contracts, and any other transactions contemplated by the Sale Agreements, the Sale Hearing, or any matters in connection therewith, is or shall be required. With respect to entities whose identities are not known or reasonably ascertainable by the Debtors, notice of the Auction was sufficient and reasonably calculated, under the circumstances, to and did provide adequate notice to such entities.

   F. On _____, 2015, the Debtors served notices (the "<u>Assumption and Assignment Notices</u>") of the potential assumption and assignment of the Assumed Contracts on the counterparties to such Assumed Contracts, which notices included (i) the Assumed Contracts that could potentially be assumed and assigned, (ii) the name of the counterparties to such Assumed Contracts, (iii) the amount, if any, determined by the Debtors to be necessary to be paid (the "<u>Cure Amounts</u>") as of the date of the Assumption and Assignment Notices upon the assumption of the Assumed Contracts, and (iv) the deadline by which any counterparty to any of the Assumed Contracts must object to the possible assumption by the Debtors and assignment to the Buyer of the Assumed Contracts. The service of such Assumption and Assignment Notices was good, sufficient, and appropriate under the particular circumstances, and no other or further notice(s) of the assumption and assignment of the Assumed Contracts or the applicable Cure Amounts is/are required. Each counterparty to the Assumed Contracts has had an opportunity to object to the assumption by the Debtors and the assignment to the Buyer of the Assumed Contracts and to the applicable Cure Amounts set forth in the Assumption and Assignment Notices.

143828.01401/100069214v.1

**Corporate Authority**

G.       The Debtors (i) have full corporate power and authority to execute and deliver the Sale Agreements and all other documents contemplated thereby, (ii) have all of the necessary corporate power and authority to consummate the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, (iii) have taken all corporate action necessary to authorize and approve the Sale Agreements and the consummation by the Debtors of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, and (iv) subject to entry of this Order, need no consents or approvals, other than those expressly set forth in the Sale Agreements, to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

**Good Faith**

H.       The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision and any other applicable or similar provisions under applicable bankruptcy and nonbankruptcy law.  The Buyer has at all times acted in good faith within the meaning of section 363(m) of the Bankruptcy Code in pursuing and consummating the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.  The Sale Agreements and the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, were negotiated, proposed, and entered into by the Sellers and the Buyer without collusion, in good faith, and from arm's length bargaining positions, and such parties are "unrelated" for purposes of ERISA Section 4204, as may be applicable.  None of the

Sellers, the Buyer, or their respective agents, officials, personnel, representatives, and advisors, have engaged in any conduct that would cause or permit the avoidance of the Sale Agreements or any of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, or the imposition of costs, fees, expenses, or damages under section 363(n) of the Bankruptcy Code.  Neither the Buyer nor its agents, officials, personnel, representatives, or advisors is/are an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

## Business Justification

I.      The Debtors have demonstrated good, sufficient, and sound business reasons and compelling circumstances to enter into the Sale Agreements and to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, and such actions are appropriate and reasonable exercises of the Debtors' business judgment and in the best interests of the Debtors, the estates and creditors, and other parties in interest.  Such business reasons include, but are not limited to, the facts that (i) the Sale Agreements and the terms thereof constitute the highest and best offer for the Purchased Assets and provide fair and reasonable consideration for the Purchased Assets, (ii) no other entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors or the estates than the Buyer, (iii) the Sale Transaction, under and pursuant to the terms of the Sale Agreements, presents the best opportunity to realize the value of the Purchased Assets and avoid decline and devaluation of the Purchased Assets, (iv) the consideration to be provided by the Buyer under the Sale Agreements exceeds the liquidation value of the Purchased Assets, and (v) unless the Sale Transaction and all of the other transactions contemplated by the Sale Agreements are concluded expeditiously as provided for in the Motion and pursuant to the Sale Agreements, recoveries to creditors may be

143828.01401/100069214v.1

diminished.  The Debtors' determination that the Sale Agreements constitute the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtor's business judgment.

J.    The terms and conditions of the Sale Agreements, including, without limitation, the consideration to be realized by the Debtors pursuant to the Sale Agreements, are fair and reasonable.    Approval of the Motion, the Sale Agreements, and the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, is in the best interest of the Debtors, the estates and creditors, and all other parties in interest.

### No Fraudulent Transfer

K.    The consideration provided by the Buyer for the Purchased Assets pursuant to the Sale Agreements (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States and of each state, territory, possession, and the District of Columbia.

