**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE:                                                  Case No.: 15-16388-JKO

HIGH RIDGE MANAGEMENT CORP., *et al.*,[1]          Chapter 11
                                                        (Jointly Administered)

      Debtors.

_____/

---

**DEBTORS' JOINT PLAN OF LIQUIDATION PURSUANT TO**
**CHAPTER 11 OF THE BANKRUPTCY CODE**

---

DATED: April 13, 2015                    **MARKOWITZ RINGEL TRUSTY & HARTOG, P.A.**
                                          *Proposed Counsel for Debtors*
                                          101 NE Third Avenue, Suite 1210
                                          Fort Lauderdale, FL 33301
                                          Tel: (954) 767-0030 // Fax: (954) 767-0035

                                          By: /s/ *Grace E. Robson*
                                              Grace E. Robson, Esq.
                                              Fla. Bar No. 178063
                                              grobson@mrthlaw.com
                                              Timothy R. Bow, Esq.
                                              Fla. Bar No. 104710
                                              tbow@mrthlaw.com

---

[1] The following cases are jointly administered pursuant to this Court's *Order Jointly Administering Chapter 11 Cases* [ECF No. 10], *In re High Ridge Management, Corp.*, Case No. 15-16388-JKO, *In re Hollywood Hills Rehabilitation Center, LLC*, Case No. 15-16389-JKO, and *In re Hollywood Pavilion, LLC*, Case No. 15-16390-JKO.

*Table of Contents*

**ARTICLE I – DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ...................................................................4
   A. Defined Terms ...........................................................................................4
   B. Rules of Interpretation ............................................................................13
   C. Computation of Time ..............................................................................13
   D. Governing Law .......................................................................................13
   E. Reference to Monetary Figures...............................................................14
   F. Controlling Document .............................................................................14

**ARTICLE II – ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND PROFESSIONAL CLAIMS** ....................................................................14
   A. Administrative Claims; Priority Tax Claims ..........................................14
   B. Professional fee Claims...........................................................................15
   C. U.S. Trustee Statutory Fees ....................................................................15

**ARTICLE III – THE CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ................................................................................15
   A. Summary of Classification of Claims and Interests................................15
   B. Classification of Claims and Interests.....................................................16
   C. Treatment of Claims and Interests ..........................................................17
   D. Special Provision Governing Unimpaired Claims ..................................18
   E. Elimination of Vacant Classes ................................................................18
   F. Voting Classes; Presumed Acceptance by Non-Voting Classes..............18
   G. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ....18

**ARTICLE IV – MEANS FOR IMPLEMENTATION OF THE PLAN** ...............................19
   A. Sources of Consideration for Plan Distributions ....................................19
   B. The Liquidating Estate ............................................................................19
   C. General Settlement of Claims ..................................................................19
   D. Corporate Action .....................................................................................19
   E. Dissolution of Boards of Debtors ............................................................19
   F. Effectuating Documents; Further Transactions .......................................20
   G. Exemption from Certain Taxes and Fees.................................................20
   H. Preservation of Causes of Action............................................................20
   I. Closing the Debtors' Cases ......................................................................21

**ARTICLE V – TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ................................................................................21
   A. Assumption and Assignment of Executory Contracts and Unexpired Leases................21
   B. Cure Defaults for Assumed Executory Contracts and Unexpired Leases .......................22
   C. Claims Based on rejection of Executory Contracts and Unexpired Leases......................23
   D. Sale Agreements; Designed Contracts.....................................................23
   E. Modifications, Amendments, Supplements, Restatements, or Other Agreements ............24
   F. Insurance Policies ....................................................................................24

i

G. Reservation of Rights..............................................................................................24

**ARTICLE VI – PROVISIONS GOVERNING DISTRIBUTION** ......................................24
A. Calculation of Amounts to Be Distributed........................................................24
B. Rights and Powers of the Debtors, Liquidating Agent ....................................25
C. Delivery of Distributions and Undeliverable or Unclaimed Distributions ......25
D. Compliance with Tax Requirements / Allocations............................................27
E. Claims Paid by Third Parties; Recourse to Collateral .....................................27

**ARTICLE VII – THE LIQUIDATING ESTATE AND THE LIQUIDATING AGENT** .....28
A. Purpose of the Liquidating Estate ....................................................................28
B. Transfer of Assets to the Liquidating Estate ....................................................29
C. Powers of the Liquidating Agent .....................................................................29
D. Duties of the Liquidating Agent .......................................................................30
E. Pursuit of Remaining Causes of Action ...........................................................31
F. Compensation Structure ...................................................................................32
G. Distribution; Withholding ................................................................................32
H. Disputed Claims Reserve .................................................................................33
I. Other Rights and Duties ...................................................................................33
J. Wind-Down........................................................................................................33
K. Termination of Liquidating Estate ...................................................................34
L. Transfer of Beneficial Interests .......................................................................35
M. Exculpation; Indemnification...........................................................................35

**ARTICLE VIII – PROCEEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS** ...............................35
A. Resolution of Disputed Claims ........................................................................35
B. Disallowance of Claims ...................................................................................37
C. Amendments to Claims .....................................................................................37
D. No Interest.........................................................................................................37

**ARTICLE IX – SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**....................................................................................................................37
A. Compromise and Settlement of Claims, Interests, and Controversies..............37
B. Release of Liens ................................................................................................38
C. Subordinated Claims ........................................................................................38
D. Reserved............................................................................................................38
E. Exculpation .......................................................................................................39
F. Injunction ..........................................................................................................39
G. Setoffs ...............................................................................................................40

**ARTICLE X – SUBSTANTIAL CONSUMMATION OF THE PLAN**................................41
A. Conditions Precedent to Consummation of the Plan .........................................41
B. Waiver of Conditions.........................................................................................42
C. Effect of Non-Occurrence of Conditions to the Effective Date........................42

**ARTICLE XI – THE MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**......................................................................................................42
  A. Modification and Amendments.......................................................................42
  B. Effect of Confirmation on Modifications ......................................................43
  C. Revocation or Withdrawal of the Plan...........................................................43

**ARTICLE XII – RETENTION OF JURISDICTION**...........................................43

**ARTICLE XIII – MISCELLANEOUS PROVISIONS**..........................................45
  A. Immediate Binding Effect...............................................................................45
  B. Additional Documents ....................................................................................46
  C. Dissolution of Committee ...............................................................................46
  D. Reservation of Rights......................................................................................46
  E. Successors and Assigns...................................................................................46
  F. Service of Documents .....................................................................................46
  G. Term of Injunctions and Stays .......................................................................47
  H. Entire Agreement; Non-severability of Plan Provisions.................................47
  I. Waiver or Estoppel .........................................................................................47

**EXHIBITS TO PLAN**
  Exhibit 1.  Asset Purchase Agreement between Hollywood Hills Rehabilitation Center, LLC and Hollywood Hills Operator, LLC
  Exhibit 2.  Agreement for Purchase and Sale between High Ridge Management Corp., Hollywood Hills Rehabilitation Center, LLC and 1200 North 35th Avenue, LLC
  Exhibit 3.  Asset Purchase Agreement between Hollywood Pavilion, LLC and Larkin Community Hospital, Inc.
  Exhibit 4.  Interim Administrative Services Agreement between Hollywood Pavilion, LLC and Larkin Community Hospital, Inc.

## INTRODUCTION

The Debtors propose the following Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I of the Plan. On April 10, 2015, the Bankruptcy Court entered an order [ECF No. 10] authorizing the joint administration and procedural consolidation of these Chapter 11 cases pursuant to Bankruptcy Rule 1015(b). Each Debtor is a proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

## HISTORICAL BACKGROUND

### *Description of Debtors*

High Ridge Management Corp., Hollywood Hills Rehabilitation Center, LLC and Hollywood Pavilion, LLC are affiliated entities. High Ridge is the one-hundred percent (100%) owner of the membership interests in Pavilion and Hollywood Hills. High Ridge owns Real Property located at 1200 North 35th Avenue and 1201 North 37th Avenue, Hollywood Florida, and is the landlord of Pavilion and Hollywood Hills. Before executing a management agreement with Larkin Community Hospital, Inc. ("Larkin"), Pavilion was operating a fifty (50) bed Florida-licensed mental health hospital on the Real Property. Before the appointment of a receiver, Hollywood Hills operated a one hundred fifty-two (152) bed Florida-licensed nursing home on the Real Property.

### *Loan Documents*

On October 16, 1996, High Ridge, Herbert Kallen, and Leonore Kallen executed a loan agreement and promissory note with BankAtlantic in the amount of $7,000,000.00 (the "First Note"). In conjunction with the First Note, High Ridge executed a mortgage and security agreement as well as an assignment of rents, leases, and deposits in favor of BankAtlantic (collectively, the "Security Instruments"). On October 24, 1996, BankAtlantic recorded the Security Instruments and filed a UCC financing statement with the State of Florida. After execution of the First Note, the loan was modified and consolidated various times, resulting in seven different promissory notes and various mortgage modifications, plus additional guarantees, including those of Hollywood Hills and Pavilion (collectively, the "Loan Documents"). Branch Banking & Trust Company ("BB&T") was the successor-by-merger to BankAtlantic. Thereafter, in 2013, the Loan Documents were assigned to Stabilis Fund II, LLC ("Stabilis"), who then assigned the Loan Documents to Hollywood Property Investments, LLC ("HPI") in 2014.

