## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
### www.flsb.uscourts.gov

IN RE:                                                   Case No.: 15-16388-JKO

HIGH RIDGE MANAGEMENT CORP., *et al.*,[1]        Chapter 11
                                                         (Jointly Administered)

    Debtors.
_____/

### NOTICE OF FILING

    High Ridge Management Corp. and Hollywood Hills Rehabilitation Center, LLC, give notice of

filing of the attached *Transcript of 6-24-15 Auction*.

DATED: June 25, 2015                          **MARKOWITZ RINGEL TRUSTY & HARTOG, P.A**.
                                                        *Counsel for the Chapter 11 Debtors*
                                                        101 NE Third Avenue, Suite 1210
                                                        Fort Lauderdale, FL 33301
                                                        Tel: (954) 767-0030 // Fax: (954) 767-0035

                                                        - and -

                                                        9130 So. Dadeland Boulevard, Suite 1800
                                                        Miami, FL 33156
                                                        Tel: (305) 670-5000 // Fax: (305) 670-5011

                                                        By: /s/ *Grace E. Robson*
                                                        Jerry M. Markowitz, Esq.
                                                        Fla. Bar No. 182420
                                                        jmarkowitz@mrthlaw.com
                                                        Grace E. Robson, Esq.
                                                        Fla. Bar No. 178063
                                                        grobson@mrthlaw.com
                                                        Timothy R. Bow, Esq.
                                                        Fla. Bar No. 104710
586368                                                   tbow@mrthlaw.com

---

[1] The following cases are jointly administered pursuant to this Court's *Order Jointly Administering Chapter 11 Cases* [ECF No. 10], *In re High Ridge Management, Corp.*, Case No. 15-16388-JKO, *In re Hollywood Hills Rehabilitation Center, LLC,* Case No. 15-16389-JKO, and *In re Hollywood Pavilion, LLC,* Case No. 15-16390-JKO.

Page 1

 1              UNITED STATES BANKRUPTCY COURT
                 SOUTHERN DISTRICT OF FLORIDA
 2

 3   IN RE:                        CASE NO. 15-16388-JKO

 4   HIGH RIDGE MANAGEMENT CORP.,
     et al.,
 5

               Debtors.
 6   _____/

 7

 8

 9

10                        Broward County Convention Center
                          1950 Eisenhower Boulevard
11                        Banquet Room 124
                          Fort Lauderdale, Florida 33316
12                        Wednesday, June 24, 2015
                          11:36 a.m. - 5:30 p.m.
13

14

15

16

17

18              A U C T I O N

19

20

21

22

23

24                   Reported By:

25                 Karen B. Patlak

```
 1                    APPEARANCES:
 2
          MARKOWITZ RINGEL TRUSTY + HARTOG, by
 3            GRACE E. ROBSON, Attorney-at-Law
              JERRY M. MARKOWITZ, Esquire
 4             TIMOTHY R. BOW, Esquire
                        and
 5   PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L., by
              EDWARD T. YEVOLI, Esquire
 6             MARK A. ALBRIGHT, Esquire
              SELENA SAMALE, Attorney-at-Law
 7              On behalf of the Debtors
 8
          GENOVESE JOBLOVE & BATTISTA, P.A., by
 9            PAUL J. BATTISTA, Esquire
              GLENN D. MOSES, Esquire
10       On behalf of the official committee of
                unsecured creditors
11
12             ROETZEL & ANDRESS, by
              ALAN J. PERLMAN, Esquire
13   On behalf of Hollywood Property Investments
14
                  BLANK ROME, by
15             LEON BARSON, Esquire
     On behalf of Hollywood Hills Operator, LLC and
16          1200 North 35th Avenue, LLC
17
              STEARNS WEAVER MILLER
18     WEISSLER ALHADEFF & SITTERSON, P.A., by
            PATRICIA A. REDMOND, Attorney-at-Law
19        On behalf of HH Acquisition, LLC
20
              GREENBERG TRAURIG, LLP, by
21          JOHN B. HUTTON, III, Esquire
     On behalf of Florida Home & Health 2012, LLC
22
              HOLLAND & KNIGHT, LLP, by
23            JOAQUIN ALEMANY, Esquire
              On behalf of Leonore Kallen
24                - - - - - - -
25
```

Page 3

ALSO PRESENT:

SCOTT SAUNDERS,
Farlie Turner & Co.

STEVE ZUCKERMAN,
Farlie Turner & Co.

SONEET KAPILA,
Kapila Mukamal

LESLIE JOHNSON,
Kapila Mukamal

DAVID GREENBLATT,
Kapila Mukamal

ABRAHAM SHAULSON,
Millennium Management

MARK SHAULSON,
Millennium Management

NELSON ROBAINA, JR.,
Millennium Management

JONATHAN MARKOVICH,
Millennium Management

ELIEZER FRIEDMAN,
Hollywood Hills Operator, LLC and
1200 North 35th Avenue, LLC

JONATHAN BLEIER,
Hollywood Hills Operator, LLC and
1200 North 35th Avenue, LLC

1          ALSO PRESENT (CONT'D):
2

3               IRIS BERGIS,
         Hollywood Property Investments
4

5               ALBA HIRSHEL,
         Hollywood Property Investments
6

7           JACK J. MICHEL, M.D.,
         Larkin Community Hospital
8

9               TAMIR ZURY,
      Hollywood Hills Rehabilitation Center
10

11           DARREN CARUSO,
      Hollywood Hills Rehabilitation Center
12

13        MARK TRESS (via phone),
         Florida Home & Health 2012, LLC
14

15          KELSEY PAINE, Law Clerk

16              - - - - - - -
17
18
19
20
21
22
23
24
25

1        MS. ROBSON:  Good morning.  Thanks everyone

2   for your patience.  We are about to get started.

3        My name is Grace Robson.  I'm one of the

4   attorneys for High Ridge Management Corporation and

5   Hollywood Hill Rehabilitation Center, who I'm going to

6   refer to as the debtors.

7        We are here today for the auction of

8   substantially all of the assets of the referenced

9   companies as more fully described in the purchase

10   agreement for which you-all are familiar.

11        We have -- before we start, one thing before

12   I forget is if someone has not signed the sign-in sheet,

13   please make sure you-all sign in so that we have a record

14   of who is in attendance today.

15        Also, we are transcribing today's auction so

16   that we have a record of everything that's happened, so

17   it's clear to the judge, if necessary, what happened

18   today.

19        In accordance with the bidding procedures

20   that were approved by the Court, we received the

21   following bids that the debtors, in conjunction with the

22   official committee of unsecured creditors of Hollywood

23   Hills, have determined to be qualified bids.  So I'm

24   going to announce who those are.  Hollywood Hills

25   Operator, LLC and 1200 North 35th Avenue, LLC, whose bid

1    was $18 million for the assets.  The second bid we

2    received is HH Acquisition, LLC, whose bid was

3    $18,685,000.  The third bid by Hollywood Property

4    Investments, LLC, whose bid is $18,686,000, and Florida

5    Home Health 2012, LLC, whose bid is $18,685,000.

6              Mark Albright, who is special transactional

7    counsel for the debtor, has confirmed receipt of the

8    requisite good faith deposits from all of the referenced

9    bidders.

10             The debtors and the committee have reviewed

11   all of the documents submitted by the referenced bidders,

12   including the executed sale agreement and financial

13   certification of the ability to close on the proposed

14   sale transaction, as well as affidavits or declarations

15   of good faith in conjunction with the offers.  Based upon

16   the information received, all of the referenced bidders

17   are qualified bidders entitled to bid at this auction.

18             So before we start the bidding, we wanted to

19   make sure that because the proceedings are being

20   transcribed each person, each bidder designate one person

21   who is going to speak for that bidder and before

22   announcing or making a statement, announce who you are

23   and which company you are bidding for or speaking for so

24   that the record is clear.

25             So we would like to announce that the highest

1   and best offer as determined by the debtors and the

2   committee in their business judgment was the offer made

3   by HH Acquisition, LLC.  So that is the opening bid, so

4   to speak, for today's auction.  So before we proceed with

5   any other higher or better offers, we would like to have

6   a representative of each of the bidders make certain

7   representations into the record if that is possible.

8              So will the representative of Hollywood Hills

9   Operators and 1200 North 35th Avenue, LLC please announce

10  your name and your position with the bidder.

11             MR. FRIEDMAN:  Eli Friedman, managing member.

12             MS. ROBSON:  Okay.  Can you confirm,

13  Mr. Friedman, that there are no other parties bidding

14  with you that have not been identified?

15             MS. FRIEDMAN:  Correct.

16             MS. ROBSON:  Can you confirm that Hollywood

17  Hills Operator, LLC and 1200 North 35th Avenue did not

18  communicate with any other potential bidders in

19  connection with today's auction --

20             MS. FRIEDMAN:  Correct.

21             MS. ROBSON:  -- or their affiliates?

22             MS. FRIEDMAN:  Correct.

23             MS. ROBSON:  Can you confirm that the only

24  relationship between your two entities and the debtors is

25  that as a potential buyer of the debtors' assets subject

Page 8

1    to today's auction?