L.    The Buyer is not a mere continuation of the Debtors or the estates, there is no continuity or common identity between the Buyer and the Debtors, and there is no continuity of enterprise between the Buyer and the Debtors.  The Buyer is not holding itself out to the public as a continuation of the Debtors.  The Buyer is not a successor to the Debtors or the estates, and none of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction or the assumption and assignment of the Assumed Contracts, amounts to a consolidation, merger, or de facto merger of the Buyer with or into the Debtors. None of the transactions contemplated by the Sale Agreements, including, without limitation, the

9

Sale Transaction or the assumption and assignment of the Assumed Contracts, is being undertaken for the purpose of escaping liability for the Debtors' debts or hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States or of any state, territory, possession or the District of Columbia.

### Free and Clear

M.      The transfer of the Purchased Assets to the Buyer will be legal, valid, and effective transfers of the Purchased Assets, and will vest the Buyer with all right, title, and interest of the Sellers in and to the Purchased Assets, free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims (for purposes of this Order, the term "claim" shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code) based on any successor or transferee liability, including, without limitation, (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Sellers' or the Buyer's interest in the Purchased Assets or any similar rights, and (ii) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, Liens and Claims, judgments, demands, rights of first refusal or charges of any kind or nature, if any, including, without limitation, any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership, and (b) all claims arising in any way in connection with any agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of the Debtors' Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, without limitation, claims otherwise arising under doctrines of successor or transferee liability, or under federal or state tax laws.

143828.01401/100069214v.1

N.      The Sellers may transfer the Purchased Assets free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those (i) holders of Liens and Claims, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, and (ii) non-Debtor parties to the Assumed Contracts, who did not object or who withdrew their objections to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those (i) holders of Liens and Claims, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, and (ii) non-Debtor parties to the Assumed Contracts who did object, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code, including, without limitation, section 363(f)(5) of the Bankruptcy Code, because the holders of any such interest(s) could be compelled in a legal or equitable proceeding to accept monetary satisfaction on account of such interest(s), and are adequately protected by having their interest(s), if any, attach to the proceeds of the Sale Transaction ultimately attributable to the Purchased Assets in which each such creditor alleges an interest, in the same order of priority, with the same validity, force, and effect that each such creditor had prior to the sale, subject to any claims and defenses the Debtors, the estates, or other parties may possess with respect thereto.

O.      The Buyer would not have entered into the Sale Agreements and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, (i) if the transfer of the Purchased Assets was not free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or

11

successor or transferee liability, or (ii) if the Buyer would, or in the future could, be liable for any such Liens and Claims, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability (subject only, in the case of the Buyer with respect to the Purchased Assets, to the Assumed Liabilities). The Buyer will not consummate the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, unless this Court expressly orders that neither the Buyer, nor any of its affiliates, its present or contemplated members, partners, officers, directors or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens and Claims, or other interests, including, without limitation, rights or claims based on any taxes, successor or transferee liability, except for only the Assumed Liabilities.

P.      Not transferring the Purchased Assets free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on successor or transferee liability, except for only the Assumed Liabilities, would adversely impact the Debtors' efforts to maximize the value of the estates, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

Q.      The Buyer would not have entered into the Sale Agreements and will not consummate the transactions contemplated thereby unless this Court expressly orders that, without limiting the generality of the foregoing, none of the Buyer, its affiliates, its present or contemplated members, partners, officers, directors or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at

12

law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens and Claims, or other interests relating to any U.S. federal, state, or local income tax liabilities, including, without limitation, any such tax liabilities that are attributable to the recapture of an excess loss account under Treasury Regulation Section 1.1502-19 (or any similar provision of state or local tax law), that the Debtors are or may be liable for or incur in connection with consummation of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

## **Validity of Transfer**

R.      The consummation of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363, and 365, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Sale Agreements.

S.      The Purchased Assets constitute property of the Debtors' estates, and good title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors are the sole and lawful owners of the Purchased Assets, and no other person has any ownership right, title, or interest therein.

## **Assumed Contracts**

T.      The assumption and assignment of the Assumed Contracts, free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever, pursuant to the terms of this Order is integral to the transactions contemplated by the Sale Agreements and is in the best interest of the Debtors, the estates and creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound and prudent business judgment.