### *Pavilion[2] Loses Medicare Privileges*

On October 2, 2012, the federal government indicted Karen Kallen-Zury, the Debtors' former CEO, in the case *United States v. Karen Kallen-Zury,* Case No. 12-20757-CIV-Martinez, in the United States District Court for the Southern District of Florida and alleged Medicare fraud. Ms. Zury was convicted, and on September 11, 2013, the District Court entered a Judgment of Conviction and Sentence against Ms. Zury in the amount of $39,355,328.00. The

---

[2] To the best of the Debtors' knowledge, Hollywood Hills has not lost any Medicare privileges.

referenced judgment is currently on appeal to the Eleventh Circuit Court of Appeals. In connection with the referenced district court proceeding, the U.S. government froze funds in Hollywood Hills' operating account in the approximate amount of $500,000, and Pavilion's operating account in the amount of $50,000. As of the Petition Date, these funds remain frozen.

On May 3, 2013, the Centers for Medicare and Medicaid Services ("CMS") issued a letter informing Pavilion that its Medicare privileges were being revoked based upon Pavilion's failure to respond to a written communication from CMS. The written communication was sent to an address where Pavilion used to operate an outpatient facility, but was not a current address at the time the communication was sent by CMS. Thereafter, on September 12, 2013, Pavilion's Medicare billing privileges and its participation in the Medicare program was revoked. The revocation of Pavilion's Medicare privileges was not based upon any issues regarding patient care, and was based upon the lack of response to a letter that was not timely received by Pavilion.

### State Court Action and Appointment of Receiver

On December 5, 2013, Stabilis commenced a foreclosure proceeding against the Debtors in the Circuit Court, in and for the 17th Judicial Circuit, Case No. 13-026516 (12) (the "State Court Action"). The State Court Action is a complex foreclosure proceeding, not only because of the nature of the Debtors' businesses, but also because of the defenses and claims raised by the Debtors.

The Debtors contested (and still contest) the existence of a default under the Loan Documents and raised various affirmative defenses, as well as counterclaims. On December 11, 2013, Stabilis moved to appoint a receiver. On January 16, 2014, the state court entered an order appointing Clyde Hamstreet as receiver over the Real Property, and granted him power to manage and control the operations of Pavilion and Hollywood Hills. Pavilion and Hollywood Hills filed a counterclaim against asserting breach of contract and wrongful appointment of a receiver because their assets were not included as part of the collateral securing the debt. On or about April 29, 2014, the state court appointed Jon H. Steinmeyer as substitute receiver (the "Replacement Receiver").

### Larkin's Signs Agreement to Purchase Pavilion, But Instead
### Acquires Loan Documents and Replaces Receiver

In January 2014, approximately one month after the commencement of the State Court Action, Pavilion executed a purchase agreement (the "Larkin APA") for the sale of Pavilion's assets[3] to Larkin. The Larkin APA provided for a purchase price of $1,060,000 to be paid by Larkin to Pavilion. Larkin provided a deposit of $60,000 at the time of execution of the Larkin APA. In addition, in order to facilitate the sale, Pavilion and Larkin entered into an interim management agreement for Larkin to operate the hospital. Larkin was also supposed to enter into a lease of the real property with High Ridge, contingent upon the closing of the sale with Pavilion.

---

[3] The assets subject of the Larkin APA include the hospital license and personalty related to the hospital operations.

2

However, in April 2014 approximately three months after the appointment of Mr. Hamstreet as receiver, HPI, an entity owned and controlled by Larkin, purchased and was assigned the Loan Documents. What started out as a purchase of Pavilion's assets turned into Larkin's attempt at a loan-to-own takeover of all of the Debtors' assets.

On February 14, 2014, during the pendency of the Larkin APA, the Agency for Health Care Administration ("AHCA") filed two complaints, one against Pavilion and another against Hollywood Hills,[4] to revoke their respective hospital and nursing home licenses.[5] Around this time, and as part of the contemplated sale to Larkin, Larkin submitted a request for change of ownership of Pavilion's hospital license to Larkin. On or about June 19, 2014, AHCA issued a notice of intent to deny that application. However, thereafter, on or about October 10, 2014, AHCA entered a final order approving a settlement agreement between AHCA, Pavilion and Larkin, whereby AHCA agreed to withdraw its complaint against Pavilion to allow the processing of Larkin's change of ownership application.[6] Therefore, Larkin continues to manage Pavilion's business, pending approval of the change of ownership from Pavilion to Larkin. However, the $60,000 was turned over to a successor closing agent at Larkin's direction. Upon information and belief, the Replacement Receiver has the authority to close on the transaction with Larkin on the same terms that had been negotiated with Pavilion, which is pending approvals from AHCA and the U.S. Department of Justice.

Almost immediately after the assignment of the Loan Documents to HPI, HPI filed a motion to replace Mr. Hamstreet with the Replacement Receiver. Upon information and belief, since the appointment of the Replacement Receiver, Larkin has incurred costs to comply with AHCA requirements in connection with its acquisition of the Pavilion hospital license and is attempting to include such costs as part of the debt allegedly owed by the Debtors to HPI. HPI asserts that the debt is approximately $14,000,000,[7] an amount that is approximately ***double*** the amount pled at the outset of the foreclosure by Stabilis. The Debtors dispute the extent of the debt, as well as the extent of the lien asserted by Stabilis, and now asserted by HPI.

### *Third Party Offer to Purchase Debtors' Assets*

During the pendency of the State Court Action, the Debtors received an arms' length, good-faith offer from a third-party to purchase substantially all of their assets for a price that exceeds the disputed debt amount asserted by HPI. The buyer's attempts to conduct routine diligence have been continually hindered or delayed by the Replacement Receiver. Specifically, the Debtors' and the third-party buyer had considerable difficulty in obtaining the necessary due

---

[4] Upon information and belief, the AHCA complaint against Hollywood Hills was dismissed.

[5] *State of Florida, Agency for Health Care Administration v. Hollywood Hills Rehabilitation Center, LLC,* AHCA No. 2014-000953*; and State of Florida, Agency for Health Care Administration v. Hollywood Pavilion, LLC,* AHCA No. 2014-001019.

[6] *Larkin Community Hospital, Inc. d/b/a Larkin Community Hospital v. State of Florida, Agency for Health Care Administration*, AHCA No. 2014006070.

[7] HPI asserts that as of March 5, 2015, part of the debt owed to it under the Loan Documents includes $4,116,151 in "protective advances."

diligence from the Replacement Receiver and his counsel. The buyer even sought to intervene in the case in order to be able to pursue due diligence. Accordingly, the Debtors filed for relief under Chapter 11 to facilitate the sale of their assets to 1200 North 35th Avenue, LLC and Hollywood Hills Operator, LLC (collectively, the "Buyer") for $17,000,000, a purchase price that exceeds the Debtors' aggregate debt.

### *The Bankruptcy Filing*

High Ridge, Hollywood Hills, and Hollywood Pavilion filed voluntary petitions under Chapter 11 on April 7, 2015. Contemporaneously with the filing of the Petitions, High Ridge moved on an *ex parte* basis to jointly administer the Debtors' bankruptcy cases [*See* Main Case, ECF No. 5]. Joint administration of the Debtors was granted on April 10, 2015 [Main Case, ECF No. 10].

Accordingly, the Debtors filed voluntary petitions under Chapter 11 to facilitate the Sale Transaction.

### <u>ARTICLE I</u>
### DEFINED TERMS, RULES OF INTERPRETATION,
### COMPUTATION OF TIME, AND GOVERNING LAW

A. <u>Defined Terms</u>

As used in this Plan, capitalized terms have the meanings as set forth below.

1.      "*Administrative Claims*" means Claims for the costs and expenses of the administration of the Debtors' Estates pursuant to Section 503(b) of the Bankruptcy Code. For the avoidance of doubt, Claims asserting priority under Section 503(b)(9) of the Bankruptcy Code are included in the definition of Administrative Claims, and, if Allowed, shall be paid in accordance with the Plan.

2.      "*1200*" means 1200 North 35th Avenue, LLC.

3.      "*Administrative Claims Objection Bar Date*" means the first Business Day that is 120 days following the Effective Date, except as specifically set forth in the Plan or a Final Order, including, without limitation, the Bar Date Order; provided that the Administrative Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Liquidating Agent after notice and a hearing.

4.      "*Administrative Claims Bar Date*" means the first Business Day that is 30 days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

5.      "*Affiliate*" shall have the meaning set forth in Section 101(2) of the Bankruptcy Code.

6.      "*Allowed*" means with respect to Claims:  (a) any Claim,  proof of which is timely Filed by the applicable Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a Proof of Claim is not or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided that, with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. "Allow" and "Allowing" shall have correlative meanings.

7.      "*APA*" means that certain Asset Purchase Agreement by and among Hollywood Hills Rehabilitation Center, LLC and Hollywood Hills Operator, LLC, dated April 9, 2015.

8.      "*Avoidance Actions*" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547–553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

9.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as the same may be amended from time to time.

10.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Florida having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the Southern District of Florida.

11.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

12.      "*Beneficiaries*" means Holders of Claims or Interests that are to be satisfied with post-Effective Date distributions from the Liquidating Estate Assets, each in their capacities as such.

13.      "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

14.    "*Buyer*" means, collectively, the entities known as Hollywood Hills Operator, LLC and 1200 North 35th Avenue, LLC.

15.    "*Cash*" means the legal tender of the United States or the equivalent thereof.

16.    "*Cash Sale Proceeds*" means the Sale Proceeds that are Cash.

17.    "*Causes of Action*" means any Claim, cause of action, controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, able to be asserted directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, including Avoidance Actions, <u>other</u> <u>than</u> those "causes of action" sold to the Buyer as part of the Sale Agreements.

18.    "*Chapter 11 Cases*" means the jointly administered Chapter 11 cases commenced by the Debtors on the Petition Date and styled *In re High Ridge Management Corp. et al.*, No. 15-16388-JKO, which are currently pending before the Bankruptcy Court.