2                    MR. FRIEDMAN:  Correct.

3                    MS. ROBSON:  Are there any other facts and

4    circumstances or relationships that you would like to

5    disclose before we start?

6                    MS. FRIEDMAN:  Nothing.

7                    MS. ROBSON:  Will the representative of

8    HH Acquisition, LLC please announce your name and

9    position with the bidder?

10                   MR. ABRAHAM SHAULSON:  Abraham Shaulson,

11   managing member.

12                   MS. ROBSON:  Can you confirm that there are

13   no other parties bidding with you that have not been

14   identified?

15                   MR. ABRAHAM SHAULSON:  There aren't.

16                   MS. ROBSON:  And can you confirm that

17   HH Acquisition did not communicate with any other

18   potential bidders in connection with today's auction?

19                   MR. ABRAHAM SHAULSON:  They did not.

20                   MS. ROBSON:  Can you confirm that

21   HH Acquisition has no relationship with the debtors or

22   any of its officers or directors?

23                   MR. ABRAHAM SHAULSON:  There is none.

24                   MS. ROBSON:  Are there any other facts or

25   circumstances that you would like to disclose before we

Page 9

1    start the auction?

2             MR. ABRAHAM SHAULSON:  None.

3             MS. ROBSON:  Will the representative of

4    Hollywood Property Investments, LLC, please announce

5    their name and position with the bidder?

6             DR. MICHEL:  Jack Michel, managing member.

7             MS. ROBSON:  Jack Michel, the managing

8    member.

9             Can you confirm that there are no other

10   parties bidding with you that have not been identified?

11            THE COURT REPORTER:  Could he maybe step up?

12            MS. ROBSON:  Would you mind coming a little

13   closer to the court reporter?

14            Can you confirm that Hollywood Property

15   Investments is not communicating with any other potential

16   bidders in connection with today's auction?

17            DR. MICHEL:  Confirm.

18            MS. ROBSON:  Can you confirm that Hollywood

19   Property Investments has no relationship to the debtors

20   other than being a creditor of the debtors in the case?

21            DR. MICHEL:  Confirm.

22            MS. ROBSON:  Hollywood Property Investments

23   was a plaintiff in a foreclosure action against the

24   debtors where it obtained the appointment of the

25   receiver, John Steinmeyer, who currently operates the

1  nursing home; is that correct?

2              DR. MICHEL:  Confirm.

3              MS. ROBSON:  Is there also employees of your

4  affiliate, Larkin Hospital, who may have at some time

5  been employed or otherwise affiliated with Hollywood

6  Hills?

7              DR. MICHEL:  Not that I'm aware of.

8              MS. ROBSON:  Not that you are aware.

9              Are there any other facts and circumstances

10 or relationships that Hollywood Property Investments

11 would like to disclose before we start the bidding?

12             DR. MICHEL:  No.

13             MS. ROBSON:  Would the representative of

14 Florida Home & Health 2012 please announce your name and

15 relationship with the debtor.

16             MR. HUTTON:  My name is John Hutton.  I'm the

17 attorney for Florida Home & Health 2012, LLC with

18 authority to bid on behalf of the entity.

19             MS. ROBSON:  Can you confirm ---

20             MR. HUTTON:  And just for the record, I have

21 a representative of Florida Home & Health 2012, LLC on

22 the phone with me providing me instructions.

23             MS. ROBSON:  Can you confirm that other than

24 the gentleman you identified on the phone -- do you want

25 to put his name on the record?

Page 11

1                    MR. HUTTON:  Mark Tress, T-R-E-S-S.

2                    MS. ROBSON:  Can you confirm there is no

3      other parties bidding with you that has not been

4      identified?

5                    MR. HUTTON:  As we've discussed, there's a

6      couple of partners in the deal, but other than that, no.

7                    MS. ROBSON:  But they are not bidding here

8      today.

9                    MR. HUTTON:  They are providing financial

10     support, receiving the financial statements submitted on

11     their behalf, but other than him and his partners in the

12     deal, there are no other parties that we have

13     communicated with.

14                   MS. ROBSON:  Can you confirm on behalf of

15     Florida Home & Health that there have been no

16     communications with any other potential bidders regarding

17     the auction?

18                   MR. HUTTON:  Correct, there have been no

19     communications with any other bidders in this room.

20                   MS. ROBSON:  Can you confirm that there is no

21     relationship between Florida Home & Health 2012 and any

22     of the bidders?

23                   MR. HUTTON:  Confirm.

24                   MS. ROBSON:  Are there any other facts and

25     circumstances or relationships that Florida Home & Health

1    would like to disclose before we start the bidding?

2                    MR. HUTTON:  No.

3                    MS. ROBSON:  Are there any bidders that have

4    not reviewed or don't understand the bidding procedures,

5    which is Court Paper Number 122, that has been entered in

6    the case?

7                         (No response.)

8                    MS. ROBSON:  As I indicated before, these

9    debtors, in conjunction with the committee, have

10   determined that HH Acquisition, LLC as of the bid

11   deadline submitted the highest and best offer, and so

12   what we propose to do is if any of the bidders are ready

13   to make an offer or a higher or better offer, they can do

14   so now or we can give you the opportunity to break into

15   separate rooms and come back a little bit later and put

16   those offers on the record.

17                    So is there anyone that would like to make an

18   offer right now?

19                    MR. PERLMAN:  HPI would like to increase its

20   offer.

21                    MS. ROBSON:  Alan, come forward.

22                    For the record, the person speaking is

23   Alan Perlman who is counsel for Hollywood Property

24   Investments.

25                    MR. PERLMAN:  HPI would like to increase its

1    offer by reducing the escrow from 1 million to $500,000

2    and limiting the period to two 12-month periods with the

3    $250,000 reduction per 12 month, less whatever comes out

4    of the escrow for the ---

5              MR. HUTTON:  This is John Hutton.  Can you

6    please repeat so that is clear?

7              MR. ZUCKERMAN:  Well, I will ask Mr. Perlman

8    to.  This is Steve Zuckerman.  I'm with Farlie Turner.

9    We are the companies' investment banker.

10             Mr. Perlman, when you repeat to clarify for

11   the other bidders, please indicate whether you are making

12   any additional changes to your bid and whether you're

13   increasing your bid by $100,000 as contemplated by the

14   bid procedures order.

15             MR. PERLMAN:  Thank you.  The answer is, yes,

16   we are.  And to restate it, the escrow provision will be

17   reduced from $1,500,000 with a two-year period.  At the

18   end of the first 12 months, it will be reduced by

19   $250,000, less whatever would be deducted from the escrow

20   pursuant to the existing agreement and the same thing at

21   the end of the 24th month.

22             The other change would be that the allocation

23   of the purchase price would be agreed to to the extent we

24   are the ultimate purchaser.

25             MR. ZUCKERMAN:  I'm not sure I follow.  What

1    do you mean by "agreed to?"

2              MR. PERLMAN:  Pursuant to the contract, the

3    parties would agree to the allocation.  We had put in our

4    exhibit that said that not less than a particular number.

5    We would retract that condition for purposes of this

6    auction.

7              MR. ZUCKERMAN:  And to confirm your bid was

8    also increased by $100,000?

9              DR. MICHEL:  Yes.

10             MR. PERLMAN:  Well, I increased it.  Hold on,

11   are you referring to the purchase price?

12             MR. ZUCKERMAN:  Yes.

13             MR. PERLMAN:  Yes.

14             MS. ROBSON:  Mr. Perlman, just to be clear on

15   the purchase price, are you proposing $100,000 above your

16   client's initial bid or Ms. Redmond's bid?

17             MR. PERLMAN:  Ms. Redmond's was less.  So ---

18             MS. ROBSON:  I just want to make sure we are

19   clear on the ---

20             MR. PERLMAN:  It's $100,000 more than my

21   client's -- than Ms. Redmond's bid.

22             MS. ROBSON:  So $18,785,000?

23             MR. PERLMAN:  That's correct.

24             MR. ZUCKERMAN:  Thank you, Mr. Perlman.

25             I think the parties are in agreement that's

Page 15

1   the highest bid.

2               Would anybody else like to place a bid?

3               MR. BARSON:  Can I ask a question?   This is

4   Leon Barson.

5               Millennium's bid as the existing bid you

6   proffered, you didn't make any changes, right?  In other

7   words, the one that's on there was what you put in?

8               MS. REDMOND:  It was our redline ---

9               MR. BARSON:  I got you.  I just didn't -- I

10  didn't understand that.  Okay.  Thank you for that

11  clarification.

12              MR. HUTTON:  (Unintelligible).

13              MR. BATTISTA:  John ---

14              MR. HUTTON:  Sorry.

15              MR. BATTISTA:  John, you might want to go

16  outside and speak to your client.

17              I'm sorry, this is Paul Battista.  You can

18  tell by my accent.

19              (Thereupon, a recess was taken from

20         11:50 a.m. until 11:55 a.m., after which the

21         following proceedings were had.)