143828.01401/100069214v.1

U.      Pursuant to the terms of the Sale Agreements, by the Closing Date and to the extent necessary, the Debtors shall have: (i) cured or provided adequate assurance of cure of, any monetary default existing as of the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and (ii) provided compensation, or adequate assurance of compensation, to any party for actual pecuniary loss to such party resulting from a monetary default existing as of the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

V.      The Buyer has demonstrated adequate assurance of its future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Assumed Contracts to be assumed and assigned under the Sale Agreements shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer notwithstanding any provision in the contracts or other restrictions prohibiting the assignment or transfer.

## Compelling Circumstances for an Immediate Sale

W.      To maximize the value of the Purchased Assets and preserve the viability of the Business to which the Purchased Assets relate, it is essential that the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, occur within the time constraints set forth in the Motion and the Sale Agreements.  Time is of the essence in consummating the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

X.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and

143828.01401/100069214v.1

consummation of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, prior to, and outside of, a chapter 11 plan.  The transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a chapter 11 plan for the Debtors, and therefore do not constitute a <u>sub rosa</u> plan.

Y.      Given all of the circumstances of the Debtors' Chapter 11 Cases and the adequacy and fair value of the purchase price under the Sale Agreements, the consummation of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, constitutes a reasonable and sound exercise of the Debtors' business judgment.

**IT IS THEREFORE ORDERED THAT:**

## <u>General Provisions</u>

1.      The Motion is **GRANTED** as provided herein, and entry into and performance under, and in respect of, the Sale Agreements and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, are authorized and approved.  The Motion complies with all provisions of Local Rule 6004-1 other than those previously waived by the Court.

2.      Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice.

3.      This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein by reference.

### Approval of the Sale Agreements

4.      The Sale Agreements and all ancillary documents thereto, and the transactions contemplated thereby, including the Sale Transaction and the assumption and assignment of the Assumed Contracts and all the terms and conditions thereof, are **APPROVED**. If there is any conflict between the Sale Agreements and this Order, this Order shall govern.

5.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to perform their obligations under, and comply with the terms of, the Sale Agreements, and all ancillary documents thereto, and to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, pursuant to, and in accordance with, the terms and provisions of the Sale Agreements and this Order.

6.      The Debtors are authorized to execute and deliver, and empowered to perform under, consummate, and implement, the Sale Agreements, together with all additional instruments and documents that the Sellers or the Buyer reasonably deem necessary or appropriate to implement the Sale Agreements and effectuate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, and to take all further actions as may reasonably be required by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession the Purchased Assets, or as may be necessary or appropriate to the performance of any other obligations as contemplated by the Sale Agreements. The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any amounts that become payable by the Debtors pursuant to the Sale Agreements (and

16

any related agreements executed in connection with the Sale Transaction). Such amounts shall (i) constitute allowed administrative expenses of the Debtors' estates under Section 503(b)(1) and 507(a)(2) of the Bankruptcy Code; (ii) be treated with such priority if the Chapter 11 Cases convert to cases under Chapter 7 of the Bankruptcy Code; and (iii) not be discharged, modified, or otherwise affected by any reorganization plan for the Debtors, except by written agreement with the Buyer (such agreement to be provided in the Buyer's sole discretion). The Debtors shall file and serve notice of the consummation of the occurrence of the Closing on the Sale Agreements.

7.      This Order and the Sale Agreements shall be binding in all respects upon the parties and their respective successors (including any trustee, receiver, receiver-manager, interim receiver or monitor, or similar officer appointed in respect of Sellers in the Debtors' Chapter 11 Cases) and permitted assigns and designees.

8.      Nothing contained in any plan confirmed in the Debtors' Chapter 11 Cases,  any order confirming any such plan, any order converting any of the Debtors' Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or any order dismissing the Debtors' bankruptcy cases, shall conflict with or derogate from the provisions of the Sale Agreements or this Order in any material way.

9.      To the fullest extent permitted under applicable law, the Buyer shall be authorized (but not directed), as of the Closing Date, to operate under any licenses, permits, registrations, and government authorizations or approvals of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date; provided, however, that nothing in the Sale Agreements or this Order shall authorize the transfer of a permit or license without governmental approval where applicable

17

nonbankruptcy law requires governmental approval of such transfer; provided, further, that the foregoing is not intended to modify the protections provided by section 525 of the Bankruptcy Code, to the extent applicable.

## Transfer of the Purchased Assets Free and Clear of Liens and Claims

10.     Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, in accordance with the Sale Agreements, (a) the Purchased Assets shall be transferred to the Buyer and (b) the Purchased Assets shall be free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability.