19.    "*Claim*" means a "claim" (as defined in Section 101(a)(5) of the Bankruptcy Code) against a Debtor.

20.    "*Claims Bar Date*" means the date by which a Proof of Claim must be or must have been Filed, as established by (a) a Final Order of the Bankruptcy Court or (b) pursuant to the Plan.

21.    "*Claims Objection Bar Date*" means the first Business Day that is 120 days after the Effective Date.

22.    "*Claims Register*" means the records maintained by the Court for all Proofs of Claim or Interests filed in the Chapter 11 Cases.

23.    "*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to Section 1122(a) of the Bankruptcy Code.

24.    "*Closing*" has the meaning set forth in Article 11 of the APA and Section 5.00 of the Real Estate Agreement.

25.    "*Committee*" means the official committee of unsecured creditors appointed, if any, in the Chapter 11 Cases pursuant to Section 1102(a) of the Bankruptcy Code.

26.    "*Committee Members*" means all current and former members of the Committee.

27.    "*Confirmation*" means the approval of the Plan by the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code.

28.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

29.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

30.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

31.    "*Consummation*" means the occurrence of the Effective Date.

32.    "*Cure Obligations*" means: all (a) amounts (or such other amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults; and (b) other obligations required to cure any non-monetary defaults under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors pursuant to Sections 365 or 1123 of the Bankruptcy Code.

33.    "*Debtor(s)*" means each of: (a) High Ridge Management, Corp.; (b) Hollywood Hills Rehabilitation Center, LLC; and (c) Hollywood Pavilion, LLC, singularly, or all three entities in the collective, as applicable.

34.    "*Debtors' Professionals' Documents*" means any documents and communications that are created by the Debtors' Professionals (whether in electronic form or otherwise), including internal communications, regardless of whether such documents and communications are arising from or related to Causes of Action or are subject to attorney-client, work product, or common interest privilege claims; provided, however, that the Debtors' Professionals' Documents shall not include documents and communications (including without limitation e-mails or other electronic documents) relating in any way whatsoever to the Debtors or any of the Debtors' affairs prior to the Petition Date or during the Chapter 11 Cases that were or are created.

35.    "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

36.    "*Disputed Claims Reserve*" means a Cash reserve that may be funded with a portion of the Cash Sale Proceeds for distributions to Holders of Allowed Claims and Interests, and Disputed Claims and Interests, if, and to the extent that such Disputed Claims and Interests become Allowed Claims or Interests.

37.    "*Distribution Record Date*" means the first Business Day that is two (2) Business Days after the Confirmation Date.

38.    "*Effective Date*" means the date which is no later than two (2) Business Days after the date on which: (a) the Confirmation Date has occurred; (b) no stay of the Confirmation Order is in effect; (c) the Closing has been consummated; and (d) all conditions precedent specified in Article X.A of the Plan have been satisfied or waived (in accordance with Article X.B hereof).

39.    "*Entity*" shall have the meaning set forth in Section 101(15) of the Bankruptcy Code.

40.    "*Estate*" means, as to each Debtor, the estate created for such Debtor on the Petition Date pursuant to Sections 301 and 541 of the Bankruptcy Code.

41.    "*Excluded Assets*" shall have the meaning ascribed to it in the Sale Agreements; provided that the Excluded Assets shall not include Cash Sale Proceeds.

42.    "*Exculpated Parties*" means, collectively: (a) the Liquidating Agent; (b) the Released Parties; (c) the Committee and the Committee Members and each of the Committee's agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such; and (d) the Buyer and each of its agents, financial advisors, attorneys, accountants, consultants, representatives, and other professionals, in each case solely in their capacity as such.

43.    "*Exculpation*" means the exculpation provision set forth in Article IX.F hereof.

44.    "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

45.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Effective Date.

46.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court.

47.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended from time to time, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

48.    "*General Unsecured Claim*" means any unsecured Claim in each case that is not: (a) an Administrative Claim; (b) a Professional Fee Claim; (c) a Section 510(b) Claim; (d) a Priority Tax Claim; (e) an Other Priority Claim.

49.    "*Governmental Unit*" shall have the meaning set forth in Section 101(27) of the Bankruptcy Code.

50.    "*High Ridge*" means High Ridge Management Corp., one of the Debtors in the Chapter 11 Cases.

51.    "*Holder*" means any Entity holding a Claim or an Interest.

52.    "*Hollywood Hills*" means Hollywood Hills Rehabilitation Center, LLC, one of the Debtors in the Chapter 11 Cases.

53.    "*Impaired*" means, with respect to a Claim or Interest, or Class of Claims or Interests, "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

54.    "*Indemnification Provision*" means each of the Debtors' indemnification provisions currently in place whether in the bylaws, certificates of incorporation, other formation documents, board resolutions, or employment contracts for the current and former directors, officers, employees, attorneys, other professionals and agents of the Debtors, and such current and former directors' and officers' respective Affiliates.

55.    "*Initial Conditions Precedent*" means the conditions set forth in Article X.A.1 through Article X.A.5

56.    "*Initial Distribution Date*" means the date on which the Debtors or the Liquidating Agent, as applicable, make initial distributions to Holders of Allowed Claims and Interests pursuant to the Plan.

57.    "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

58.    "*Intercompany Interest*" means any Interest in a Debtor held by another Debtor.

59.    "*Interest*" means any interest, equity, or share in the Debtors, including all options, warrants, or other rights to obtain such an interest or share in such Debtor, whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claim subject to subordination under Section 510(b) of the Bankruptcy Code arising therefrom.

60.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

61.    "*Lien*" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

62.      "*Liquidating Estate*" means the entity to be established on the Effective Date in accordance with Article VII.

63.      "*Liquidating Estate Assets*" means: (a) the Liquidating Estate Cash Payment; (c) all Causes of Action not previously settled or released by the Debtors or their Estates; (d) the Excluded Assets; (e) the Debtors' rights under the Sale Agreements; (f) all Privileged Documents; and (g) all other assets of the Debtors or of the Estates existing on the Effective Date after giving effect to all distributions required to be made as of or prior to the Effective Date. For the avoidance of doubt, the Liquidating Estate Assets shall not include the Purchased Assets. Notwithstanding anything in the Plan to the contrary, the Debtors' Professionals' Documents shall not be transferred to the Liquidating Estate and shall not be Liquidating Estate Assets.

64.      "*Liquidating Estate Cash Distribution*" means Cash transferred to the Liquidating Estate on the Effective Date in an amount equal to the Liquidating Estate Cash Payment.

65.      "*Liquidating Estate Cash Payment*" means Cash in an amount equal to the Cash Sale Proceeds, minus Administrative Claims, Professional Fee Claims and Priority Claims.

66.      "*Local Rules*" means the local rules of the United States Bankruptcy Court for the Southern District of Florida.

67.      "*Main Case*" means the case styled *In re High Ridge Management Corp.*, Case No. 15-16388-JKO, under which the Debtors' cases are jointly administered.

68.      "*Operator*" means Hollywood Hills Operator, LLC, one of the entities that is the Buyer.

69.      "*Other Priority Claim*" means a Claim asserting a priority described in section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim; (b) a Professional Fee Claim; or (c) a Priority Tax Claim.

70.      "*Pavilion*" means Hollywood Pavilion, LLC, one of the Debtors in the Chapter 11 Cases.

71.      "*Pavilion Proceeds*" shall mean the proceeds from the liquidation of Pavilion's assets.

72.      "*Person*" shall have the meaning set forth in Section 101(41) of the Bankruptcy Code.

73.      "*Petition Date*" means April 8, 2015, the date on which the Debtors commenced the Chapter 11 cases.

74.      "*Plan*" means this Debtors' Joint Plan of Liquidation, as amended, supplemented, or modified from time to time, including the Plan Supplement, which is incorporated in the Plan by reference and made part of this Plan as if set forth in the Plan.

75.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed prior to Confirmation, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including: (a) a list of Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan, and as may be amended by the Debtors in accordance with this Plan prior to the Effective Date; (b) a schedule of retained Causes of Action; and (c) the identity of the Liquidating Agent.

76.    "*Priority Claims*" means, collectively: (a) Administrative Claims; (b) Professional Fee Claims; (c) Priority Tax Claims; and (d) Other Priority Claims.

77.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

78.    "*Privileged Documents*" means all documents and communications maintained by the Debtors and subject to attorney-client, work product, or common interest privilege claims.

79.    "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

80.    "*Professional*" means any entity retained in the Chapter 11 Cases in accordance with Sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to Sections 326, 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

81.    "*Professional Fee Claims*" mean all Claims for accrued fees and expenses for services rendered and expenses incurred by a Professional from the Petition Date through and including the Effective Date, to the extent such fees and expenses have not been paid or are disallowed pursuant to an order of the Bankruptcy Court and regardless of whether a fee application has been filed for such fees and expenses.

82.    "*Professional Fee Escrow*" means one or more escrow accounts to be funded on the Effective Date from the Sale Proceeds and the Excluded Assets in an amount equal to the Professional Fee Claims Estimate.

83.    "*Professional Fee Claims Estimate*" means the amount of Professional Fee Claims that are estimated by each applicable Professional in good faith to be accrued but unpaid as of the Effective Date.

84.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

85.    "*Purchased Assets*" has the meaning ascribed to it in the Sale Agreements; provided that, for the avoidance of doubt, the Sale Proceeds and the Excluded Assets shall not be Purchased Assets.

86.    "*Real Estate Agreement*" means that certain Agreement for Purchase and Sale by and among High Ridge, on the one hand, and 1200, on the other hand, dated April 9, 2015.