22              MR. ZUCKERMAN:  We are back on the record.

23              MR. HUTTON:  John Hutton, Florida Home &

24  Health 2012, LLC.  We are prepared to make another bid

25  and we would match the terms that Larkin just suggested

Page 16

1    as to the escrow amount and escrow period and increase

2    the bid to $19 million.

3              MR. ZUCKERMAN:  Thank you.  And, Mr. Hutton,

4    can I confirm whether you are modifying the contingency

5    in the agreement as it relates to the Larkin lease?

6              MR. HUTTON:  No.

7              MR. ZUCKERMAN:  Thank you, Mr. Hutton.

8              In consultation with the debtor and the

9    committee it has been determined that as a result of the

10   condition as to the Larkin lease, that it's not the

11   highest and best bid.  So we are back to the previous bid

12   submitted by Mr. Perlman.

13             Would anybody else like to make a bid?

14   Ms. Redmond?

15             MS. REDMOND:  Patricia Redmond on behalf of

16   HH Acquisition.  We will match the escrow provisions by

17   Mr. Perlman's clients and in addition raise it by

18   $100,000.

19             MR. ZUCKERMAN:  To confirm, Ms. Redmond, that

20   will be $18,885,000?

21             MS. REDMOND:  That is correct.

22             MR. HUTTON:  I just want to report to my

23   client the results of the ---

24             MR. BATTISTA:  I suggest that we first

25   respond to Ms. Redmond's bid and then move on to the next

1    bids.

2            MR. ZUCKERMAN:  The debtor and committee's

3    perspective is that the bid submitted by Ms. Redmond for

4    $18,885,000 matching the other terms announced by

5    Mr. Perlman in his prior bid is the highest and best bid.

6            MR. PERLMAN:  Alan Perlman on behalf of HPI.

7    HPI would be increasing the offer announced by

8    Ms. Redmond by an additional $100,000 and reducing the

9    escrow from 500 to $200,000 adjusted $100,000 per every

10   12 months in accordance with what I stated earlier.

11           MR. ZUCKERMAN:  Thank you.

12           In brief consultation with the debtor and

13   committee, we have determined that Mr. Perlman's revised

14   bid of $18,985,000 and the modification to the escrow

15   reduced to $250,000 and the other terms referenced is the

16   highest and best bid --

17           UNIDENTIFIED:  200,000.

18           MR. ZUCKERMAN:  200,000.  Sorry.

19           MR. HUTTON:  I was confirming that the Larkin

20   bid reduced the escrow to $200,000 going down to $100,000

21   after 12 months.

22           If I could have a few minutes?

23           MR. ZUCKERMAN:  Let's see if anyone would

24   like to make another bid at this point.  Ms. Redmond?

25           MS. REDMOND:  HH Acquisition will match the

1    escrow reduction and bid another $100,000.

2              MR. ZUCKERMAN:  Ms. Redmond at this point has

3    been determined to be the highest and best bid at

4    $19,085,000 with matching the other terms on the escrow

5    announced by Mr. Perlman.

6              MR. PERLMAN:  Alan Perlman on behalf of HPI.

7    HPI would increase its offer by -- increase Ms. Redmond's

8    offer by an additional $100,000 increment and reduce the

9    escrow to zero.

10             MR. ZUCKERMAN:  Thank you, Mr. Perlman.

11             At this point, the highest and best bid is

12   submitted by Mr. Perlman's client, $19,185,000 and

13   completely eliminating the escrow.

14             Anybody else would like to make a bid?

15   Ms. Redmond?

16             MS. REDMOND:  Trish Redmond for

17   HH Acquisition.  We will match the escrow reduction to

18   zero and another $100,000 to $20,285,000.

19             MR. ZUCKERMAN:  I think you meant 19 million.

20   We are happy to take 20 million.

21             MS. REDMOND:  Sorry.  No, no, wrong math.

22             MR. ZUCKERMAN:  Thank you very much.  The

23   high bid now is at $19,285,000 by Ms. Redmond's client.

24             MR. PERLMAN:  Alan Perlman on behalf of the

25   HPI.  They would increase that offer by $100,000.

Page 19

1           MR. ZUCKERMAN:  At this point the high bid

2  submitted by Mr. Perlman's client is $19,285,000.

3           Would anybody else like to make a bid?

4  Ms. Redmond?

5           MS. REDMOND:  Trish Redmond on behalf of

6  HH Acquisition, 19,385?

7           MR. ZUCKERMAN:  Yes, the last bid was

8  19,385,000.

9           MS. REDMOND:  19,485,000.

10          MR. ZUCKERMAN:  Would anybody like to make a

11 bid?  The current bid $19,485,000.

12          MR. PERLMAN:  Yes, Alan Perlman on behalf of

13 HPI.  They would raise that bid by an additional

14 $100,000.

15          MR. ZUCKERMAN:  The current bid is

16 $19,585,000.

17          Ms. Redmond?

18          MS. REDMOND:  Current bid, plus $100,000.

19          MR. ZUCKERMAN:  Current high bid submitted by

20 Ms. Redmond's client, HH Acquisition, $19,685,000.

21          MR. PERLMAN:  HPI would offer an additional

22 $100,000.

23          MR. ZUCKERMAN:  Thank you.  Current high bid

24 was submitted by Mr. Perlman's client, $19,785,000.

25          Would anybody else like to submit a bid?

Page 20

1    Ms. Redmond?

2              MS. REDMOND:  Patricia Redmond,

3    HH Acquisition, 19,885,000.

4              MR. ZUCKERMAN:  High bid is 19,885,000 by

5    HH Acquisition.

6              MR. PERLMAN:  HPI would raise that to

7    $20 million.

8              MR. ZUCKERMAN:  Thank you.  Current high bid

9    is by HPI for $20 million.

10             Would anybody else like to make a bid?

11             MS. REDMOND:  Yes, HH Acquisition,

12   $20,100,000.

13             MR. ZUCKERMAN:  Would anybody like to make a

14   bid?  The current bid is $20,100,000.

15             MR. PERLMAN:  HPI would increase its offer

16   and bid $20,500,000.

17             MR. ZUCKERMAN:  Thank you.  The current high

18   bid is HPI, $20,500,000.

19             Would anybody else like to submit a bid?

20             MS. REDMOND:  Could we take a break?

21             MR. HUTTON:  Yeah, can we take a break?

22             MR. ZUCKERMAN:  Yes.

23             So, for the record, the bidders have

24   requested to take a break.  Let's take a 15-minute

25   recess.

1              (Thereupon, a lunch recess was taken from

2         12:05 p.m. until 12:41 p.m., after which the

3         following proceedings were had.)

4              MR. ZUCKERMAN:  I think we are all here.

5    Again, this is Steve Zuckerman, Farlie Turner.  We are

6    back on the record.

7              The last bid prior to taking a break and

8    going off the record was made by HPI for $20,500,000,

9    including all of the other conditions that were

10   previously announced.  We took a brief break for parties

11   to eat lunch and confer.

12             At this time I would ask if anybody has an

13   additional bid they would like to make?  Ms. Redmond?

14             MS. REDMOND:  HH Acquisitions, 20.6 million,

15   plus HH Acquisitions will provide that the seller is not

16   responsible for any improvements, including ---

17             THE COURT REPORTER:  I can't hear.

18             MS. REDMOND:  HH Acquisitions, $20.6 million.

19   Plus, HH Acquisition will provide that the seller is not

20   responsible for any improvements, including capital

21   improvements in connection with the -- the

22   (indiscernible) applied for and any AHCA requirements in

23   connection with the (indiscernible).

24             MR. ZUCKERMAN:  Thank you.  The bid of 20.6

25   is the highest and best bid at this point with the

1    additional representations made by Ms. Redmond regarding

2    the AHCA or additional liabilities.

3                MR. BARSON:  Can I have a clarification?  No

4    escrow?

5                MS. REDMOND:  No escrow.

6                MR. BARSON:  I just wanted to make sure.

7    Thank you.

8                MR. PERLMAN:  Alan Perlman on behalf of HPI.

9    HPI would match that last condition with regard to the

10   expenses associated with the AHCA licensure, including

11   cap ex and include bid amount by additional $100,000.

12               MR. ZUCKERMAN:  Thank you, Mr. Perlman.

13               At this point, the high bid that's been

14   submitted by HPI at $20.7 million, which includes the

15   representations that Ms. Redmond made regarding the

16   elimination of any potential liability by the debtors as

17   relates to capital improvements or AHCA responsibilities.

18               Would anyone else care to make a bid?

19               MS. REDMOND:  Yes, HH Acquisition bids

20   $21 million.

21               MR. ZUCKERMAN:  Thank you, Ms. Redmond.  For

22   the sake of clarity, I'm not going to recapitulate all

23   the prior changes.  I will assume that any bids from this

24   point on will include those changes.

25               MS. REDMOND:  Yes.  For clarity, all of my

Page 23

1    bids include all the waivers that were connected with the

2    previous bids.