11.     Except as expressly permitted or otherwise specifically provided by the Sale Agreements or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, and other creditors, holding or asserting Liens and Claims, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in the Sellers or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Sellers and the Purchased Assets, the use or operation of the Purchased Assets prior to the Closing Date, or the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its successors and permitted assigns or designees, its respective property and the Purchased Assets, or such persons' or entities' Liens and Claims, or other

143828.01401/100069214v.1

interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability.

12.     This Order (a) shall be effective as a determination that, as of the Closing Date, (i) no Liens and Claims, or other interests of any kind or nature shall be assertable against the Buyer, its affiliates, its present or contemplated members, partners, officers, directors or shareholders, successors or permitted assigns or designees, or any of its or their respective assets (including, without limitation, the Purchased Assets), (ii) the Purchased Assets shall have been transferred to the Buyer free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever, and (iii) the transfers described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Sale Agreements.

13.     The transfers of the Purchased Assets to the Buyer in accordance with the Sale Agreements constitute legal, valid, and effective transfers of the Purchased Assets and shall vest the Buyer with all right, title, and interest of the Sellers in and to the Purchased Assets, free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever,

including, without limitation, rights or claims based on any taxes or successor or transferee liability, as set forth in sections 105 and 363(f) of the Bankruptcy Code.

14.     On the Closing Date, the Sellers' creditors and any other holder of a Lien and Claim, or other interest of any kind or nature whatsoever is authorized and directed to execute such documents and take all other actions as may be necessary to release its Lien and Claim, or other interest in the Purchased Assets, if any, as such Lien and Claim, or other interest may have been recorded or may otherwise exist.

15.     If any person or entity that has filed financing statements, mortgages, mechanic's Liens, *lis pendens*, or other documents or agreements evidencing a Lien and Claim, or other interest in and against the Purchased Assets shall not have delivered to the Sellers prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens and Claims, or other interests that the person or entity has with respect to the Purchased Assets, or otherwise, then (a) the Sellers and the Buyer are each authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Sellers and the Purchased Assets, and (b) the Buyer is authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Liens and Claims, and other interests of any kind or nature whatsoever in and against the Purchased Assets.

16.     On the Closing Date, all persons or entities in possession of any of the Purchased Assets are directed to surrender possession of such Purchased Assets to the Buyer.

17.     Following the Closing Date, neither the Debtors, nor their affiliates, or any creditor or holder of a Lien and Claim, or other interest of any kind or nature whatsoever shall interfere with the Buyer's title to, or use and enjoyment of, the Purchased Assets, based on, or

related to, any such Lien and Claim, or other interest, or based on any actions the Debtors may take in the bankruptcy cases or otherwise.

18.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to the Buyer in accordance with the Sale Agreements and this Order; provided, however, that the foregoing restriction shall not prevent any person or entity from appealing this Order or opposing any appeal of this Order.

19.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to grant or renew any permit, license, or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of the Debtors' Chapter 11 Cases or the consummation of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

## Assumption and Assignment of the Assumed Contracts

20.     Except as otherwise expressly provided in the Sale Agreements or this Order, upon the Closing Date, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors are authorized to assume each of the Assumed Contracts free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever.

21.     There are no Cure Amounts owing in connection with the Assumed Contracts.  To the extent that an Assumed Contract constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, all requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors of such Assumed Contracts have been satisfied.  Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, (i) the Buyer shall be fully and irrevocably vested with all

right, title and interest of the Debtor in, to and under the Assumed Contracts, in accordance with the terms of the Sale Agreements, (ii) the Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts, in accordance with the terms of the Sale Agreements, and (iii) the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Contracts.

22.     The Buyer has provided adequate assurance of future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

23.     There shall be no right to payment, termination, modification, acceleration or cancellation, assignment fees, increases, or any other fees charged to the Debtors or the Buyer as a result of the execution and delivery by Buyer of the Sale Agreements or any related documents, the consummation of the Sale Transaction, or the compliance by Buyer with any provisions in the Sale Agreements.  The validity of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, shall not be affected by any dispute between the Debtors or their affiliates and another party to an Assumed Contract regarding the payment of any amount, including any cure amount under the Bankruptcy Code.  Upon assignment to the Buyer, the Assumed Contracts shall be valid and binding, in full force and effect, and enforceable by the Buyer in accordance with their respective terms.

24.     Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assumed Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the Buyer any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts and existing as of and including the Closing Date, or under the Sale Agreements or arising by

143828.01401/100069214v.1

reason of the consummation of transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.  Any party that may have had the right to consent to the assignment of an Assumed Contract is deemed to have consented to such assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise, if such party failed to timely object to the assumption and assignment of such Assumed Contract.