87.    "*Real Property*" means real property located at 1200 North 35th Avenue, Hollywood, Florida.

88.    "*Sale Agreements*" means, collectively, the (a) APA; and (b) the Real Estate Agreement.

89.    "*Sale Order*" means a Final Order of the Bankruptcy Court approving the Sale Transaction.

90.    "*Sale Proceeds*" means all proceeds from the Sale Transaction, including the Cash Sale Proceeds from the Sale Transaction and the right to enforce the Sale Agreements.

91.    "*Sale Transaction*" means that certain transaction between the Debtors and the Buyer as set forth in the Sale Agreements.

92.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to Section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

93.    "*Section 510(b) Claims*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code; provided that a Section 510(b) Claim shall not include any Claim subject to subordination under Section 510(b) of the Bankruptcy Code arising from or related to an Interest.

94.    "*Secured*" means when referring to a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan or a Final Order as a Secured Claim.

95.    "*Subsequent Distribution Date*" means the date on which the Liquidating Agent, in its reasonable discretion, elects to make distributions to Holders of Allowed Claims or Interests pursuant to the Plan.

96.     "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

97.     "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of Section 1124 of the Bankruptcy Code.

98.     "*United States*" means the United States of America and its agencies.

99.     "*U.S. Trustee*" means the Office of United States Trustee for Region 21.

100.    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

101.    "*Wind Down*" means the wind down, dissolution, and liquidation of the Debtors' Estates following the Effective Date as set forth in Article VII.J hereof.

B.    Rules of Interpretation

For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (2) any reference in the Plan to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference in the Plan to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented from time to time; (4) unless otherwise specified, all references in the Plan to "Articles" are references to Articles hereof or hereto; (5) unless otherwise stated, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (7) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (8) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.    Computation of Time

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan.

D.    Governing Law

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document

entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflict of laws thereof.

E.    Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States, unless otherwise expressly provided in the Plan.

F.    Controlling Document

In the event of an inconsistency between the Plan and any Plan Supplement, the Plan shall control. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control. None of the Sale Agreements or the ancillary agreements related thereto shall be altered, amended, rejected, discharged, or otherwise affected by this Plan or the Confirmation Order except as otherwise agreed by the Buyer.

## ARTICLE II
## ADMINISTRATIVE CLAIMS, PRIORITY TAX
## CLAIMS, AND PROFESSIONAL FEE CLAIMS

A.        Administrative Claims; Priority Tax Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim or Allowed Priority Tax Claim, as applicable, and the Debtors or the Liquidating Agent, as applicable, to the extent an Allowed Administrative Claim or Allowed Priority Tax Claim, as applicable, has not already been paid in full during the Chapter 11 Cases, Allowed Administrative Claims and Allowed Priority Tax Claims shall be satisfied in full with a Cash distribution from the Priority Claims Reserve.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court, unless previously Filed, requests for payment of Administrative Claims, other than requests for payment of Professional Fee Claims, must be Filed and served on the Debtors no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date. Objections to such requests must be Filed and served on the requesting party by the Administrative Claims Objection Bar Date.

14

B.        Professional Fee Claims

1.        *Professional Fee Escrow*

If the Professional Fee Claims Estimate is greater than zero, then no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow. The Debtors shall fund the Professional Fee Escrow with Cash equal to the Professional Fee Claims Estimate. Except as provided in the Plan, the Professional Fee Escrow shall be funded on the Effective Date and maintained in trust for the Professionals and shall not be considered property of the Debtors' Estates or an asset to be administered by the Liquidating Agent. When all Allowed Professional Fee Claims have been paid in full, amounts remaining in the Professional Fee Escrow, if any, shall be transferred to the Liquidating Agent and shall be distributed in accordance with the Plan.

To the extent that funds held in the Professional Fee Escrow are unable to satisfy the amount of Allowed Professional Fee Claims owing to the Professionals after application of funds held, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which Allowed Administrative Claim shall be satisfied in accordance with the Plan.

2.        *Final Fee Applications*

All final requests for payment of Professional Fee Claims shall be filed no later than the first Business Day that is forty-five (45) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals when such Claims are allowed by an order of the Bankruptcy Court, which order is not subject to a stay.

C.        U.S. Trustee Statutory Fees

The Debtors or the Liquidating Agent, as applicable, shall pay all U.S. Trustee Fees for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in this Article III.

A.        Summary of Classification of Claims and Interests

All Claims and Interests, other than Administrative Claims, Priority Tax Claims, and Professional Fee Claims are classified in the Classes set forth in this Article III for all purposes,

including voting, Confirmation, and distributions pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. The Debtors reserve the right to withdraw the Plan with respect to one or more Debtors while seeking Confirmation or approval of the Plan with respect to all other Debtors.

B.    Classification of Claims and Interests

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims shall be treated as set forth in Article III.E hereof. For all purposes under the Plan, each Class will contain sub-Classes for each of the Debtors, as applicable.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 1A | Secured Claim of Hollywood Property Investments, LLC | Unimpaired | Not Entitled to Vote (Deemed to accept) |
| 1B | Broward County Tax Collector | Unimpaired | Not Entitled to Vote (Deemed to accept) |
| 1C | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to accept) |
| 2 | Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to accept) |
| 3A | General Unsecured Claims against High Ridge | Unimpaired | Not Entitled to Vote (Deemed to accept) |
| 3B | General Unsecured Claims against Hollywood Hills | Unimpaired | Not Entitled to Vote (Deemed to accept) |
| 3C | General Unsecured Claims against Pavilion | Unimpaired | Not Entitled to Vote (Deemed to accept) |
| 4 | Intercompany claims | Unimpaired | Not Entitled to Vote (Deemed to accept) |
| 5A | Equity Interests in High Ridge | Unimpaired | Not Entitled to Vote (Deemed to accept) |
| 5B | Equity Interests in Hollywood Hills | Unimpaired | Not Entitled to Vote (Deemed to accept) |
| 5C | Equity Interests in Pavilion | Unimpaired | Not Entitled to Vote (Deemed to accept) |

C.    <u>Treatment of Claims and Interests</u>

| Class 1A |
|---|
| Except to the extent that a Holder of an Allowed Class 1A Claim agrees to less favorable treatment of its Allowed Secured Claim, in full and final satisfaction, compromise, settlement and release of and in exchange for each Class 1A Claim, each such Holder shall receive payment in full of such Holder's Allowed Secured Claim on the Effective Date. |

| Class 1B |
|---|
| Except to the extent that a Holder of an Allowed Class 1B Claim agrees to less favorable treatment of its Allowed Secured Claim, in full and final satisfaction, compromise, settlement and release of and in exchange for each Class 1B Claim, each such Holder shall receive payment in full of such Holder's Allowed Secured Claim in the ordinary course of business when due. |

| Class 1C |
|---|
| Except to the extent that a Holder of an Allowed Class 1C Claim agrees to less favorable treatment of its Allowed Secured Claim, in full and final satisfaction, compromise, settlement and release of and in exchange for each Class 1C Claim, each such Holder shall receive payment in full of such Holder's Allowed Secured Claim on the Effective Date. |

| Class 2 |
|---|
| Except to the extent that a Holder of an Allowed Class 2 Claim agrees to less favorable treatment of its Allowed Priority Claim, in full and final satisfaction, compromise, settlement and release of and in exchange for each Class 2 Claim, each such Holder shall receive payment in full of such Holder's Allowed Priority Claim on the Effective Date. |

| Class 3A |
|---|
| Except to the extent that a Holder of an Allowed Class 3A Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, compromise, settlement and release of and in exchange for each Class 3A Claim, each such Holder shall receive payment in full of such Holder's Allowed Claim on the Effective Date. |

| Class 3B |
|---|
| Except to the extent that a Holder of an Allowed Class 3B Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, compromise, settlement and release of and in exchange for each Class 3B Claim, each such Holder shall receive payment in full of such Holder's Allowed Claim on the Effective Date. |

| Class 3C |
|---|
| Except to the extent that a Holder of an Allowed Class 3C Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, compromise, settlement and release of and in exchange for each Class 3C Claim, each such Holder shall receive payment in full of such Holder's Allowed Claim on the Effective Date. |

| Class 4 |
|---|
| Except to the extent that a Holder of an Allowed Class 4 Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, compromise, settlement and release of and in exchange for each Class 4 Claim, each such Holder shall receive payment in full of such Holder's Allowed Claim on the Effective Date. |

| Class 5A | |
|---|---|
| | Class 5A Interests will retain its interests, and shall be entitled to receive distributions in accordance with Article VI of the Plan after payment of Allowed Claims under the Plan. |
| **Class 5B** | |
| | Class 5B Interests will retain its interests, and shall be entitled to receive distributions in accordance with Article VI of the Plan after payment of Allowed Claims under the Plan. |
| **Class 5C** | |
| | Class 5C Interests will retain its interests, and shall be entitled to receive distributions in accordance with Article VI of the Plan after payment of Allowed Claims under the Plan.. |

D.    Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Liquidating Agent, the Debtors, or the Debtors' Estates in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

E.    Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Section 1129(a)(8) of the Bankruptcy Code.

F.    Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

G.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

The Debtors shall seek Confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan, with the reasonable consent of the Committee, in accordance with Article XI hereof to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

18

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.  Sources of Consideration for Plan Distributions

The Debtors' Cash on hand, Sale Proceeds, the Debtors' rights under the Sale Agreements, the Excluded Assets, Pavilion Proceeds, Causes of Action, including all of the Debtors' privileges with respect to the aforementioned assets, shall be used to fund the distributions to Holders of Allowed Claims and Interests against the Debtors in accordance with the treatment of such Claims and Interests provided herein.