3                    MR. ZUCKERMAN:  Thank you.

4                    At this point the high bid is submitted by

5    HH Acquisition, $21 million.

6                    Would anyone else like to make a bid?

7                    MR. PERLMAN:  Alan Perlman on behalf of HPI.

8    HPI would raise its bid to $21,200,000.

9                    MR. ZUCKERMAN:  Mr. Perlman, I would ask that

10   you confirm the same thing that I just asked Ms. Redmond,

11   that your bid include all the prior alterations,

12   modifications as agreed to in your prior bid?

13                   MR. PERLMAN:  That is correct.

14                   MR. ZUCKERMAN:  Thank you.

15                   At this point the high bid is submitted by

16   Mr. Perlman's client at $21.2 million.

17                   Can I interest anybody in making a bid?

18                         (No response.)

19                   MR. ZUCKERMAN:  Is anyone interested in

20   making a bid?

21                   MR. HUTTON:  Can I take two minutes?

22                   MR. ZUCKERMAN:  Yes.

23                   MR. BARSON:  Before you do, can I have one

24   clarification?  Leon Barson for the stalking horse

25   bidder.  Can I have clarification on the allocation issue

Page 24

1    as it stands now in the bids?

2              MR. BATTISTA:  This is Paul Battista.  My

3    understanding is that the bidders have been bidding so

4    far have left the allocation for a reasonable

5    determination that would involve the committee

6    participation and discussion presumably to be approved by

7    the Court in connection with this bid.  Is that right,

8    Ms. Redmond?

9              MS. REDMOND:  Excuse me?

10             MR. BATISTA:  Mr. Barson asked a question of

11   where the allocations stand, and I think I'm repeated

12   correctly that each one of the two bidders, yourself and

13   Mr. Perlman's client have agreed that the allocation will

14   be left for a reasonable determination between the

15   parties, including the committee --

16             MS. REDMOND:  Yes, that's correct.

17             MR. BATTISTA:  -- and ultimately to be

18   confirmed by Judge Olson.

19             MS. REDMOND:  That's correct.

20             MR. BATTISTA:  Mr. Perlman, do you want to

21   confirm that?

22             MR. PERLMAN:  Yes.

23             MR. BATTISTA:  Let's take a break now.

24             (Thereupon, a recess was taken from

25        12:46 p.m. until 12:49 p.m., after which the

Page 25

1        following proceedings were had.)

2              MR. ZUCKERMAN:  We are back on the record.

3              The last bid was submitted by Mr. Perlman on

4   behalf of HPI for $21.2 million, which is the highest and

5   best bid.

6              Would anybody like to submit a bid?

7                   (No response.)

8              MR. ZUCKERMAN:  Silence?  All these lawyers

9   and silence?  That's impossible.

10             MR. BARSON:  Leon Barson, Blank Rome, for the

11  stalking horse bidder.  We will bid $21 million on all

12  the same terms that have been bid by Ms. Redmond's client

13  and Mr. Perlman's client, including the most recent

14  modifications made.

15             MR. ZUCKERMAN:  Can you please clarify the

16  treatment of your breakup fee and expense reimbursement

17  and ---

18             MR. BARSON:  Sure.  If we win, there's no

19  breakup fee and expense reimbursement.  If we don't, we

20  get a breakup fee and expense reimbursement and in

21  calculating the bid, we have a $585,000 built in

22  advantage.  Does that comport with your understanding?

23             MR. ZUCKERMAN:  Yes.

24             MR. BARSON:  Thank you.

25             MR. ZUCKERMAN:  We are off the record.

Page 26

1              (Thereupon, a recess was taken from

2          12:51 p.m. until 12:53 p.m., after which the

3          following proceedings were had.)

4              MR. ZUCKERMAN:  Is everyone ready to go back

5    on the record?  Let's go back on the record.

6              So the last bid prior to taking a break was

7    submitted by Mr. Barson's client for the stalking horses,

8    $21,585,000 on a gross basis.

9              I believe, Mr. Barson, we confirmed that you

10   agreed to all of the modifications that have previously

11   been announced?

12              MR. BARSON:  Correct.

13              MR. ZUCKERMAN:  And would anybody like to --

14   at this point that's the highest and best bid,

15   $21,585,000.

16              Would anyone like to submit a bid?

17              MR. PERLMAN:  Yes, HPI, $21,685,000.

18              MR. BARSON:  That only matches, that doesn't

19   better us.  That's a match, correct?

20              MR. BATTISTA:  685?

21              MR. BARSON:  Correct.

22              MR. BATTISTA:  That's 21,585,000 on a gross

23   basis.

24              MR. BARSON:  So they bid -- that's -- so what

25   did -- our bid was 21 million?

Page 27

1              MR. BATTISTA:  Right.  And when you add your

2    breakup fee, expense reimbursement, your gross business

3    21,585.

4              MR. BARSON:  And so they have to clear a

5    hundred.  They are at a hundred is what I am saying.

6    I'm not.  They went a hundred up.

7              MR. BATTISTA:  Which is the next bidding,

8    which has been done.

9              MR. BARSON:  Okay.

10             MR. BATTISTA:  You're saying there's 100,00?

11             MR. BARSON:  Yeah.  I mean, I'm just saying

12   it's technically even in my mind.

13             MR. BATISTA:  It is $100,000 better than

14   yours.

15             MR. BARSON:  Okay.

16             MR. BATTISTA:  I want to make sure that we

17   understand.

18             MR. BARSON:  Yeah.  No, I'm still deal with

19   at auction.

20             MR. BATTISTA:  We would pay your client

21   585 out of 21,685,000.

22             MR. BARSON:  I agree.  You are right.  Thank

23   you.

24             MR. ZUCKERMAN:  Thank you, Mr. Roman.  The

25   high bid is 21,685,000.

Page 28

1                    Would any of the other bidders like to submit

2       a bid?

3                    MR. BARSON:  Leon Barson for the stalking

4       horse bidder.  We will bid 21.500 with all the same terms

5       and conditions.

6                    MR. ZUCKERMAN:  $21,500,000?

7                    MR. BARSON:  Yeah.

8                    MR. ZUCKERMAN:  And how is your breakup fee

9       and expense reimbursement treated in this?

10                   MR. BARSON:  The same way we have treated it

11      before.

12                   MR. PERLMAN:  Meaning?

13                   MR. BATTISTA:  That would put Mr. Barson's

14      client --

15                   MR. BARSON:  Correct.

16                   MR. BATTISTA:  -- in at 22 -- gross bid at

17      22,185,000.

18                   MR. BARSON:  Correct.

19                   MR. BATTISTA:  So it will be 22.185,000.

20                   MR. PERLMAN:  HPI would increase the offer by

21      an additional $100,000 to 22,185,000.

22                   MR. ZUCKERMAN:  Thank you.  Mr. Perlman, on

23      behalf of HPI, $22,185,000, which is the high bid.  Would

24      anybody like to submit a bid?

25                   MR. BARSON:  Leon Barson for the stalking

Page 29

1    horse bidder.  We will bid $22 million on the same terms

2    and conditions with the same treatment of our breakup

3    fees and expense reimbursement.

4              MR. ZUCKERMAN:  Thank you, Mr. Barson, for

5    your bid of $22 million.  That is a high bid if other

6    bidders which to submit a competing higher bid.  The next

7    bid would be $22,685,000.

8              MR. PERLMAN:  HPI would increase its purchase

9    price to $23 million.

10             MR. ZUCKERMAN:  Thank you, Mr. Perlman.

11   HPI's bid of $23 million is the highest and best bid.

12             Would anybody like to submit an additional

13   bid?

14             MR. BARSON:  The stalking horse bidder would

15   bid $22.5 million, $22,500,000.  Paul, does that clear?

16             MR. BATISTA:  That does not clear.

17             MR. BARSON:  Paul, what do we need?

18             MR. BATTISTA:  In order to top Mr. Perlman's

19   bid of $23 million on a gross basis, your client,

20   Mr. Barson, will need to bid 22.515.

21             MR. BARSON:  Done.  We bid Mr. Battista's

22   number, 22.

23                    (Laughter.)

24             MR. BATTISTA:  Can I change that?

25                    (Laughter.)

1          MR. BARSON:  Sure.  You are running the show.

2     $22,115,000 --

3          MR. ZUCKERMAN:  No.

4          MR. BARSON:  What's the number?

5          MR. ZUCKERMAN:  $22,515,000.

6          MR. BARSON:  Oh, 515.  Thank you.  Yes, we

7     bid that on the same terms and conditions with the same

8     treatment of our breakup fee and expense reimbursement.

9     And thank you, Mr. Battista.

10         MR. ZUCKERMAN:  So to clarify, the next

11    bidder who would like to submit a higher bid, the next

12    bid would be $23,200,000.

13         MR. PERLMAN:  HPI would increase its bid to

14    $23,200,000.

15         MR. ZUCKERMAN:  At this point, HPI's bid of

16    $23,200,000 is the highest bid.