### No Successor or Transferee Liability

25.    None of the Buyer, its present or contemplated members, partners. officers, directors or shareholders, its or their respective successors or permitted assigns or designees, or any of the foregoing's respective affiliates, agents, officials, personnel, representatives, or advisors shall have any liability for any claim assertable against the Debtors or the estates or related to the Purchased Assets.  The Buyer shall not be deemed, as a result of any action taken in connection with the Sale Agreements or any of the transactions or documents ancillary thereto or contemplated thereby, or in connection with the transfer of the Purchased Assets, (a) to be a legal successor, or otherwise be deemed a successor to the Debtors, (b) to have, *de facto* or otherwise, merged with or into the Debtors, or (c) to be a mere continuation or substantial continuation of the Debtors or the Business or enterprise of the Debtors.  Without limiting the foregoing, the Buyer shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, without limitation, under any theory of successor or transferee liability, *de facto* merger or continuity, environmental, tax, labor and employment, products, or antitrust liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

143828.01401/100069214v.1

26.     Effective upon the Closing Date, and except as otherwise expressly provided in this Order, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding, against the Buyer, its past, present, or contemplated members, partners, officers, directors or shareholders, its or their respective predecessors, successors or permitted assigns or designees, or affiliates, or its or their respective assets, including, without limitation, the Purchased Assets, with respect to any claim against the Debtors, including, without limitation, the following actions: (a) commencing or continuing any action or other proceeding pending or threatened against the Debtors as against the Buyer, its respective past, present, or contemplated members, partners, officers, directors or shareholders, its respective predecessors, its respective successors or permitted assigns or designees, or affiliates, or its respective assets, including, without limitation, the Purchased Assets, (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtors as against the Buyer, its respective past, present, or contemplated members, partners, officers, directors or shareholders, its respective predecessors, its respective successors or permitted assigns or designees, or affiliates, or its respective assets, including, without limitation, the Purchased Assets, (c) creating, perfecting, or enforcing any Lien and Claim, or interest against the Debtors as against the Buyer, its respective past, present, or contemplated members, officers, directors, partners or shareholders, its respective predecessors, its respective successors or permitted assigns or designees, or affiliates, or its respective assets, including, without limitation, the Purchased Assets, (d) asserting any setoff, right of subrogation, or recoupment of any kind for any obligation of the Debtors as against any obligation due the Buyer, its respective past, present, or contemplated members, officers, directors, partners or shareholders, its respective predecessors, its respective successors or

24

permitted assigns or designees, or affiliates, or its respective assets, including, without limitation, the Purchased Assets, (e) commencing or continuing any action, in any manner or place, that does not comply, or is inconsistent with, the provisions of this Order, or the agreements or actions contemplated or taken in respect thereof, or (f) revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the Businesses operated with such assets.

27.    Except for only the Assumed Liabilities (solely in the case of the Buyer with respect to the Purchased Assets) or as expressly provided in the Sale Agreements or this Order, the Buyer shall not have any liability or responsibility for any liability or other obligation of the Sellers or their estates arising under or related to the Purchased Assets.  Without limiting the generality of the foregoing, and except as expressly provided in the Sale Agreements or this Order, the Buyer shall not be liable for any Liens and Claims, or other interests of any kind or nature against the Sellers or their estates or any of their predecessors or affiliates, and the Buyer shall have no successor, transferee, or vicarious liabilities of any kind or character, including, without limitation, liabilities based on any theory of antitrust, environmental, tax, successor, or transferee liability, labor law, *de facto* merger, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Sellers or their estates or any obligations of the Sellers or their estates arising prior to the Closing Date.

28.    After the Closing Date, the Sellers shall have no liability or responsibility for the Assumed Liabilities associated therewith.