B.  The Liquidating Agent and the Liquidating Estate

On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors will transfer to the Liquidating Estate and the Liquidating Agent all of their respective right, title, and interest in all of the Liquidating Estate Assets. The detailed procedures are more fully discussed in Article VII hereof.

C.  General Settlement of Claims

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.

D.  Corporate Action

Upon the Effective Date, by virtue of the entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Liquidating Agent) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

The authorizations and approvals contemplated by this Article IV shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

E.  Dissolution and Boards of the Debtors

As of the Effective Date, the existing boards of directors of High Ridge, Hollywood Hills and Pavilion shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, shareholders, and members and any all remaining officers or directors of High Ridge, Hollywood Hills and Pavilion shall be dismissed without any further

action required on the part of any such Debtor, the shareholders of such Debtor, or the officers and directors of such Debtor.

F.    Effectuating Documents; Further Transactions

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Agent, is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

G.    Exemption from Certain Taxes and Fees

To the maximum extent provided by Section 1146(a) of the Bankruptcy Code, any Post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

H.    Preservation of Causes of Action

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order (including, for the avoidance of doubt, any claims or Causes of Action released pursuant to Article IX.D hereof), the Debtors reserve and, as of the Effective Date, assign to the Liquidating Estate, any and all Causes of Action, whether arising before or after the Petition Date. On and after the Effective Date, the Liquidating Agent may pursue such Causes of Action in its sole discretion.

The Debtors shall not release any Avoidance Actions, and the Liquidating Agent shall be authorized and empowered to enforce any such Avoidance Actions on and after the Effective Date in accordance with the terms hereof.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Liquidating Agent will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel,

issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. The Debtors reserve all rights arising under Section 506(c) of the Bankruptcy Code with respect to all Secured Claims asserted against the Debtors or their Estates.

The Debtors reserve the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Agent, shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the settlement of Claims and Causes of Action which are expressly to be settled by confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself.

I.    Closing of the Debtors' Cases

On the Effective Date, Hollywood Hills Rehabilitation Center, LLC and Hollywood Pavilion, LLC's Chapter 11 Cases shall be closed for all purposes, without further action by the Debtors or order of the Bankruptcy Court. For the avoidance of doubt, the closing of such case shall not have any effect, in any manner, on the Causes of Action that the Liquidating Agent may assert in accordance with the Plan. The jointly administered case of High Ridge Management Corp., identified as Case No. 15-16388-JKO (the "Main Case") shall remain open and subject to the provisions of this Article IV.I. Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Main Case, when all Assets contributed to the Liquidating Estate in accordance with Article IV.B above have been liquidated and converted into Cash (other than those assets abandoned by the Liquidating Estate), and such Cash has been distributed in accordance with this Plan, the Liquidating Agent shall seek authority from the Bankruptcy Court to close the Main Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**ARTICLE V**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.    Assumption and Assignment of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to Sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) was previously assumed or assumed and assigned to the Purchaser or another third party, as

21

applicable, during the pendency of the Chapter 11 Cases; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (5) is a D&O Policy or an insurance policy; or (6) is one or both of the Sale Agreements. Notwithstanding anything contained herein to the contrary, the assumption of any Executory Contract or Unexpired Lease as provided herein or in the Plan Supplement shall not impose, directly or indirectly, any obligation or other liability, monetary or otherwise, on the Liquidating Estate unless the Liquidating Estate expressly agrees to such assumption as in the best interests of the Beneficiaries of the Liquidating Estate; provided that in all instances the Sale Agreements shall be assumed and assigned to the Liquidating Estate; provided further that Buyer's consent shall be required with respect to the assumption of any Executory Contract or Unexpired Lease that results in a Cure Cost payable as an Allowed Administrative Claim. For the avoidance of doubt, any Claims arising under the Sale Agreements shall be treated as Administrative Claims in accordance with this Plan.

B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

Any Cure Obligations under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Obligation in Cash on the Effective Date, subject to the limitation described below, by the Debtors as an Administrative Claim or by Buyer in accordance with the Sale Agreements, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of the Cure Obligation, (2) the ability of the Debtors' Estates or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Obligations required by Section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided that prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Agent, may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

At least fourteen (14) days before the Confirmation Hearing, the Debtors shall cause notice of proposed assumption and proposed Cure Obligations to be sent to applicable counterparties. Any objection by such counterparty must be filed, served, and actually received by the Debtors not later than fourteen (14) days after service of notice of the Debtors' proposed assumption and associated Cure Obligations. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or Cure Obligation.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment. **Anything in the**

**Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.**

C.    Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed with Bankruptcy Court and served on the Debtors or, after the Effective Date, the Liquidating Agent, as applicable, no later than fourteen (14) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtors or, after the Effective Date, the Liquidating Agent, as applicable, no later than fourteen (14) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed as set forth in the paragraph above shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Liquidating Agent, the Debtors' Estates, or the property for any of the foregoing without the need for any objection by the Debtors or the Liquidating Agent, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims against the appropriate Debtor, except as otherwise provided by order of the Bankruptcy Court.

D.    Sale Agreements; Designated Contracts

The Debtors' assumption or rejection of any Executory Contract or Unexpired Lease pursuant to the Plan shall be subject in all respects to the Buyer's rights and obligations, including any Cure Obligations assumed by the Buyer in accordance with the Sale Agreements, with respect to any such Executory Contracts or Unexpired Leases that constitute Seller Contracts (as defined in the Asset Purchase Agreement) as set forth in the Asset Purchase Agreement, including Section 2.1(vii) thereof.

E.    Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors or the Debtors on behalf of the Debtors' Estates during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.    Insurance Policies

Each insurance policy, shall be assumed by the Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to Sections 365 and 1123 of the Bankruptcy Code, to the extent such insurance policy is executory, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date.

G.    Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors' Estates have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Liquidating Agent, as applicable, shall have ninety (90) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    Calculation of Amounts to Be Distributed

Each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtors or the Liquidating Agent, on behalf of the Debtors or the Liquidating Estate, as applicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due. If and to the extent that there are Disputed Claims or Disputed

24

Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VIII. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

B.     Rights and Powers of the Debtors, Liquidating Agent

1.     *Powers of the Debtors and Liquidating Agent*

All distributions under the Plan shall be made on the Effective Date by the Debtors or thereafter by the Liquidating Agent or their designees.

After the Effective Date, the Liquidating Agent shall have the right to object, allow, or otherwise resolve any General Unsecured Claim. To the extent that the litigation or resolution of any Claim involves allowance of, or leaves unresolved, a Priority Claim and a General Unsecured Claim, then the Liquidating Agent may object to, allow, or otherwise resolve such Priority Claim.

The Liquidating Agent shall use commercially reasonable efforts to coordinate in good faith regarding the reconciliation of Claims as provided in this Article VI.B.1.

The Debtors and the Liquidating Agent, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Debtors or the Liquidating Agent, as applicable, is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Liquidating Estate.

2.     *Fees and Expenses Incurred On or After the Effective Date*

Except as otherwise ordered by the Bankruptcy Court, (i) the fees and expenses incurred by the Liquidating Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including attorney fees and expenses) made by the Liquidating Agent shall be paid in Cash from the Liquidating Estate Assets without any further notice to or action, order, or approval of the Bankruptcy Court.

C.     Delivery of Distributions and Undeliverable or Unclaimed Distributions

1.     *Record Date for Distribution*

On the Distribution Record Date, the Claims Register shall be closed and the Debtors, the Liquidating Agent, or any other party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.      *Delivery of Distributions in General*

(a)      Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall, in the Liquidating Agent's reasonable discretion, be deemed to have been made by the Liquidating Agent on the Effective Date, unless the Liquidating Agent and the applicable Holder of such Claim agree otherwise.

(b)      Special Rules for Distributions to Holders of Disputed Claims or Interests

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Debtors or the Liquidating Agent, as applicable, on the one hand, and the Holder of a Disputed Claim or Interest, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim or Interests, other than with respect to Professional Claims, until all Disputed Claims or Interests held by the Holder of such Disputed Claim or Interest have become Allowed Claims or Interests, or have otherwise been resolved by settlement or Final Order.

(c)      Distributions

On and after the Effective Date, the Liquidating Agent shall make the distributions required to be made on account of Allowed Claims or Interests under the Plan on such date. Any distribution that is not made on the Initial Distribution Date or on any other date specified in the Plan because the Claim or Interest that would have been entitled to receive that distribution is not an Allowed Claim or Interest on such date, shall be held by the Liquidating Agent in the Disputed Claims Reserve (See Article VII.H) and distributed on the next Subsequent Distribution Date that occurs after such Claim or Interest is Allowed. In accordance with Article VIII.D hereof, no interest shall accrue or be paid on the unpaid amount of any distribution paid pursuant to the Plan.

3.      *Minimum; De Minimis Distributions*

No Cash payment of less than $100.00, in the reasonable discretion of the Debtors or the Liquidating Agent, as applicable, shall be made to a Holder of an Allowed Claim or Interest on account of such Allowed Claim or Interest.

4.      *Undeliverable Distributions and Unclaimed Property*

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Debtors or the Liquidating Agent, as applicable, has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, such distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of six months from the date the initial distribution is made. After such date, all

unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Estate automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan and the Claim or Interest of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

         5.     *Cy Pres*

Notwithstanding anything to the contrary in the Plan, if the Liquidating Agent determines that any Beneficiaries of the Liquidating Estate no longer exist or cannot otherwise be reasonably ascertained, or the Liquidating Agent determines that the Liquidating Estate Assets are insufficient to make any further distribution economically justifiable, the Liquidating Agent may, in its reasonable discretion, distribute the Liquidating Estate Assets that constitute Cash to the Bankruptcy Bar Foundation, a legal non-profit organization, upon the same terms and conditions provided for in the Plan.