17         Would any other bidders like to submit a bid?

18         MR. BARSON:  Can we take a break?

19         MR. ZUCKERMAN:  Yes, let's take a ten-minute

20    break.  Let's regroup -- it's 1:00 p.m.  Let's reconvene

21    at 1:15 p.m.

22         (Thereupon, a recess was taken from 1:01 p.m.

23    until 1:18 p.m., after which the following

24    proceedings were had.)

25         MR. ZUCKERMAN:  Okay.  Let's go back on the

1   record.  We took a brief break.  We are going back on the

2   record.  The last bid prior to the break was by HPI for

3   $23,200,000, which was the high bid.

4              Would anybody else like to make a bid?

5              MR. BARSON:  Leon Barson for the stalking

6   horse bidder.  I want to make a clarification for the

7   record with respect to our last bid, and there is no

8   chance I will even know what that was at the rate I've

9   been going, but I think it was 22,515, is that correct,

10  Paul?

11             MR. BATTISTA:  Yes.

12             MR. BARSON:  In addition to the terms and

13  conditions we've articulated previously, for

14  clarification purposes our bid has no escrow and no

15  recapture claim.  Our initial stalking horse bid that was

16  submitted to the Court, you know, a month or so ago, had

17  a bracketed amount of up to $2 million.  It is now zero.

18  There is no recapture claim for clarification purposes.

19             In addition, the stalking horse bidder would

20  be prepared -- the stalking horse bidder would be

21  prepared to remain a backup bidder if it is so designated

22  by the debtors and the committee and its advisors for a

23  period no later than September 1st of this year or up to

24  September -- no later than September 1st; is that right?

25             MR. BATTISTA:  Paul Battista for the

Page 32

1    committee.

2              Mr. Barson, my understanding is that a

3    closing would take place if you were not the winning

4    bidder.  The winning bidder would have until September

5    1st to close.  If they did not close by that date, you

6    would have the obligation to close within 60 days after

7    that date.  You could close the next day, but that's

8    not ---

9              MR. BARSON:  Yes, that's correct.  But right

10   now I think that are initial stalking horse bid had --

11   and the procedures had a 60 days from sale hearing backup

12   date, correct?

13             MR. BATTISTA:  That's correct.  And you are

14   modifying that based on what you just said.

15             MR. BARSON:  That's correct.

16             MR. BATTISTA:  Thank you.

17             MR. BARSON:  With those modifications, we

18   will remain and stand at our existing bid.  And we are

19   happy to hear from Larkin, but we would also like to hear

20   from the debtors and the committee as to whether they

21   view those modifications to make our bid higher and

22   better than the existing bid from Larkin.

23             MR. BATTISTA:  Thank you.

24             MR. ZUCKERMAN:  Thank you, Mr. Barson for

25   your bid and clarification.

Page 33

1            In consultation with the debtor and the

2    committee we have determined that the revised bid by the

3    stalking horse is the highest and best bid at this point.

4            I would like to ask Mr. Perlman or

5    Ms. Redmond or anyone else that would like to make a bid

6    at this point.

7            MR. PERLMAN:  Certainly.  HPI would match

8    those additional provisions as clarified by Mr. Battista.

9            MR. ZUCKERMAN:  Can you please clarify,

10   Mr. Perlman, the cash amount of your bid?

11           MR. PERLMAN:  It's the same, 23.2.

12           MR. ZUCKERMAN:  Thank you.

13           Mr. Perlman, your bid of $23.2 million and

14   your agreement to match the terms announced by Mr. Barson

15   makes you the highest and best bid at this point.

16           Mr. Barson or Ms. Redmond or anyone else like

17   to make a bid?

18                (No response.)

19           MR. ZUCKERMAN:  So we are at $23.2 million by

20   HPI.

21           Mr. Hutton, would you like to submit a bid or

22   Ms. Redmond or anybody like to submit a bid?

23           MR. BARSON:  I didn't want to interrupt him

24   if he's still talking.

25           MR. HUTTON:  I'm not right now.  Go ahead.

Page 34

1          MR. ZUCKERMAN:  Mr. Perlman, there is one

2    clarification on your bid.  With respect to the closing,

3    would your client agree to close within three days of all

4    the conditions being satisfied?

5          MR. PERLMAN:  Yes.

6          MR. ZUCKERMAN:  Thank you.

7          Again, at this point the high bid is by HPI,

8    $23.2 million, agreement to close within three days of

9    conditions being satisfied and all of the other

10   conditions and modifications that have been previously

11   agreed to.

12         Anybody else like to submit a bid?  Any

13   takers?

14              (No response.)

15         MR. ZUCKERMAN:  Do people need to take a

16   five-minute break to discuss?

17         MR. HUTTON:  Yeah, I want to discuss

18   conditions.

19         MR. ZUCKERMAN:  It's 1:40.  Let's reconvene

20   at 1:50, please.

21         MR. HUTTON:  1:50?

22         Mr. ZUCKERMAN:  In ten minutes.  It's 1:40.

23   We will reconvene at 1:50.  We are off the record.

24              (Thereupon, a recess was taken from

25          1:42 p.m. until 1:52 p.m., after which the

Page 35

1          following proceedings were had.)

2                    MR. ZUCKERMAN:  Back on the record, please.

3                    Before we took a break, HPI submitted a bid

4    of $23.2 million, matched all the modifications that were

5    previously announced, which is currently the high bid.

6    And it's open to any other bidder that wishes to make an

7    additional bid at this time.

8                    MR. HUTTON:  As I mentioned -- this is

9    John Hutton -- I'm requesting an additional ten-minute

10   recess.  There is an issue our client needs to discuss

11   that impacts the bidding going forward on their behalf.

12                   MR. ZUCKERMAN:  Okay.  So it's 1:50.  Is ten

13   minutes sufficient, Mr. Hutton?

14                   MR. HUTTON:  I believe so, yes,

15                   MR. ZUCKERMAN:  Let's reconvene, please, at

16   2:05.

17                   (Thereupon, a recess was taken from

18          1:53 p.m. until 2:12 p.m., after which the

19          following proceedings were had.)

20                   MR. ZUCKERMAN:  It's 2:10, we can go back on

21   the record.

22                   Prior to taking a break, the last bid

23   submitted was by HPI for $23.2 million.

24                   Before opening it up to the remaining

25   bidders, I just want to clarify a number of modifications

1   that have been made so far so that there is no confusion.

2   All of the bidders have agreed to eliminate any recapture

3   claims, eliminate the escrow, to close by September 1st

4   and to be a backup bidder for up to 60 days following

5   September 1st, to close within three days after all

6   conditions are satisfied, that the debtors will not be

7   responsible for any AHCA related to change of ownership,

8   capital expenditure or other expenses related to the

9   transaction, relating to AHCA or capital expenditures,

10  and that the parties will agree to negotiate in good

11  faith with the debtors and the committee on the

12  allocation of purchase price subject to the judge

13  ultimately deciding and approving that allocation.

14          If anybody disagrees with that recitation,

15  please let me know when they make their next bid.

16          MR. BARSON:  Can I have a -- Leon Barson for

17  the stalking horse bidder.  Can I have a clarification as

18  to what you said as to the 60-day backup period, because

19  I thought it was inconsistent with what I had understood

20  it to be prior.

21          MR. ZUCKERMAN:  So Mr. Battista can explain

22  that better than I can.

23          MR. BATTISTA:  It would be -- the winning

24  bidder would close no later than September 1st.

25          MR. BARSON:  Right.

1          MR. BATTISTA:  And if the winning bidder did

2    not close or if the contract was terminated as of

3    September 1st or prior to September 1st, then the backup

4    bidder would have 60 days from the earlier of the

5    termination or September 1st to close.

6          MR. BARSON:  Yeah.  Thank you.

7          MR. BATTISTA:  Thank you.

8          MR. ZUCKERMAN:  Thank you, Mr. Battista, for

9    your help.

10          MR. HUTTON:  I didn't realize that

11   September 1st was a closing outside date.  So even if

12   AHCA approval takes longer than that, that is the

13   outside date for closing?  Because as I understand it

14   under the contracts AHCA approval, license approval is a

15   condition to closing, and once it's approved, once it's

16   obtained, you have three days from then to close since no

17   other closing conditions are satisfied.

18          MR. BATTISTA:  The two bidders who were

19   bidding, Mr. Barson and Mr. Perlman's client, have agreed

20   to close by September 1st.  That gives us more than

21   60 days to get their requisite approvals.  I believe they

22   can speak for themselves, they are comfortable they would

23   get it in 60 days, so it is a September 1st closing.

24          MR. HUTTON:  If for some reason it doesn't

25   close that date because of inability or failure to

Page 38

1   license, inability to obtain ACHA approval by that

2   date ---

3           MR. BATTISTA:  The contract speaks to what

4   that means if it doesn't occur.  We are not changing

5   that.

6           MR. HUTTON:  Well, then the bidder should get

7   their deposit back.

8           MR. BATTISTA:  John, the contract says what

9   it says.  I'm not here to -- you can pull it out if you.