29.    Without limiting the generality of the foregoing, neither the Buyer nor its respective past, present, or contemplated members, partners, officers, directors or shareholders, its respective predecessors, successors or permitted assigns or designees, or affiliates or the

Purchased Assets shall have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens and Claims, and other interests relating to any U.S. federal, state, or local income tax liabilities, including, without limitation, any such tax liabilities that are attributable to the recapture of an excess loss account under Treasury Regulation Section 1.1502-19 (or any similar provision of state or local tax law), that the Debtors are obligated for or incur in connection with consummation of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

30.     This Order (a) shall be effective as a determination that, except for only the Assumed Liabilities (solely in the case of the Buyer with respect to the Purchased Assets), on or prior to the Closing Date, all Liens and Claims, and other interests of any kind or nature whatsoever existing as to the Sellers with respect to the Purchased Assets have been unconditionally released and terminated, and that the transfers described in this Order have been effected, and (b) shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

31.     Each and every federal, state, and local governmental agency or department is authorized to accept any and all documents and instruments necessary or appropriate to consummate the transactions contemplated by the Sale Agreements, including,

without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

32.     To the fullest extent permissible under applicable law, except as otherwise provided in the Sale Agreements or this Order, the Debtors irrevocably and unconditionally release, remise, and forever discharge the Buyer from any and all suits, legal or administrative proceedings, claims, demands, damages, losses, costs, liabilities, interest or causes of action whatsoever, at law or in equity, known or unknown, which the Debtors and the estates might now have or subsequently may have as of the Closing Date, based on, relating to or arising out of the Sale Agreements, the Sale Transaction and this Order, and the ownership, use or operation of the Purchased Assets, save only those obligations that expressly survive the Closing under the Sale Agreements.

33.     The transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and were negotiated by the parties at arm's length, and accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, shall not affect the validity of such transactions, unless such authorization is duly stayed pending such appeal.  The Buyer is a purchaser in good faith and the Buyer and its agents, officials, personnel, representatives, and advisors are entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

34.     The Buyer has given fair and substantial consideration under the Sale Agreements for the benefit of the Debtors and their estates and creditors.  The consideration

provided by the Buyer for the Purchased Assets under the Sale Agreements is greater than the liquidation value of the Purchased Assets, and shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

35.     The consideration provided by the Buyer for the Purchased Assets under the Sale Agreements is fair and reasonable, and the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, may not be avoided under section 363(n) of the Bankruptcy Code.

## **Related Relief**

36.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry. The Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order, and may, subject to the terms and conditions of the Sale Agreements, and in their discretion and without further delay, close the transactions contemplated under the Sale Agreements and take any action and perform any act authorized under this Order.

37.     The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Sale Agreements or any other sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; provided, however, that this Court shall retain jurisdiction over any and all disputes with respect thereto.

143828.01401/100069214v.1

38.    The terms and provisions of the Sale Agreements and this Order shall be binding in all respects upon the Debtors, their affiliates, estates, and creditors, all holders of equity interests of the Debtors, all holders of any claims, all counterparties to each Assumed Contract, all interested parties in the Debtors' Chapter 11 Cases and their respective successors and assigns, the Buyer and its successors and permitted assigns and designees, and any trustees, if any subsequently appointed in the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases.   The terms of this Order and the Sale Agreements shall inure to the benefit of the Debtors, their estates and creditors, the Buyer, and each of their respective successors and permitted assigns and designees, and each of the foregoing's respective agents, officials, personnel, representatives, and advisors.

39.    No law of any state or other jurisdiction relating to bulk sales or similar laws shall apply in any way to the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, the Motion and/or this Order.

40.    The failure to specifically include any particular provision of the Sale Agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreements be authorized and approved in its entirety.

41.    The Sale Agreements and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.  Any such proposed modification, amendment, or supplement that does have a material adverse effect on the Debtors' estates shall be subject to further order of the Court, on five (5) days' prior written notice.

143828.01401/100069214v.1

42.     The provisions of this Order are non-severable and mutually dependent on each other.

43.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

44.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion or the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, the terms of this Order shall govern.

45.     This Court retains jurisdiction to enforce and implement the terms and provisions of this Order, the Sale Agreements, all ancillary documents, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Buyer, (b) resolve any disputes arising under or related to the Sale Agreements, (c) interpret, implement, and enforce the provisions of this Order, and (d) protect the Buyer against the assertion of any Lien and Claim, or other interest, of any kind or nature whatsoever, in and against the Purchased Assets.

# # #

**Submitted by**:
Timothy R. Bow, Esq.
Markowitz, Ringel, Trusty & Hartog, P.A.
*Proposed Counsel to the Debtors-in-Possession*
101 NE Third Avenue, Suite 1210
Fort Lauderdale, Florida 33301
Tel: (954) 767-0030

**Copies to:**
Timothy R. Bow, Esq.
*(Attorney Bow is directed to mail a copy of this Order to all interested parties and to file a certificate of service).*
560837.2

143828.01401/100069214v.1