         6.     *Manner of Payment Pursuant to the Plan*

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Debtors or the Liquidating Agent, as applicable, by check or by wire transfer.

    D.     <u>Compliance with Tax Requirements/Allocations</u>

In connection with the Plan, to the extent applicable, the Debtors, or the Liquidating Agent, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

    E.     <u>Claims Paid or Payable by Third Parties</u>

         1.     *Claims Paid by Third Parties; Recourse to Collateral*

The Debtors or the Liquidating Agent, as applicable, shall be authorized to reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or, as applicable, the Liquidating Estate, including on account of recourse to collateral held by third parties that secure such Claim. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor, to the extent the Holder's total recovery on

account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

2.        *Claims Payable by Insurance, Third Parties; Recourse to Collateral*

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable. To the extent that one or more of the Debtors' insurers, sureties, or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.        *Applicability of Insurance Policies*

Notwithstanding anything to the contrary in the Plan or Confirmation Order, Confirmation and Consummation of the Plan shall not limit or affect the rights of any third-party beneficiary of any of the Debtor's insurance policies with respect to such policies, including the D&O Policy, and the rights of the Debtors under any such insurance policies shall vest in such beneficiaries thereof as of the Effective Date.

## ARTICLE VII
## THE LIQUIDATING ESTATE AND THE LIQUIDATING AGENT

A.        Purpose of the Liquidating Estate

On the Effective Date, the Liquidating Estate will be established and become effective for the benefit of the Beneficiaries. The Liquidating Estate will be established for the primary purpose of liquidating its assets and making distributions in accordance with the Plan and the Confirmation Order, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Estate.

The Liquidating Agent shall be deemed to be, for all purposes, the sole representative of the Liquidating Estate as set forth in Section 1123(b) of the Bankruptcy Code to retain, enforce, settle, and prosecute all Causes of Action. The Liquidating Agent shall use his best efforts to promptly liquidate the assets of the Liquidating Estate as soon as practicable at minimal cost and to distribute the proceeds thereof as soon as practicable pursuant to this Plan.

The Liquidating Estate shall be automatically substituted for the Debtors or the Debtors' Estates, as a party to all contested matters, adversary proceedings, claims, administrative proceedings, and lawsuits, both within and outside of Bankruptcy Court, involving the Debtors' assets, claims against the Debtors, the Causes of Action, and the resolution of Disputed Claims or Interests, without any further notice, filing, or documentation regarding such substitution.

The Liquidating Agent shall serve from and after the Effective Date until his successor is duly appointed and qualified, or until the earlier of his death, resignation, or removal. In the event of the death, resignation, or removal of the Liquidating Agent, any successor thereto shall be selected by the U.S. Trustee and officially appointed following notice and hearing.

B.    Transfer of Assets to the Liquidating Estate

On the Effective Date, all Liquidating Estate Assets will vest and be deemed to vest in the Liquidating Estate in accordance with Section 1141 of the Bankruptcy Code; provided, however, that the Liquidating Estate, with the consent of the Liquidating Agent, may abandon or otherwise not accept any Liquidating Estate Assets that the Liquidating Estate believes, in good faith, have no value to the Liquidating Estate. Any Liquidating Estate Assets the Liquidating Estate so abandons or otherwise does not accept shall not vest in the Liquidating Estate. As of the Effective Date, all Liquidating Estate Assets vested in the Liquidating Estate shall be free and clear of all Liens, Claims and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.  Upon the transfer by the Debtors of the Liquidating Estate Assets to the Liquidating Estate or abandonment of Liquidating Estate Assets by the Liquidating Estate, the Debtors will have no reversionary or further interest in or with respect to any Liquidating Estate Assets or the Liquidating Estate. Notwithstanding anything herein to the contrary, the Liquidating Estate and the Liquidating Agent shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

C.    Powers of the Liquidating Agent

In addition to any powers granted by 11 U.S.C. §§ 1106 and 704 or conferred by the Bankruptcy Court or any other provision of this Plan, the powers of the Liquidating Agent shall include the power to: (i) determine when or on what terms Liquidating Estate Assets should be sold, liquidated or otherwise disposed of; (ii) collect and receive any and all money and other Assets of whatsoever kind or nature due to or owing or belonging to the Liquidating Estate; (iii) invest funds; (iv) make Distributions; (v) pay taxes and other obligations owed by the Liquidating Estate; (vi) liquidate and dispose of the Liquidating Estate Assets; (vii) retain all or any Liquidating Estate Assets regardless of whether or not such Liquidating Estate Assets are, or may become, unproductive or a wasting asset, and the Liquidating Agent shall not be under any duty to reinvest such part of the Liquidating Estate as may be in Cash; (viii) engage and compensate from the Liquidating Estate Assets, consultants, agents, employees and professional persons to assist the Liquidating Agent with respect to the Liquidating Agent's responsibilities; (ix) retain and compensate from the Liquidating Estate Assets, the services of experienced auctioneers, brokers, and/or marketing agents to assist and/or advise in the sale or other disposition of the Liquidating Estate Assets; (x) prosecute, compromise and settle objections to Claims, Interests and Causes of Actions, with the consultation and consent of Holders of Allowed Interests and approval of the Bankruptcy Court, being required only as stated herein and in the Plan; (xi) retain and set aside such Liquidating Estate Assets that the Liquidating Agent shall deem necessary or

expedient to pay, or reserve for the payment of, Allowed Claims and Interests pursuant to the Plan; (xii) act on behalf of the Liquidating Estate in all adversary proceedings and contested matters pending in the Bankruptcy Court and in all actions and proceedings pending elsewhere, including any appeals; (xiii) commence and/or pursue any and all Causes of Action involving Liquidating Estate Assets that could arise or be asserted at any time, unless otherwise waived or relinquished in this Plan; (xiv) perform any act authorized, permitted, or required under any instrument, contract, agreement, or cause of action relating to or forming a part of the Liquidating Estate whether in the nature of an approval, consent, demand, or notice thereunder or otherwise; (xv) sue and be sued, including the filing and defending of any contested matters and adversary proceedings in the Bankruptcy Court and actions or other proceedings in any other court, and pursue or defend any appeal from any judgment or order therefrom; (xvi) utilize Liquidating Estate Assets to purchase appropriate insurance to insure the acts and omissions of the Liquidating Agent; (xvii) institute or defend actions or declaratory judgments; (xviii) take such other action, in the name of the Liquidating Estate if required, as the Liquidating Agent may deem necessary or desirable to enforce any instruments, contracts, agreements, or Causes of Action relating to or forming a part of the Liquidating Estate; (xix) cancel, terminate, or amend any instruments, contracts or agreements relating to or forming a part of the Liquidating Estate to the full extent permitted by such instruments, contracts or agreements and to execute new instruments, contracts, or agreements; (xx) deal in and with all accounts receivable, promissory notes and contracts which form a part of the Liquidating Estate Assets with full authority to compromise, settle and otherwise deal in and with such Liquidating Estate Assets as the Liquidating Agent shall deem appropriate, in his sole discretion and without further order of the Bankruptcy Court; (xxi) request any appropriate tax determination; (xxii) destroy records of the Debtor or Liquidating Estate as authorized by the Bankruptcy Court, and to request authority to destroy any records of the Debtor or Liquidating Estate not previously authorized by the Bankruptcy Court; (xxiii) perform any act authorized, permitted, or required under the Health Insurance Portability and Accountability Act of 1996 or any other law relating to the medical related services provided by the Debtor or medical information held, obtained, or in the possession of the Debtor; (xxiv) act upon and implement this Plan and orders of the Bankruptcy Court and perform any acts or things necessary or appropriate for the management, conservation and protection of the Liquidating Estate; and (xxv) take any action reasonably necessary to effectuate the wind down and dissolution of the Debtor in all respects without further corporate action under applicable law, regulation, order or rule required, including any action by the Debtor or the Holders of Allowed Interests. The Liquidating Agent shall exercise such powers in accordance with the provisions of this Plan.

   D.    Duties of the Liquidating Agent

        The Liquidating Agent shall have and perform all of the duties, responsibilities, rights and obligations set forth in this Plan and in the Confirmation Order. The responsibilities of the Liquidating Agent shall include: (i) the receipt, management, supervision, and protection of the Liquidating Estate Assets on behalf of and for the benefit of the Creditors; (ii) the pursuit of objections to Claims and Interests, and estimations and settlements of Disputed Claims and Interests; (iii) with the consultation and consent of Holders of Allowed Interests, the investigation, analysis, prosecution and, if necessary and appropriate, compromise of the claims and Causes of Action included among the Liquidating Estate Assets; (iv) the calculation and implementation of all Distributions to be made under this Plan to Holders of Allowed Claims and Interests; (v) the marketing, selling, leasing, or otherwise disposing of any of the Liquidating Estate Assets; (vi) the filing all required tax returns and paying taxes and all other obligations of the Liquidating Estate in accordance with the priority provisions of Section 507 of the Bankruptcy Code; (vii) the filing with appropriate state and

federal agencies and authorities, all such documents, forms, reports and returns (including, but not limited to, state and federal income tax returns and Forms 1099) as the Liquidating Agent shall, with the advice and assistance of professionals engaged by the Liquidating Agent, including but not limited to legal counsel and accountants, deem necessary, required or appropriate in connection with the creation, existence, operation or termination of the Estate, and (viii) such other responsibilities as may be vested in the Liquidating Agent pursuant to the Plan, by orders of the Bankruptcy Court or the provisions of the Plan.

E.    Pursuit of Remaining Causes of Action

No Creditor or other party should rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Causes of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE LIQUIDATING AGENT AND THE LIQUIDATING ESTATE.