10          MR. HUTTON:  Well, you don't ---

11          MR. ZUCKERMAN:  So can I ask, Mr. Barson and

12  Mr. Perlman to agree with those conditions and

13  modifications that their last bids are subject to those

14  conditions that I have just recited?

15          MR. PERLMAN:  HPI confirms.

16          MR. ZUCKERMAN:  Thank you.

17          MR. BARSON:  Leon Barson for the stalking

18  horse bidder confirms those conditions.

19          MR. ZUCKERMAN:  Thank you.

20          MR. BARSON:  Thank you.

21          MR. HUTTON:  I'm still not clear on the terms

22  as to the backup bidder provisions.  For the winning

23  bidder, the outside date is September 1st to close.  What

24  is the backup bidder term?

25          MR. BATTISTA:  The earlier of 60 days after

1   the termination, assuming they terminate prior to

2   September 1st or 60 days from September 1st.

3           MR. ZUCKERMAN:  So with that, HPI is the high

4   bid at $23.2 million.

5           Would anyone like to submit a bid?

6           MR. HUTTON:  Excuse me.

7           MR. ZUCKERMAN:  Mr. Hutton, would your client

8   like to make a bid?

9           MR. HUTTON:  On behalf of FHH we are putting

10  in a bid of 23.3, accepting the conditions by other bids,

11  except that the outside -- we are sticking with the

12  outside date that's set forth on our contract, which is

13  October 31st.  And the free and clear Larkin provisions

14  remain in the deal, except that we would offer at least

15  the exact same financial condition, except for a

16  five-year lease with three 5-year renewal terms.  It

17  would be a 20-year lease on the same financial terms.

18  Our deposit -- one additional term is that our deposit

19  that's being held would be in an interest bearing account

20  instead of a noninterest bearing account.

21          MR. ZUCKERMAN:  Thank you, Mr. Hutton.

22          Given the bid and the terms of your bid,

23  which as it relates to Larkin and a modification of that

24  lease, I would ask Mr. Perlman to represent on behalf of

25  his client whether that proposal would be acceptable to

1   HPI?

2            MR. PERLMAN:  This is Alan Perlman on behalf

3   of HPI.  The lease is not with HPI, but it's a similar

4   representative, and I've been informed on behalf of

5   Larkin, the tenant, that that would in no way be

6   acceptable.

7            MR. ZUCKERMAN:  Based on the representation

8   by Mr. Perlman on behalf of Larkin that the terms

9   announced by Mr. Hutton as it relates to a modification

10  of the Larkin lease are not acceptable.  The debtors and

11  the committee have determined that the bid submitted by

12  Mr. Hutton's client is not the highest and best.  The

13  highest and best bid remains the HPI bid of $23.2

14  million.

15            In addition, Mr. Battista has reminded me

16  that the outside closing date of October 31st is another

17  condition that the parties have considered in determining

18  the bid submitted by Mr. Hutton as not being the highest

19  and best at this time.

20            Mr. Barson or Ms. Redmond, would your client

21  like to submit a bid?

22            MR. BARSON:  I would like clarification.

23  Leon Barson for the stalking horse bidder.  Who is the

24  backup bidder right now?

25            MR. ZUCKERMAN:  I believe, Mr. Barson, your

Page 41

1    client is the backup bidder at this point.

2              MR. BARSON:  Okay.

3              Ms. Redmond, do you wish to make a bid?

4              MS. REDMOND:  No.

5              MR. ZUCKERMAN:  Thank you.

6              Mr. Barson?

7              MR. BARSON:  No.  We would congratulate HPI

8    if they are determined to be the highest and best.  We

9    are prepared to stand as the backup bidder.

10             MR. ZUCKERMAN:  The parties will take five

11   minutes just to confer up here and we will get back on

12   the record in five minutes.

13             MR. HUTTON:  I would like to confer with my

14   client to see if they have another bid.

15             MR. ZUCKERMAN:  Okay.

16             (Thereupon, a recess was taken from 2:25 p.m.

17        to 2:39 p.m., after which the following proceedings

18        were had.)

19             MR. ZUCKERMAN:  We are back on the record.

20   Prior to taking the break, there was a confirmation of

21   the modifications to the bid, which all parties made,

22   and the last bid, which was deemed highest and best, was

23   HPI at $23.2 million.

24             Would anybody like to make a bid?

25   Mr. Hutton?

1          MR. HUTTON:  John Hutton on behalf of FHH.

2    FHH bids 23.3 with all the same conditions that I

3    mentioned previously, except that we are eliminating the

4    Larkin condition.

5          MR. ZUCKERMAN:  Can you confirm, Mr. Hutton,

6    your outside closing date?

7          MR. HUTTON:  It remains consistent with

8    what's in our bid contract, 12.4, Section 12.4 of the

9    asset purchase agreement, which is October 31st.

10          MR. PERLMAN:  Before you caucus, Alan Perlman

11   on behalf of HPI.  Can I ask for clarification that your

12   offer now is based on the assumption of the Larkin lease?

13          MR. HUTTON:  Yes.

14          MR. PERLMAN:  Thank you.

15          (Thereupon, a recess was taken from 2:40 p.m.

16       until 2:42 p.m., after which the following

17       proceedings were had.)

18          MR. ZUCKERMAN:  We are back on the record.

19   Thank you, Mr. Hutton, for your bid.

20          Based on a brief consultation with the

21   committee and the debtors, there are two issues that have

22   been identified with your bid; one of which is your

23   closing date is 60 days past other bidders closing date,

24   which is 9-1.  The second issue is part of the contract

25   that you identified prior to the start of the auction as

Page 43

1   contract, executory contracts that your client wishes to

2   assume, has an additional $150,000 cure cost which, under

3   the terms of the contract as it stands today, would be

4   paid by the sellers.  Therefore, your bid which you just

5   articulated is not the highest and best bid.

6                    MR. HUTTON:  Which contract were you

7   referring to?

8                    MR. ZUCKERMAN:  Prior to the commencement of

9   the auction, you identified --

10                   MR. HUTTON:  Right, but the contract you

11  identified, you said it has a $150,000 cure amount, which

12  one is that?

13                   MR. ZUCKERMAN:  I believe in the aggregate,

14  it equates to approximately $150,000 in cure costs.

15  Based on those two issues, the parties have determined

16  that your bid as articulated is not the highest and best

17  bid.

18                   Would you like to modify your bid?

19                   MR. HUTTON:  I need to confirm.

20                   MR. BARSON:  Who is the backup bidder?  Again

21  me?

22                   MR. ZUCKERMAN:  Well, the highest and best

23  bidder at this point is HPI and, Mr. Barson, your client

24  is the backup bidder.

25                   MR. BARSON:  Okay.

Page 44

```
 1                    (Thereupon, a recess was taken from 2:42 p.m.
 2            until 3:02 p.m., after which the following
 3            proceedings were had.)
 4                    MR. ZUCKERMAN:  Thank you everybody for
 5    taking a little bit longer.  We are back on the record at
 6    3:02.
 7                    As announced prior to the break, the high bid
 8    by HPI of $23.2 million is the highest and best bid as
 9    determined by the parties.  Mr. Hutton's client's bid and
10    comments were provided, which were captured on the
11    record.
12                    At this point, I would ask Mr. Hutton or
13    anyone else if they would like to submit a bid?
14                    MR. HUTTON:  This is John Hutton on behalf of
15    FHH.  We are submitting a bid for 23.3 on the same
16    conditions I mentioned previously, except that we are no
17    longer assuming the contract from Our Expert Pharmacy,
18    which has a $132,000 cure amount.  That's excluded in the
19    contract.  And the outside termination date is
20    September 31st.
21                    MR. BATTISTA:  September 30th.  There is no
22    31st.
23                    MR. HUTTON:  September 30th.
24                    MR. ZUCKERMAN:  Just for clarification,
25    Mr. Hutton, I believe the other bidders, and correct me
```

1    if I'm wrong, have agreed to the outside closing date of

2    September 1st, is that correct, Mr. Perlman?

3              MR. PERLMAN:  Yes.

4              MR. ZUCKERMAN:  Is that correct, Mr. Barson?

5              MR. BARSON:  Yes.

6              MR. ZUCKERMAN:  Is your client amenable to

7    September 1st as the outside closing date?

8              MR. HUTTON:  To answer your question, no,

9    September 31st is the outside closing date.

10             MR. ZUCKERMAN:  In consultation with the

11   debtors and the committee, based on the outside closing

12   date of September 30th, the parties have determined

13   that's not the highest and best bid, and would refer back

14   to the HPI bid of $23.2 million as the highest and best

15   bid at this time.

16             MR. HUTTON:  Excuse me.

17             MR. ZUCKERMAN:  John, Mr. Hutton, we would

18   ask that you return within a couple of minutes, please.

19             MR. HUTTON:  Okay.

20             MR. ZUCKERMAN:  We will take a brief break.

21             (Thereupon, a recess was taken from 3:05 p.m.

22        until 3:07 p.m.)