Holders are advised that legal rights, claims, and rights or Causes of Action the Debtors, the Estates, or the Liquidating Estate may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the release of such claims. As such, Holders are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Holder in the Plan or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtors or the Liquidating Agent do not possess or do not intend to prosecute a particular claim or cause of action. It is the express intention of the Plan to preserve rights, claims, and rights of action of the Debtors or the Estates, whether now known or unknown, for the benefit of the Liquidating Estate and the Beneficiaries. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan.

The Debtors do not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Holders are advised that the Liquidating Agent will have substantially the same rights that a Chapter 7 Trustee would have with respect to the Causes of Action. Accordingly, the entry of the Confirmation Order will not act as a release, waiver, bar or estoppel of any Causes of Action against such Holder or any other Person or Entity, unless such Holder, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any *res judicata*, collateral estoppel or other preclusive effect which would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

F.      Compensation Structure

        1.      *Liquidating Agent Compensation*

The initial compensation structure of the Liquidating Agent shall be approved by the Bankruptcy Court, and that compensation, plus reimbursement for actual, reasonable and necessary expenses incurred by the Liquidating Agent, shall be paid by the Liquidating Estate. The compensation structure of the Liquidating Agent shall be (i) an hourly rate of $[To Be Determined] per hour; plus (ii) the Liquidating Agent's actual out of pocket expenses. The compensation shall not require Bankruptcy Court approval before payment but shall be reflected on the quarterly reports filed by the Liquidating Agent with the Bankruptcy Court.

        2.      *Professional Compensation*

From and after the Effective Date, any Professionals engaged or retained by the Liquidating Agent shall be entitled to reasonable compensation to perform services for the Liquidating Agent. The fees and expenses of the Liquidating Agent and any Professionals employed by the Liquidating Agent shall be initially subject to review by the U.S. Trustee. Unless the U.S. Trustee files an objection with the Bankruptcy Court within fourteen (14) days of the receipt of any invoice of the Liquidating Agent or his Professionals, the Liquidating Agent shall be fully authorized, without an order of the Bankruptcy Court, to pay one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred by the Liquidating Agent and his Professionals out of the Assets of the Liquidating Estate. If an objection is filed, then the Liquidating Agent shall still be fully authorized without an order of the Bankruptcy Court to pay one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred by the Liquidating Agent and his Professionals that are not subject to an objection. The Bankruptcy Court shall retain jurisdiction over any objections to such fees and expenses that are filed.

Notwithstanding the foregoing, and unless otherwise provided in an order of the Bankruptcy Court, any Professionals engaged or retained by the Liquidating Agent shall file interim applications for approval of fees and expenses with the Bankruptcy Court every one hundred and twenty (120) days following the Effective Date. The Liquidating Agent shall not be required to file any applications for compensation with the Bankruptcy Court. The Liquidating Agent shall not be required to give any bond or surety or other security for the performance of his duties unless otherwise ordered by the Bankruptcy Court. If otherwise so ordered, all costs and expenses of procuring any such bond shall be paid by the Liquidating Estate.

G.      Distribution; Withholding

Notwithstanding anything in the Plan to the contrary, the Liquidating Agent will make, or cause to be made, all distributions under the Plan other than (a) those distributions made by the Debtors on the Effective Date, and (b) distributions from the Professional Fee Escrow in accordance with Article II.B hereof.

32

The Liquidating Estate may withhold from amounts distributable to any Entity any and all amounts, determined in the Liquidating Agent's sole discretion, required by the Plan, or applicable law, regulation, rule, ruling, directive, or other governmental requirement.

H.    Disputed Claims Reserve

The Liquidating Agent may maintain, in accordance with the Liquidating Agent's powers and responsibilities under the Plan, a Disputed Claims Reserve. The Liquidating Agent may, in its reasonable discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as Disputed Claims and Interests are resolved pursuant to article VIII hereof, and such amounts may be distributed on account of such Disputed Claims and Interests as if such Disputed Claims and Interests were Allowed Claims as of the Effective Date.

The Liquidating Estate will pay taxes on the taxable net income or gain allocable to Holders of Disputed Claims and Interests on behalf of such Holders. In the event, and to the extent, any Cash retained on account of Disputed Claims and Interests in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims and Interests, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims and Interests, or (b) to the extent such Disputed Claims and Interests have subsequently been resolved, deducted from any amounts distributable by the Liquidating Estate as a result of the resolution of such Disputed Claim or Interest.

I.    Other Rights and Duties

In addition to the Liquidating Agent's rights and duties with respect to the Liquidating Estate, on and after the Effective Date, the Liquidating Agent will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court.

Any and all rights to conduct investigations with respect to Causes of Action or claims not released by the Debtors shall vest with the Liquidating Estate and shall continue until dissolution of the Liquidating Estate, as if neither the Confirmation Date nor the Effective Date had occurred.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidating Agent.

J.    Wind-Down

In addition to the Liquidating Agent's rights and duties with respect to the Liquidating Estate, on and after the Effective Date, the Liquidating Agent will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Liquidating Agent shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Liquidating Agent shall: (1) cause the Debtors to comply with, and abide by, the terms of the Sale Agreements; (2) file for each of the Debtors a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable); (3) in the Liquidating Agent's reasonable discretion, complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and pursuant to Section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (4) take such other actions as the Liquidating Agent may determine to be necessary or desirable to carry out the purposes of the Plan. The certificate of dissolution or equivalent document may be executed by the Liquidating Agent without need for any action or approval by the shareholders or Board of Directors of any Debtor.

From and after the Effective Date, the Debtors: (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have cancelled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

For the avoidance of doubt, (1) the dissolution of the Debtors shall not have any effect, in any manner, on the Causes of Action that the Liquidating Agent may assert in accordance with the Plan and (2) notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

K.      Termination of the Liquidating Estate

The Liquidating Agent shall be discharged and the Liquidating Estate shall be terminated, at such time as (1) all Disputed Claims have been resolved, (2) all of the Liquidating Estate Assets have been liquidated, (3) all duties and obligations of the Liquidating Agent hereunder have been fulfilled, (4) all distributions required to be made by the Liquidating Estate under the Plan have been made, and (5) both of the Chapter 11 Cases of the Debtors have been closed, but in no event shall the Liquidating Estate be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion by the Liquidating Agent within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Estate as a Liquidating Estate for federal income tax purposes) is necessary to facilitate or complete the liquidation, recovery and distribution of the Liquidating Estate Assets.

L.      Transfer of Beneficial Interests

Notwithstanding anything to the contrary in the Plan, beneficial interests in the Liquidating Estate shall not be transferrable except upon death of the interest holder or by operation of law.

M.      Exculpation; Indemnification

The Liquidating Agent, the Liquidating Estate, professionals retained by the Liquidating Estate, and representatives of each of the foregoing will be exculpated and indemnified pursuant to the terms of the Exculpation provisions in Article IX.F hereof.

## ARTICLE VIII
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS

A.      Resolution of Disputed Claims

1.      *Allowance of Claims and Interests*

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Agent, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest, except with respect to any Claim or Interest deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

2.      *Prosecution of Objections to Claims or Interests*

Subject in all respects to Article VI.B.1 hereof, other than with respect to Professional Fee Claims, prior to the Effective Date, the Debtors, and on or after the Effective Date, the Liquidating Agent or its designee, as applicable, shall have the authority to File objections to Claims or Interests, and the exclusive authority to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Debtors' Estates to any and all Claims or Interests, regardless of whether such Claims or Interests are in a Class or otherwise.

Subject to the foregoing sentence, from and after the Effective Date, the Liquidating Agent (a) may settle or compromise any Disputed Claim or Interest in accordance with Article VII hereof and (b) shall succeed to the Debtors' rights with respect to any objections Filed by the Debtors that remain pending as of the Effective Date. From and after the Effective Date, the Liquidating Agent shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

3.       *Claims Estimation*

On and after the Effective Date, the Liquidating Agent, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Interest pursuant to applicable law and (b) any contingent or unliquidated Claim or Interest pursuant to applicable law, including Section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Liquidating Agent have previously objected to such Claim or Interest, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any Disputed Claim or Interest, contingent Claim or Interest, or unliquidated Claim or Interest, including during the litigation concerning any objection to any Claim or Interest or during the pendency of any appeal relating to any such objection.

Notwithstanding any provision otherwise in the Plan to the contrary, a Claim or Interest that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Disputed Claim or Interest, contingent Claim or Interest, or unliquidated Claim or Interest, that estimated amount shall constitute either the Allowed amount of such Claim or Interest, or a maximum limitation on such Claim or Interest for all purposes under the Plan, including for purposes of distributions, and the Debtors or the Liquidating Agent, as applicable, may elect to pursue additional objections to the ultimate distribution on such Claim or Interest.  If the estimated amount constitutes a maximum limitation on such Claim or Interest, the Debtors or the Liquidating Agent, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim or Interest.

Notwithstanding Section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim or Interest that has been estimated pursuant to Section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty one (21) days after the date on which such Claim or Interest is estimated. All of the aforementioned objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims or Interest may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

4.       *Expungement or Adjustment to Claims Without Objection*

Any Claim or Interest that has been paid, satisfied, or superseded may be expunged on the Claims Register by, as applicable, the Debtors or the Liquidating Agent, and any Claim or Interest that has been amended may be adjusted thereon by, as applicable, the Debtors or the Liquidating Agent without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

5.      *Deadline to File Objections to Claims or Interests*

Any objections to Claims or Interests shall be Filed no later than the Claims Objection Bar Date.