23             MR. ZUCKERMAN:  Can we go back on the record?

24   Mr. Hutton?

25             MR. HUTTON:  On behalf of FHH, we are going

Page 46

1    to bid 23.5 with the same terms and conditions that I

2    mentioned previously with an outside closing date of

3    October 10th.

4                    MR. ZUCKERMAN:  Off the record.

5                    (Thereupon, a recess was taken from 3:07 p.m.

6            until 3:10 p.m., after which the following

7            proceedings were had.)

8                    MR. ZUCKERMAN:  Thank you.  We are back on

9    the record.  Based on a consultation with the committee

10   and the debtors' attorneys and advisors, we've determined

11   that given the closing date of October 10th, that the bid

12   submitted by Mr. Hutton's client is not the highest and

13   best bid, that it's important for finality and for

14   interest payments that are being incurred and for other

15   reasons to match the 9-1 closing date offered by the

16   debtors.

17                   (Thereupon, a recess was taken from 3:11 p.m.

18           until 3:21 p.m., after which the following

19           proceedings were had.)

20                   MR. ZUCKERMAN:  So we are back on the record.

21   It's 3:22 p.m.  I believe Mr. Hutton is standing to tell

22   us that his client is going to approve their bid.

23                   MR. HUTTON:  Yes.  John Hutton, again, on

24   behalf of FHH.  We are bidding 23.5 with a closing date

25   of September 15th and with an option to extend that

1    closing date by paying the per diem interest carry costs

2    of the estate as of September 15th.

3                    MR. ZUCKERMAN:  For purposes of

4    clarification, is there anything you wanted to add?

5                    MR. HUTTON:  Pardon?

6                    MR. ZUCKERMAN:  Is there anything else you

7    wanted to add?

8                    MR. HUTTON:  Yes.  And I just want to put on

9    the record that our clients have the funds, but it has

10   tax advantages to satisfy the 1031 exchange and there may

11   be timing issues with regard to that.

12                   MR. ZUCKERMAN:  Is there anything else you

13   would like to add?

14                   MR. HUTTON:  No.

15                   MR. ZUCKERMAN:  Two questions; one, is the

16   option exclusively belonging to your client.  Is it

17   related to anything or contingent upon anything or is it

18   an absolute option to extend the closing date?

19                   MR. HUTTON:  It's an option to extend the

20   closing date on a per diem basis past September 15th.

21                   MR. ZUCKERMAN:  In addition, can you please

22   make a representation to confirm that the financial

23   information provided by your client or your client's

24   partner in connection with the auction is being committed

25   to facilitate the acquisition of the debtors?

Page 48

1             MR. HUTTON:  Yes, it is.

2             MR. ZUCKERMAN:  We need two minutes to

3     discuss your bid.

4                 (Thereupon, a recess was taken from 3:23 p.m.

5             until 3:27 p.m., after which the following

6             proceedings were had.)

7             MR. ZUCKERMAN:  Thank you, Mr. Hutton for

8     your modified bid.

9                 In discussion with the committee, debtors and

10    their advisors we've determined as indicated before that

11    the closing date of 9-1 agreed to by other bidders is an

12    important consideration given the importance of having a

13    backup bidder locked in place.  As a result, while we

14    appreciate your bid, it's not the highest and best at

15    this point given your modification of the closing date

16    and the option to extend it.  As a result we are back to

17    HPI bid as the highest and best bid at $23.2 million,

18    subject to all the conditions and modification they have

19    agreed to and the stalking horse is the backup at this

20    point.

21            MR. HUTTON:  So that we can understand where

22    the estate representatives are coming from, our bid is

23    $300,000 higher than the last bid and the closing date is

24    only 15 days later, could you explain why you are deeming

25    the Larkin bid to be better?

1          MR. BATTISTA:  This is Paul Battista for the

2    committee.  Although I'm not sure that we are required

3    to, I will give you my perspective.  It's not 15 days.

4    We have to assume you are going to exercise the option

5    for the additional 30 days, so we are still talking

6    about October 15th.  If you don't get AHCA approval by

7    October 15th, you, sir, could walk away and get your

8    deposit back.  At that point we don't have a backup

9    bidder, because they are only obligated for 60 days past

10   September 1st, which is of course only 15 days after your

11   expiration.  We can't expect them to get AHCA approval in

12   that 15 days.  So we essentially lose both bidders.  We

13   lose the backup bidder.

14          The September 1st date has been modified.

15   The bidders had moved it up from September 30th to

16   September 1st.  That allows the estate to keep both

17   bidders in place.  We may lose both bidders if AHCA

18   doesn't approve either one of them and we would be back

19   to square one.  But your bid creates much more wasted ---

20          MR. HUTTON:  Let me just explain that to

21   them.

22          MR. ZUCKERMAN:  We are going to go off the

23   record for another break.

24          (Thereupon, a recess was taken from 3:31 p.m.

25      until 4:10 p.m., after which the following

Page 50

1          proceedings were had.)

2                    MR. ZUCKERMAN:  Can we go back on the record,

3     please?

4                    I think we were clear as to where we stood

5     prior to taking a break.  Mr. Hutton is going to tell us

6     that his client is willing to do something.

7                    MR. HUTTON:  Yeah.  Thank you, Steven.  Thank

8     you for indulging us.

9                    John Hutton on behalf of FHH.  Our client

10    bids 23.3 on the same provisions mentioned previously,

11    except that our termination date is September 1st under

12    Section 12.4 of the contract.

13                    MR. ZUCKERMAN:  Mr. Hutton, can you confirm

14    on the record the modifications that you assume the

15    contract is the same as you indicated before that you

16    were removing, I believe, the Rx contract.

17                    MR. HUTTON:  Correct, we are removing the Rx

18    contract, Rx Pharmacy Pharmacy.  Actually, to be clear,

19    it's Rx First Pharmacy Services, Inc., which listed a

20    cure amount of 132,000 and change.

21                    MR. ZUCKERMAN:  Thank you, Mr. Hutton.

22                    In consultation with the debtors and the

23    committee -- there's one clarification.  Earlier I asked

24    all the bidders to confirm several points regarding the

25    backup bidder and removal of the escrow and removal of

1    the AHCA.

2              Can you just confirm, please, for the record

3    that your bid also includes those modifications?

4              MR. HUTTON:  Yes, it does.

5              THE COURT:  Base on that, the debtors and the

6    committee have determined that, Mr. Hutton, your client's

7    bid at 23.3 million, with an outside termination date of

8    September 1st is the highest and best bid.  With that, I

9    would ask the other bidders if they would like to submit

10   a bid?

11             MR. PERLMAN:  HPI would increase its prior

12   offer to $23,500,000 with the same conditions as before.

13             MR. ZUCKERMAN:  Thank you, Mr. Perlman.

14   Based on that, 23.5 million would be deemed the highest

15   and best bid.

16             Are the other bidders interested in

17   submitting a bid?  Mr. Hutton?

18             MR. HUTTON:  John Hutton, again, on behalf of

19   FHH, which now bids 23.6 on the same terms and conditions

20   mentioned previously.

21             MR. ZUCKERMAN:  Thank you, Mr. Hutton.  23.6

22   with all terms and modifications being the same it's the

23   highest and best bid.

24             Would anyone else like to submit a bid?

25             MR. PERLMAN:  HPI would increase its offer to

Page 52

1   $23,800,000.

2           MR, ZUCKERMAN:  23.8?

3           MR. PERLMAN:  Right.

4           MR. ZUCKERMAN:  Thank you, Mr. Perlman.  Your

5   bid at $23.8 million is the highest and best bid.

6           Anyone else like to submit a bid?

7           MR. HUTTON:  John Hutton, again, on behalf of

8   FHH.  We bid $24 million on the same terms and conditions

9   as mentioned previously.

10          MR. ZUCKERMAN:  Thank you, Mr. Hutton.

11  $24 million by Mr. Hutton's client is the highest and

12  best bid.

13          Mr. Perlman or anyone else like to submit?

14          MR. PERLMAN:  HPI would increase its offer to

15  $24,100,000.

16          MR. ZUCKERMAN:  Thank you, Mr. Perlman.

17  24.1 million on the same terms and conditions is the

18  highest and best bid.

19          I would ask anyone else or Mr. Hutton if they

20  would like to submit a bid?

21          MR. HUTTON:  John Hutton, again, on behalf of

22  FHH, which bids 24.2 million on the same terms and

23  conditions as indicated.

24          THE COURT:  Okay.  Mr. Hutton bids

25  24.2 million.  With all the clarifications and

Page 53

1    modifications, your client is the highest and best bid.

2              Mr. Perlman, would you like to make a bid?

3              MR. PERLMAN:  I think I would like to, but I

4    would request a 15 or 20 minute break.

5              MR. BATTISTA:  You got it.

6              MR. ZUCKERMAN:  It's 4:20.  I suggest we be

7    back at 4:35.

8              (Thereupon, a recess was taken from 4:20 p.m.

9         until 5:10 p.m., after which the following

10         proceedings were had.)

11             MR. ZUCKERMAN:  It's 5:10.  Back on the

12   record.