B.      Disallowance of Claims

To the maximum extent provided by Section 502(d) of the Bankruptcy Code, all Claims of any Entity from which property is recoverable by the Debtors or the Liquidating Agent, as applicable, under Sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Liquidating Agent, as applicable, alleges is a transferee of a transfer that is avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the Entity, on the one hand, and the Debtors or the Liquidating Agent, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (2) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

C.      Amendments to Claims and Interests

After the Confirmation Date, a Claim or Interest may not be filed or amended without the authorization of the Bankruptcy Court and any such new or amended Claim or Interest Filed shall be deemed disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court; provided that, even with such Bankruptcy Court authorization, a Claim or Interest may be amended by the Holder of such Claim or Interest solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority.

D.      No Interest

Unless otherwise specifically provided for in the Plan (including Article III hereof), by applicable law, or agreed-to by, as applicable, the Debtors or the Liquidating Agent, interest shall not accrue or be paid on any Claim or Interest, and no Holder of any Claim or Interest shall be entitled to interest accruing on and after the Petition Date on account of any Claim or Interest. Without limiting the foregoing, interest shall not accrue or be paid on any Claim or Interest after the Effective Date to the extent the final distribution paid on account of such Claim occurs after the Effective Date.

## ARTICLE IX
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the

distributions, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Any default by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests, subject to the Effective Date occurring.

B.    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtors.

C.    Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to Section 510 of the Bankruptcy Code, the Debtors reserve the right for the Debtors or the Liquidating Agent, as applicable, to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

D.    Reserved.

E.    Exculpation

The Exculpated Parties shall neither have, nor incur any liability to any Entity for any prepetition or post-petition act taken or omitted to be taken in connection with the Chapter 11 Cases, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan or consummating the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other prepetition or post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtors; provided that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement. Without limiting the foregoing "Exculpation" provided under this Article IX.F, the rights of any Holder of a Claim or Interest to enforce rights arising under this Plan shall be preserved, including the right to compel payment of distributions in accordance with the Plan.

F.    Injunction

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (1) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (2) HAVE BEEN RELEASED PURSUANT TO ARTICLE IX.E HEREOF; (3) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE IX.F HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN ARTICLE IX.F); OR (4) ARE OTHERWISE STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE LIQUIDATING ESTATE, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED, INCLUDING THE LIQUIDATING ESTATE) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, THE LIQUIDATING ESTATE, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION,    OR LIABILITIES; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING ESTATE, OR ANY ENTITY SO**

39

RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (D) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF OR SUBROGATION PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE LIQUIDATING ESTATE, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; PROVIDED THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; PROVIDED, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIMS OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.

G.    Setoffs

Except as otherwise provided in the Plan, prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Agent, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off against any Allowed Claim or Interest on account of any Proof of Claim or proof of Interest or other pleading Filed with respect thereto prior to the Confirmation Hearing and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before any distribution is made on account of such Allowed Claim or Interest), any claims, rights, and Causes of Action of any nature that the Debtors' Estates may hold against the Holder of such Allowed Claim or Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or

prior to the Effective Date (whether pursuant to the Plan or otherwise); provided that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by the Debtors or the Liquidating Agent, as applicable, of any such claims, rights, and Causes of Action that the Debtors' Estates may possess against such Holder. In no event shall any Holder of Claims or Interests be entitled to set off any Claim or Interest against any claim, right, or Cause of Action of the Debtors' Estates unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff; provided that nothing in the Plan shall prejudice or be deemed to have prejudiced the Debtors' or the Liquidating Agent's right to assert that any Holder's setoff rights were required to have been asserted by motion or pleading filed with the Bankruptcy Court prior to the Effective Date.

## ARTICLE X
## SUBSTANTIAL CONSUMMATION OF THE PLAN

A.    <u>Conditions Precedent to Consummation of the Plan</u>

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.B hereof:

1.    the Bankruptcy Court shall have entered the Confirmation Order in form and substance materially consistent with this Plan in all respects and otherwise reasonably acceptable to the Debtors, the Committee, and, solely with respect to provisions of the Confirmation Order that affect the Buyer, which Confirmation Order shall include a provision with the specific findings set forth in Article IV.F hereof;

2.    consummation of the transactions contemplated pursuant to the Sales Agreements has occurred;

3.    the Plan Supplement, including any amendments, modifications, or supplements thereto shall be in form and substance materially consistent with this Plan in all respects and otherwise reasonably acceptable to the Debtors and the Committee;

4.    the Liquidating Agent shall have been appointed and the Liquidating Estate Assets shall have been transferred to the Liquidating Estate;

5.    all documents and agreements necessary to implement the Plan and the consummation of the Sale Transaction shall have (a) been tendered for delivery and (b) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; and

6.    the Liquidating Estate Cash Distribution shall have occurred.

The payments required to satisfy the Distribution Conditions Precedent shall be made contemporaneously with Consummation of the Plan, but such payments may be made only after the satisfaction of the Initial Conditions Precedent.

41

B.      Waiver of Conditions

The conditions to Confirmation of the Plan and Consummation of the Plan set forth in this Article X may be waived by the Debtors with the prior written consent from the Committee, each in their reasonable discretion.

C.      Effect of Non-Occurrence of Conditions to the Effective Date

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, the Debtors' Estates, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Debtors' Estates, any Holders, or any other Entity in any respect.

## ARTICLE XI
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      Modification and Amendments

Subject to the limitations contained in the Plan, the Debtors reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI hereof. Any modifications to the Plan shall be consistent in all respects with the Plan and shall otherwise be reasonably acceptable to the Debtors and the Committee.

Notwithstanding anything herein to the contrary, any modification, alteration, or amendment to the Plan suggested or filed by the Debtors that would affect in any material way the economic or any other terms or effect of the settlements among the Committee and the Debtors embodied in the Plan may become effective only with the prior written consent of the Committee.

Notwithstanding anything herein to the contrary, the Debtors and the Committee each shall consider in good faith any additional modifications proposed by any of such parties in good faith, regardless of whether such additional modifications are contemplated by the Plan.

42

B.      Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to Section 1127(a) of the Bankruptcy Code and do not require additional disclosure or solicitation under Bankruptcy Rule 3019.

C.      Revocation or Withdrawal of the Plan

The Debtors reserve the right, after good-faith consultation with the Committee, to revoke or withdraw the Plan, including the right to revoke or withdraw the Plan for any Debtor or all Debtors, prior to the Confirmation Date. If the Debtors, in good-faith consultation with the Committee, revoke or withdraw the Plan with respect to any Debtor, or if Confirmation or Consummation does not occur with respect to any Debtor, then:  (1) the Plan with respect to such Debtor shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan with respect to such Debtor (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan with respect to such Debtor, and any document or agreement executed pursuant to the Plan with respect to such Debtor, shall be deemed null and void; and (3) nothing contained in the Plan with respect to such Debtor shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

**ARTICLE XII
RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan; resolve any matters related to: (a) the assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Costs pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any

Executory Contract or Unexpired Lease that is assumed; (c) the Debtors or Liquidating Agent amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases set forth on the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

3.    ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

4.    adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

5.    adjudicate, decide, or resolve any and all matters related to Causes of Action;

6.    enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

7.    enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.    resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9.    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

11.    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.E.1 hereof;

12.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

13.    determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

14.    adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

15.    consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

16.    determine requests for the payment of Claims and Interests entitled to priority pursuant to Section 507 of the Bankruptcy Code;

17.    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

18.    hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

19.    hear and determine all disputes involving the existence, nature, or scope of the Debtors' release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

20.    enforce all orders previously entered by the Bankruptcy Court;

21.    hear any other matter not inconsistent with the Bankruptcy Code;

22.    enter an order concluding or closing the Chapter 11 Cases; and

23.    enforce the injunction, release, and exculpation provisions set forth in Article IX hereof.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

A.    Immediate Binding Effect

Subject to the terms hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Debtors' Estates, the Liquidating Agent, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.    Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    Dissolution of Committee

On the Effective Date, the Committee shall dissolve and members thereof shall be compromised, settled, and released from all rights and duties from or related to the Chapter 11 Cases, except the Committee will remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims. The Debtors and the Liquidating Agent shall no longer be responsible for paying any fees or expenses incurred after the Effective Date by the Committee Members.

D.    Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors or any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

E.    Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.    Service of Documents

Any pleading, notice, or other document required by the Plan to be served on or delivered to the following entities and shall be served via first class mail, overnight delivery, or messenger on:

46

If to the Debtors, to:

| If to the Debtors, to: | |
| --- | --- |
| Grace E. Robson, Esq.<br>Markowitz Ringel Trusty & Hartog, PA<br>101 NE Third Avenue, Suite 1210<br>Fort Lauderdale, FL 33301 | |
| **If to the Liquidating Agent** | |
| To be determined | |

G.    <u>Term of Injunctions or Stays</u>

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect to the maximum extent permitted by law. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.    <u>Entire Agreement; Non-severability of Plan Provisions</u>

Except as otherwise indicated, the Plan, the Confirmation Order, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors and the Committee, such consent not to be unreasonably withheld; and (3) non-severable and mutually dependent.

I.    <u>Waiver or Estoppel</u>

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made

with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan or papers Filed with the Bankruptcy Court before the Confirmation Date.

Dated: April 7, 2015

HIGH RIDGE MANAGEMENT CORP.,

By: _____
Tamir Zury, Director

HOLLYWOOD REHABILITATION CENTER, LLC
By:    High Ridge Management Corp.,
Managing Member

By: _____
Tamir Zury, Director

HOLLYWOOD PAVILION, LLC
By:    High Ridge Management Corp.,
Managing Member

By: _____
Tamir Zury, Director

560954.2