13             Prior to taking a break, Mr. Hutton submitted

14   a bid of $24.2 million on behalf of his client, which we

15   deemed the highest and best bid.  Mr. Perlman asked for a

16   brief recess so he could consult with his peers, and the

17   bid is to, Mr. Perlman, if you would like to submit a

18   higher and better bid.

19             MR. PERLMAN:  Yes, Alan Perlman on behalf of

20   HPI.  HPI would increase its bid to $24,400,000.  That's

21   in the form of the prior amount of $24,200,000, plus a

22   $200,000 credit against its allowed secured claim under

23   506 of the code.

24             MR. ZUCKERMAN:  Thank you, Mr. Perlman.

25             MR. BATTISTA:  Paul Battista for the

Page 54

1    committee.

2            Mr. Perlman, just to clarify, that last

3    component would be that whatever your client's ultimate

4    allowed secured claim would be to be determined by Judge

5    Olson or the settlement of the trial, you would then

6    reduce that ultimate allowed secure claim by $200,000; is

7    that what that meant?

8            MR. PERLMAN:  Yes, with the additional caveat

9    that that would include obviously postpetition interest

10   and ---

11           MR. BATTISTA:  Whatever your allowed secure

12   claim is determined by the Court?

13           MR. PERLMAN:  Yes.

14           MR. BATTISTA:  Okay.  Thank you.

15           MR. ZUCKERMAN:  Thank you, Mr. Perlman.

16   Based on that offer as the highest and best bid,

17   $24.4 million, I would ask the other bidders, Mr. Hutton

18   or anyone else if they would like to submit an additional

19   bid?

20           To be clear, the next highest bid would be

21   $24.5 million.

22           (Thereupon, a discussion was held off the

23       record, after which the following proceedings were

24       had.)

25           MR. BATTISTA:  Let's go back on the record.

1          Mr. Perlman, I'm misunderstanding.  Can you

2  clarify that your gross bid is $24.4 million, comprised

3  of $24.2 million cash and $200,000 credit of an

4  ultimately allowed secured claim.

5          MR. PERLMAN:  That is correct.

6          MR. BATISTA:  So the next bid would be

7  24.5 to your client, Mr. Hutton.

8          MR. HUTTON:  I need a break.

9          (Thereupon, a recess was taken, after which

10      the following proceedings were taken.)

11          MS. REDMOND:  I just want to announce for the

12  record that my client is ---

13          MR. ZUCKERMAN: Excuse me, back on the record.

14          MS. REDMOND:  For the purpose of the record

15  HH Acquisition is declining to bid any further and is

16  leaving right now.  So I will still be here, but my

17  client is going to be leaving.

18          MR. BARSON:  Not to be a copycat --

19              (Laughter.)

20          MR. BARSON:  -- but, also on the record Leon

21  Barson from Blank Rome, the stalking horse bidder does

22  not intend to bid any further, and I assume at this point

23  is not a backup bidder, unless you disagree with that,

24  and we would like permission to dismiss the stalking

25  horse bidder, although I'm happy to remain here.

Page 56

1          MR. ZUCKERMAN:  Well, I think we would need

2    confirmation from Mr. Hutton if he's not bidding any

3    further that they are agreeing to be the backup bidder,

4    which I think they've agreed to already, but we want

5    confirmation before you leave.

6          MR. BARSON:  Okay.

7          (Thereupon, a recess was taken from 5:14 p.m.

8       until 5:18 p.m., after which the following

9       proceedings were had.)

10         MR. ZUCKERMAN:  We are back on the record.

11   It's only 5:18.  Prior to taking the break, the last bid

12   was ---

13         MR. KAPILA:  I don't mean to interrupt, but

14   on the board it says, "Reduction of the allowed secured

15   claim," not unsecured.  Am I correct?

16         MR. ZUCKERMAN:  No, it's allowed secured.

17         MR. KAPILA:  So it should be secured?

18         MR. ZUCKERMAN:  Yes.

19         After taking a break, the last bid deemed the

20   highest and best was submitted by HPI, $24.4 million,

21   subject to the clarification made by Mr. Perlman and

22   Mr. Battista.

23         Ms. Redmond announced that her client was

24   leaving the auction and did not intend to make any

25   further bids.

Page 57

1            I believe the stalking horse has a similar

2    announcement to make.

3            MR. BARSON:  Leon Barson, Blank Rome for the

4    stalking horse.  The stalking horse has left the

5    building.  I'm still here and we don't intend to bid any

6    further and will await a determination as to whether you

7    think we are the backup bidder or not.  I think you want

8    some clarification from the other bidders as to whether

9    they are agreeing to be backup bidder on the terms that

10   you articulated.  But apart from that, we are just

11   listening --

12            MR. ZUCKERMAN:  Thank you.

13            MR. BARSON:  -- at least me, the remaining

14   party.

15            MR. ZUCKERMAN:  Thank you.

16            Mr. Hutton, would your client like to make a

17   bid at this point?

18            MR. HUTTON:  John Hutton, again, on behalf of

19   FHH.  FHH bids 24.5 on the same terms and conditions as

20   it gave previously.

21            MR. ZUCKERMAN:  Thank you, Mr. Hutton.

22   $24.5 million, that's the highest and best bid.

23            I would ask Mr. Perlman whether he would like

24   to submit another bid on behalf of his client?

25            MR. PERLMAN:  Alan Perlman on behalf of HPI.

1   HPI would increase its prior offer by increasing the

2   credit amount from 200 to 400,000 from its allowed

3   secured claim.

4           MR. ZUCKERMAN:  Mr. Perlman, can you please

5   clarify the ---

6           MR. PERLMAN:  Cash is $24,200,000, plus an

7   additional credit of 400,000 against its allowed secured

8   claim for a gross purchase price amount of $24,600,000.

9           MR. ZUCKERMAN:  Perfect.  Thank you.  Based

10  on that bid, Mr. Perlman, your client's bid is the

11  highest and best.

12          Mr. Hutton, the bid is to you at

13  24.7 million.

14          MR. HUTTON:  If I can request a

15  clarification.  I understand Larkin has the right to

16  credit bid up to 13.9 million.  Is this considered an

17  additional credit bid amount or has it being calculated?

18          MR. BATTISTA:  Paul Battista for the

19  committee.  I will defer to Mr. Perlman to correct me if

20  I'm wrong.  I don't view this as a credit bid.  I view it

21  as a direct reduction of their allowed secure claim.

22          The credit bid that was agreed to of

23  $13.9 million it didn't prevent them from essentially

24  reducing their secured claim, whatever is going to be

25  allowed.  I think that they ---

Page 59

1          MR. PERLMAN:  I think Mr. Battista's

2    explanation was correct.

3          MR. HUTTON:  So just for my edification is

4    that a credit bid then of 14.3?

5          MR. MARKOWITZ:  No, it has nothing to do with

6    the credit bid.

7          MR. BATTISTA:  So you know, you may not have

8    been part of this, but Mr. Perlman's claim is not yet an

9    allowed secured claim.  It is subject to a pending

10   adversary and ultimately to be decided by the Court.

11          In a settlement in advance of resolving that

12   allowed secured claim, the credit bid -- we agreed to

13   credit bid for the 2.9 million with certain conditions,

14   including the posting of a $2 million amount in his trust

15   account in the event the claim is less than 13.9 million.

16          The dispute over his claim still exists.  I

17   think he's simply saying if whatever that number is going

18   to be, he's going to reduce it by, in this context,

19   $400,000 more.

20          MR. ZUCKERMAN:  So to clarify and confirm,

21   Mr. Hutton, the bid to your client would be

22   $24.7 million.

23          MR. HUTTON:  We are done.  We are done.

24          MR. ZUCKERMAN:  Thank you.

25          Mr. Hutton, may I ask you to confirm, please,

1    on the record that, subject to your confirmation

2    previously, just to reiterate, that your client is going

3    to serve as backup bidder subject to the conditions we

4    discussed and you confirmed earlier on the record?

5              MR. HUTTON:  Yes, that would include our

6    deposit being held in an interest bearing account.

7              MR. ZUCKERMAN:  I think that concludes our

8    auction.  We appreciate everybody's time and interest,

9    and congratulate HPI for submitting the highest and best

10   bid and thank you very much for participating.

11             (Thereupon, the auction was concluded at

12        5:30 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 61

1                            CERTIFICATION

2

3    STATE OF FLORIDA        :

4    COUNTY OF MIAMI-DADE     :

5

6          I, Karen B. Patlak, Shorthand Reporter and Notary

7    Public  in  and  for  the  State  of Florida at Large, do

8    hereby certify that the foregoing proceedings  were taken

9    before me at the date and  place as stated in the caption

10   hereto  on  Page 1;  that  the  foregoing  computer-aided

11   transcription  is  a true record of my stenographic notes

12   taken at said proceedings.

13          WITNESS   my   hand   this   25th   day   of   June,

14   2015.

15

16

17          _____

18                    KAREN B. PATLAK

19              Court Reporter and Notary Public

20            in and for the State of Florida at Large

21                  Commission #FF 162365

22                  September 23, 2018

23

24

25