

**ORDERED in the Southern District of Florida on June 26, 2015.**

**John K. Olson, Judge
United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE:                                                          Case No.: 15-16388-JKO

HIGH RIDGE MANAGEMENT CORP., et al.,[1]        Chapter 11
                                                               (Jointly Administered)

    Debtors.

_____/

**ORDER (I) AUTHORIZING THE SALE OF THE DEBTORS' ASSETS FREE
AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER
INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT
OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN
CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

    THIS CAUSE came before the Court on June 25, 2015 at 9:30 a.m. in Fort

Lauderdale, Florida, upon the motion (the "Motion") [ECF No. 13] of High Ridge Management,

Corp. ("High Ridge") and Hollywood Hills Rehabilitation Center, LLC ("Hills"), two of the

above-captioned debtors and debtors in possession (the "Debtors" or "Sellers") in the above-

---

[1] The following cases are jointly administered pursuant to this Court's *Order Jointly Administering Chapter 11 Cases* [ECF No. 10], *In re High Ridge Management, Corp.*, Case No. 15-16388-JKO, *In re Hollywood Hills Rehabilitation Center, LLC,* Case No. 15-16389-RBR, and *In re Hollywood Pavilion, LLC*, Case No. 15-16390-RBR.

captioned cases (the "Chapter 11 Cases"), pursuant to sections 105(a), 363, 365 and 1123 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004, 6006, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 6004-1, 6006-1 and 9075-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules"), seeking entry of an order (this "Order"), among other things, (i) authorizing the sale of substantially all of the assets (collectively, the "Purchased Assets")[2] of Sellers to Hollywood Property Investments, LLC or its assigns ("HPI" or the "Buyer") or, if the Sale Agreements (defined below) with the Buyer are terminated in accordance with the provisions thereto, then to Florida Home & Health 2012, LLC or its assigns (the "Back-Up Buyer")[3], pursuant to those certain Asset Purchase Agreements ("APA") and those certain Agreements for Purchase and Sale ("Real Estate Agreement" and together with the APA, the "Sale Agreements")[4], respectively, free and clear of all liens, claims and encumbrances and other interests ("Liens and Claims"), including, without limitation, rights or claims based on successor or transferee liability, except to the extent specifically provided in the Sale Agreements (the "Sale Transaction"), (ii) authorizing the assumption and assignment of those certain executory

---

[2] For the avoidance of doubt, as defined herein, "Purchased Assets" shall mean the Assets (as defined in the APA) and the Purchased Assets (as defined in the Real Estate Agreement), including, but not limited to real property and improvements thereto, whose legal description is attached to this Order as **Exhibit A**.

[3] To the extent the Buyer or Back-Up Buyer assigns its rights under the Sale Agreements, in whole or in part, to one or more designees or assignees, any such designee or assignee shall be deemed to be a "Buyer" or "Back-Up Buyer" as and to the extent of such assignment(s) and thereby entitled to all of the benefits and protections afforded hereunder.

[4] Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Sale Agreements. The Sale Agreements are being filed on June 26, 2015 under a separate notice of filing. If the Sale Agreements with the Buyer are terminated in accordance therewith, and the Debtors thereafter consummate the Sale Transaction with the Back-Up Buyer, then the Debtors shall file copies of the Sale Agreements executed with the Back-Up Buyer under a separate notice of filing and provide notice of filing same to parties in interest. The Back-Up Buyer submitted a different form of APA and Real Estate Agreement, which was agreed to by the parties, except as modified on the record at the Auction and in this Order to include, among other things, additional executory contracts to be assumed and assigned to the Back-Up Buyer, and to require that the good faith deposit be placed into an interest bearing account.

contracts and unexpired leases set forth in the Sale Agreements in connection with the Sale Transaction (the "Assumed Contracts")[5], and (iii) granting certain related relief, all as more fully described in the Motion and the Sale Agreements; and the Court having entered an order on May 12, 2015 (the "Bidding Procedures Order", see ECF No. 122) (a) authorizing and approving bidding procedures for submitting bids for the purchase of the Purchased Assets ("Bidding Procedures") and conducting an auction for the Purchased Assets (the "Auction"), (b) authorizing and approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale Transaction (the "Assumption and Assignment Procedures"), (c) scheduling a deadline to submit bids for the Purchased Assets, the date and time of the Auction, and the date and time of the hearing to consider the approval of the proposed sale of the Purchased Assets (the "Sale Hearing"), (d) authorizing the form and manner of notice of the Auction, the Sale Hearing, the Bid Deadline (as that term is defined in the Bidding Procedures), the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale Transaction, and the date, time and place of the Sale Hearing, and (e) granting certain related relief; and the Debtors, in consultation with the Official Committee of Unsecured Creditors of Hollywood Hills Rehabilitation Center, LLC (the "Committee"), having selected the combined bid made by the Buyer at the Auction having been conducted on **June 24, 2015**; and the Debtors having determined, in consultation with the Committee, that the Buyer's combined bid for the Purchased Assets was the highest and best bid, and that of the Back-Up Buyer being the next highest and best bid; and the Sale Hearing having

---

[5] For informational purposes, the Assumed Contracts include only the Provider Agreements and the Resident Agreements (each as defined in the APA) and the Larkin Lease (as defined in the Real Estate Agreement). The Buyer did not specify any other contracts, agreements, or leases for assumption and assignment and, therefore, no other contracts, agreements, or leases are being assumed and assigned to the Buyer in connection with the Sale Transaction. However, the Back-Up Buyer submitted a different and more expanded list of Assumed Contracts, which will be identified in the form of Sale Agreements with the Back-Up Buyer that are filed with the Court, as referenced in footnote 4 above.

been held on **June 25, 2015**; and upon the record of the Sale Hearing, the proffer of evidence in connection therewith by counsel to the Debtors which was accepted by the Court, and all of the proceedings held before the Court; and the Court having reviewed the Motion and all affidavits, declarations, responses, and objections thereto, if any, and having found and determined that the relief requested in the Motion is in the best interests of the Debtors, the estates and creditors, notice was sufficient under all applicable rules, and all parties in interest, and that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**IT IS FOUND AND DETERMINED, that:**[6]

### Jurisdiction and Venue

A.     This Court has jurisdiction over the Motion, the Sale Agreements, the Sale Transaction, the assumption and assignment of the Assumed Contracts, and all of the other transactions contemplated by the Sale Agreements, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).   Venue of these cases and proceedings is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

### Statutory Predicates

B.     The statutory predicates for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9008, and 9014.

---

[6] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

### Final Order

C.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order and that waiver of any applicable waiting period is appropriate, and expressly directs entry of judgment as set forth herein.

### Compliance with Bidding Procedures Order

D.     As demonstrated by (i) the testimony and other evidence proffered or introduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have thoroughly and fairly marketed the Purchased Assets and conducted the related sale process in good faith and in compliance in all respects with the Bidding Procedures and the Bidding Procedures Order.  All interested persons and entities have been afforded a full, fair, and reasonable opportunity to (i) conduct due diligence investigations, (ii) submit bids and to submit higher or otherwise better bids to purchase the Purchased Assets, and (iii) object or be heard with respect to the Motion and the relief granted by this Order.  The Bidding Procedures were non-collusive, designed and implemented in good faith, substantively and procedurally fair to all parties, and obtained the highest and best value for the Purchased Assets for the Debtors, their creditors, and the estates. In accordance with the Bidding Procedures, the Debtors determined that the combined bid submitted by the Buyer and reflected in and memorialized by the Sale Agreements is the highest and best bid for the Purchased Assets.

### Notice

E.     As evidenced by the affidavits and certificates of service previously filed with the Court, and based on the representations of counsel at the Bidding Procedures Hearing

and the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures, the Assumption and Assignment Procedures, the Auction, the Bidding Procedures Hearing, the Sale Transaction and the assumption and assignment of the Assumed Contracts, all of the other transactions contemplated by the Sale Agreements, and the Sale Hearing have been provided in accordance with Bankruptcy Rules 2002(a), 6004(a), 6006(c), 9008 and 9014 and all applicable provisions of the Bankruptcy Code and the Local Rules and in compliance with the Bidding Procedures Order; (ii) such notice was good, sufficient, reasonable, and appropriate under the particular circumstances of the Debtors' Chapter 11 Cases, and reasonably calculated to reach and apprise all holders of Liens and Claims, and other interests, including, without limitation, any holder asserting any rights or claims based on any successor or transferee liability, about the Motion, the Bidding Procedures, the Assumption and Assignment Procedures, the Auction, the Bidding Procedures Hearing, the Sale Transaction and the assumption and assignment of the Assumed Contracts, all of the other transactions contemplated by the Sale Agreements, and the Sale Hearing; and (iii) no other or further notice of the Motion, the Bidding Procedures, the Assumption and Assignment Procedures, the Auction, the Bidding Procedures Hearing, the Sale Transaction and the assumption and assignment of the Assumed Contracts, and any other transactions contemplated by the Sale Agreements, the Sale Hearing, or any matters in connection therewith, is or shall be required. With respect to entities whose identities are not known or reasonably ascertainable by the Debtors, notice of the Auction was sufficient and reasonably calculated, under the circumstances, to and did provide adequate notice to such entities.

F.       On May 15, 2015, June 12, 2015 and June 22, 2015, the Debtors served notices (the "Assumption and Assignment Notices") of the potential assumption and assignment of the Assumed Contracts on the counterparties to such Assumed Contracts, which notices

included (i) the Assumed Contracts that could potentially be assumed and assigned, (ii) the name of the counterparties to such Assumed Contracts, (iii) the amount, if any, determined by the Debtors to be necessary to be paid (the "Cure Amounts") as of the date of the Assumption and Assignment Notices upon the assumption of the Assumed Contracts, and (iv) the deadline by which any counterparty to any of the Assumed Contracts must object to the possible assumption by the Debtors and assignment to the Buyer of the Assumed Contracts. *See* ECF Nos. 150, 196 and 207. The service of such Assumption and Assignment Notices was good, sufficient, and appropriate under the particular circumstances, and no other or further notice(s) of the assumption and assignment of the Assumed Contracts or the applicable Cure Amounts is/are required. Each counterparty to an Assumed Contract has had an opportunity to object to the assumption by the Debtors and the assignment to the Buyer of the Assumed Contracts and to the applicable Cure Amounts set forth in the Assumption and Assignment Notices.

## **Corporate Authority**

G.      The Debtors (i) have full corporate power and authority to execute and deliver the Sale Agreements and all other documents contemplated thereby, (ii) have all of the necessary corporate power and authority to consummate the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, (iii) have taken all corporate action necessary to authorize and approve the Sale Agreements and the consummation by the Debtors of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, and (iv) subject to entry of this Order, need no consents or approvals, other than those expressly set forth in the Sale Agreements, to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

**Good Faith**

H.        The Buyer and Back-Up Buyer are good faith purchasers within the meaning of Section 363(m) of the Bankruptcy Code, and are therefore entitled to the full protection of that provision and any other applicable or similar provisions under applicable bankruptcy and non-bankruptcy law.  The Buyer and Back-Up Buyer have at all times acted in good faith within the meaning of Section 363(m) of the Bankruptcy Code in pursuing and consummating the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts. The Sale Agreements and the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, were negotiated, proposed, and entered into by the Debtors and the Buyer, and if applicable, the Back-Up Buyer, without collusion, in good faith, and from arm's length bargaining positions, and such parties are "unrelated" for purposes of ERISA Section 4204, as may be applicable.  None of the Sellers, the Buyer, Back-Up Buyer, or their respective agents, officials, personnel, representatives, and advisors, have engaged in any conduct that would cause or permit the avoidance of the Sale Agreements or any of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, or the imposition of costs, fees, expenses, or damages under Section 363(n) of the Bankruptcy Code.  Neither the Buyer, the Back-Up Buyer nor their agents, officials, personnel, representatives, or advisors is/are an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

**Business Justification**

I.        The Debtors have demonstrated good, sufficient, and sound business reasons and compelling circumstances to enter into the Sale Agreements and to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the

assumption and assignment of the Assumed Contracts, and such actions are appropriate and reasonable exercises of the Debtors' business judgment and in the best interests of the Debtors, the estates and creditors, and other parties in interest. Such business reasons include, but are not limited to, the facts that (i) the Sale Agreements and the terms thereof constitute the highest and best offer for the Purchased Assets and provide fair and reasonable consideration for the Purchased Assets, (ii) no other entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors or the estates than the Buyer, and if applicable, the Back-Up Buyer, (iii) the Sale Transaction, under and pursuant to the terms of the Sale Agreements, presents the best opportunity to realize the value of the Purchased Assets and avoid decline and devaluation of the Purchased Assets, (iv) the consideration to be provided by the Buyer, and if applicable, the Back-Up Buyer, under the Sale Agreements exceeds the liquidation value of the Purchased Assets, and (v) unless the Sale Transaction and all of the other transactions contemplated by the Sale Agreements are concluded expeditiously as provided for in the Motion and pursuant to the Sale Agreements, recoveries to creditors may be diminished. The Debtors' determination, after consultation with the Committee, that the Sale Agreements constitute the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

        J.     The terms and conditions of the Sale Agreements, including, without limitation, the consideration to be realized by the Debtors pursuant to the Sale Agreements, are fair and reasonable. Approval of the Motion, the Sale Agreements, and the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, is in the best interest of the Debtors, the estates and creditors, and all other parties in interest.

**No Fraudulent Transfer**

K.      The consideration provided by the Buyer, or Back-Up Buyer as applicable, for the Purchased Assets pursuant to the Sale Agreements (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States and of each state, territory, possession, and the District of Columbia.

L.      The Buyer, and the Back-Up Buyer, as applicable, is not a mere continuation of the Debtors or the estates, there is no continuity or common identity between the Buyer and the Debtors, and there is no continuity of enterprise between the Buyer (or Back-Up Buyer, as applicable) and the Debtors.  Neither the Buyer nor the Back-Up Buyer is holding itself out to the public as a continuation of the Debtors.  The Buyer (or the Back-Up Buyer, as applicable) is not a successor to the Debtors or the estates, and none of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction or the assumption and assignment of the Assumed Contracts, amounts to a consolidation, merger, or de facto merger of the Buyer (or the Back-Up Buyer, as applicable) with or into the Debtors.  None of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction or the assumption and assignment of the Assumed Contracts, is being undertaken for the purpose of escaping liability for the Debtors' debts or hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States or of any state, territory, possession or the District of Columbia.

**Free and Clear**

M.      The transfer of the Purchased Assets to the Buyer (or Back-Up Buyer, as applicable) shall be legal, valid, and effective transfers of the Purchased Assets, and will vest the Buyer (or Back-Up Buyer, as applicable) with all right, title, and interest of the Sellers in and to the Purchased Assets, free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims (for purposes of this Order, the term "claim" shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code) based on any successor or transferee liability, including, without limitation, (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or the Buyer's (or Back-Up Buyer's, as applicable) interest in the Purchased Assets or any similar rights, and (ii) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, Liens and Claims, judgments, demands, rights of first refusal or charges of any kind or nature, if any, including, without limitation, any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership, and (b) all claims arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of the Debtors' Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, without limitation, claims otherwise arising under doctrines of successor or transferee liability, or under federal or state tax laws.

N.      The Debtors shall transfer the Purchased Assets free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any successor or transferee liability, which is hereby authorized

because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those (i) holders of Liens and Claims, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, and (ii) non-Debtor parties to the Assumed Contracts, who did not object or who withdrew their objections to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those (i) holders of Liens and Claims, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, and (ii) non-Debtor parties to the Assumed Contracts who did object, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code, including, without limitation, section 363(f)(5) of the Bankruptcy Code, because the holders of any such interest(s) could be compelled in a legal or equitable proceeding to accept monetary satisfaction on account of such interest(s), and are adequately protected by having their interest(s), if any, attach to the proceeds of the Sale Transaction ultimately attributable to the Purchased Assets in which each such creditor alleges an interest, in the same order of priority, with the same validity, force, and effect that each such creditor had prior to the sale, subject to any claims and defenses the Debtors, the estates, or other parties may possess with respect thereto. To be clear, notwithstanding any provision herein, the lien rights of HPI shall attach to the proceeds of the Sale Agreements and Sale Transaction, with the same right, priority and dignity that existed as of the Petition Date relative to the Debtors and/or Purchased Assets.

      O.    The Buyer (and Back-Up Buyer, as applicable) would not have entered into the Sale Agreements and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, (i) if the transfer of the Purchased Assets was not free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever, including, without limitation,

12

rights or claims based on any taxes or successor or transferee liability, or (ii) if the Buyer (and Back-Up Buyer, as applicable) would, or in the future could, be liable for any such Liens and Claims, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability (subject only, in the case of the Buyer with respect to the Purchased Assets, to the Assumed Liabilities).  The Buyer (and Back-Up Buyer, as applicable) will not consummate the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, unless this Court expressly orders that the Buyer (and Back-Up Buyer, as applicable), or any of their affiliates, their present or contemplated members, partners, officers, directors or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens and Claims, or other interests, including, without limitation, rights or claims based on any taxes, successor or transferee liability, except for only the Assumed Liabilities.

P.    Not transferring the Purchased Assets free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on successor or transferee liability, except for only the Assumed Liabilities, would adversely impact the Debtors' efforts to maximize the value of the estates, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

Q.    The Buyer (and Back-Up Buyer, as applicable) would not have entered into the Sale Agreements and will not consummate the transactions contemplated thereby unless this Court expressly orders that, without limiting the generality of the foregoing, none of the

Buyer (and the Back-Up Buyer, as applicable), their affiliates, their present or contemplated members, managers, partners, officers, directors or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens and Claims, or other interests relating to any U.S. federal, state, or local tax liabilities, including, without limitation, any such tax liabilities that are attributable to the recapture of an excess loss account under Treasury Regulation Section 1.1502-19 (or any similar provision of state or local tax law), that the Debtors are or may be liable for or incur in connection with consummation of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

## Validity of Transfer

R.    The consummation of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363, and 365, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Sale Agreements.

S.    The Purchased Assets constitute property of the Debtors' estates, and good title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors are the sole and lawful owners of the Purchased Assets, and no other person has any ownership right, title, or interest therein.

## Assumed Contracts

T.    The assumption and assignment of the Assumed Contracts, free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever, pursuant to the

terms of this Order is integral to the transactions contemplated by the Sale Agreements and is in the best interest of the Debtors, the estates and creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound and prudent business judgment.

U.    Pursuant to the terms of the Sale Agreements, by the Closing Date and to the extent necessary, the Debtors shall have: (i) cured or provided adequate assurance of cure of, any monetary default existing as of the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and (ii) provided compensation, or adequate assurance of compensation, to any party for actual pecuniary loss to such party resulting from a monetary default existing as of the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

V.    The Buyer (and Back-Up Buyer as applicable) has demonstrated adequate assurance of its future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Assumed Contracts to be assumed and assigned under the Sale Agreements shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer (or Back-Up Buyer as applicable) notwithstanding any provision in the contracts or other restrictions prohibiting the assignment or transfer.

## Compelling Circumstances for an Immediate Sale

W.    To maximize the value of the Purchased Assets and preserve the viability of the Business to which the Purchased Assets relate, it is essential that the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, occur within the time constraints set forth in the Motion and the Sale Agreements.  Time is of the essence in consummating the transactions

contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

    X.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the approval and consummation of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, prior to, and outside of, a chapter 11 plan.  The transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a chapter 11 plan for the Debtors, and therefore do not constitute a <u>sub</u> <u>rosa</u> plan.

    Y.  Given all of the circumstances of the Debtors' Chapter 11 Cases and the adequacy and fair value of the purchase price under the Sale Agreements, the consummation of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, constitutes a reasonable and sound exercise of the Debtors' business judgment.

**IT IS THEREFORE ORDERED THAT:**

**<u>General Provisions</u>**

    1.  The Motion is **GRANTED** as provided herein, and entry into and performance under, and in respect of, the Sale Agreements and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, are **AUTHORIZED** and **APPROVED**. The Motion complies with all provisions of Local Rule 6004-1 other than those previously waived by the Court.

2.      The conditional and limited objection filed by HPI as to the purchase price allocation [ECF No. 199] is **WITHDRAWN IN PART** as to the Sale Transaction with Buyer, but is **PRESERVED** to the extent that the Sale Transaction does not close with the Buyer and the Debtors seek to close on the Sale Transaction with the Back-Up Buyer. The conditional and limited objection filed by Larkin Community Hospital Behavioral Health Services Inc. [ECF No. 200] is **WITHDRAWN** as moot in that no sale will be free and clear of its lease with High Ridge. The objection to proposed cure amount filed by Quality Care Rehab, Inc. [ECF No. 201] is **OVERRULED** as moot because the Sale Agreements do not contemplate assumption and assignment of the contract with Quality Care Rehab, Inc. The limited objection filed by the Committee [ECF No. 202] is **OVERRULED** as moot, except regarding the Back-Up Buyer as to the purchase price allocation and the reservation of rights by the Committee in respect of the revocation of the Debtors' subchapter S election as outlined in the Committee's limited objection, which are **PRESERVED**. Any other objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice.

3.      This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein by reference.

<u>**Approval of the Sale Agreements**</u>

4.      The Sale Agreements and all ancillary documents thereto, and the transactions contemplated thereby, including the Sale Transaction and the assumption and assignment of the Assumed Contracts and all the terms and conditions thereof, are **APPROVED**. If there is any conflict between the Sale Agreements and this Order, this Order shall govern.

5.      The purchase price allocation set forth in the Sale Agreements with Buyer is **APPROVED**.  The Sellers and Buyer are authorized to and shall allocate the $24,600,000 purchase price as follows: (a) $17,500,000 to the Purchased Assets regarding High Ridge; and (b) $7,100,000 to the Purchased Assets regarding Hills. To the extent the Sellers close on a Sale Transaction with the Back-Up Buyer, the purchase price allocation set forth herein is not binding on the Back-Up Buyer, and the parties shall negotiate in good faith as to the allocation, consistent with the terms of the Sale Agreements with the Back-Up Buyer. The Debtors, in consultation with the Committee, shall seek approval of any contemplated purchase price allocation that differs from that approved hereinabove. The rights of parties in interest to object to any such allocation by and among the Sellers and Back-Up Buyer are preserved.

6.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to perform their obligations under, and comply with the terms of, the Sale Agreements, and all ancillary documents thereto, and to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, pursuant to, and in accordance with, the terms and provisions of the Sale Agreements and this Order.

7.      The Debtors are authorized to execute and deliver, and empowered to perform under, consummate, and implement, the Sale Agreements, together with all additional instruments and documents that the Sellers or the Buyer (and Back-Up Buyer as applicable) reasonably deem necessary or appropriate to implement the Sale Agreements and effectuate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, and to take all further actions as may reasonably be required by the Buyer (and Back-Up Buyer as applicable) for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer (or Back-Up Buyer as

applicable) or reducing to possession the Purchased Assets, or as may be necessary or appropriate to the performance of any other obligations as contemplated by the Sale Agreements. The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any amounts that become payable by the Debtors pursuant to the Sale Agreements (and any related agreements executed in connection with the Sale Transaction). Such amounts shall (i) constitute allowed administrative expenses of the Debtors' estates under Section 503(b)(1) and 507(a)(2) of the Bankruptcy Code; (ii) be treated with such priority if the Chapter 11 Cases convert to cases under Chapter 7 of the Bankruptcy Code; and (iii) not be discharged, modified, or otherwise affected by any reorganization plan for the Debtors, except by written agreement with the Buyer (and Back-Up Buyer as applicable). The Debtors shall file and serve notice of the consummation of the occurrence of the Closing on the Sale Agreements.

8.      This Order and the Sale Agreements shall be binding in all respects upon the parties and their respective successors (including any trustee, receiver, receiver-manager, interim receiver or monitor, or similar officer appointed in respect of Sellers in the Debtors' Chapter 11 Cases) and permitted assigns and designees.

9.      Nothing contained in any plan confirmed in the Debtors' Chapter 11 Cases, any order confirming any such plan, any order converting any of the Debtors' Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or any order dismissing the Debtors' bankruptcy cases, shall conflict with or derogate from the provisions of the Sale Agreements or this Order in any material way. The terms hereof shall survive any subsequent conversion or dismissal.

10.      To the fullest extent permitted under applicable law, the Buyer (and Back-Up Buyer as applicable) shall be authorized (but not directed), as of the Closing Date, to operate under any licenses, permits, registrations, and government authorizations or approvals of the

Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer (or Back-Up Buyer as applicable) as of the Closing Date; provided, however, that nothing in the Sale Agreements or this Order shall authorize the transfer of a permit or license without governmental approval where applicable non-bankruptcy law requires governmental approval of such transfer; provided, further, that the foregoing is not intended to modify the protections provided by section 525 of the Bankruptcy Code, to the extent applicable.

11.     The Debtors are authorized to immediately return the good faith deposits of the Qualified Bidders other than the Buyer and Back-Up Buyer. The good faith deposit of the Back-Up Buyer shall be immediately placed into an interest-bearing account maintained by the Debtors that is mutually acceptable to the parties, and shall be immediately returned to the Back-Up Buyer upon the closing with Buyer. The "Failure to Close" date under section 12.4 of the APA with the Back-Up Buyer is the date that is the earlier of 60 days from: (a) termination of Sale Agreements with Buyer; or (b) September 1, 2015.

12.     The Debtors are authorized and directed to pay the Breakup Fee and Expense Reimbursement in the aggregate amount of $585,000 to Hollywood Hills Operator, LLC and 1200 North 35th Avenue, LLC (collectively, the "Stalking Horse Bidder") at closing from the proceeds of the Sale Transaction with Buyer (or the Back-Up Buyer as applicable), with each Debtor paying a pro-rata share based upon the purchase price allocation which amounts shall be: (a) $416,158.54 from High Ridge; and (b) $168,841.46 from Hills. The Stalking Horse Bidder shall immediately withdraw, or cause to be withdrawn, any application it filed with the Florida Agency for Health Care Administration requesting a change of ownership of the nursing home license currently in the name of Hollywood Hills Rehabilitation Center, LLC. If the Sale Agreements with the Buyer are terminated in accordance with the terms thereof, absent further

order of the Court, the Buyer shall immediately withdraw, or cause to be withdrawn, any application it filed with the Florida Agency for Health Care Administration requesting a change of ownership of the nursing home license currently in the name of Hollywood Hills Rehabilitation Center, LLC.

**Transfer of the Purchased Assets Free and Clear of Liens and Claims**

13.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, in accordance with the Sale Agreements, (a) the Purchased Assets shall be transferred to the Buyer, or the Back-Up Buyer if the Buyer fails to close, and (b) the Purchased Assets shall be free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, with any such Liens, Claims and interests to attach to the proceeds of the Sale Transaction.

14.      Except as expressly permitted or otherwise specifically provided by the Sale Agreements or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, and other creditors, holding or asserting Liens and Claims, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in the Sellers or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Sellers and the Purchased Assets, the use or operation of the Purchased Assets prior to the Closing Date, or the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, are forever barred, estopped, and permanently enjoined

from asserting such persons' or entities' Liens and Claims, or other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against the Buyer (or the Back-Up Buyer as applicable), and its respective successors and permitted assigns or designees, its respective property and the Purchased Assets.

15.     This Order (a) shall be effective as a determination that, as of the Closing Date, (i) no Liens and Claims, or other interests of any kind or nature shall be assertable against the Buyer (or the Back-Up Buyer as applicable), its affiliates, its present or contemplated members, managers, partners, officers, directors or shareholders, successors or permitted assigns or designees, or any of its or their respective assets (including, without limitation, the Purchased Assets), (ii) the Purchased Assets shall have been transferred to the Buyer (or the Back-Up Buyer as applicable) free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever, and (iii) the transfers described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Sale Agreements.

16.     The transfers of the Purchased Assets to the Buyer (or Back-Up Buyer as applicable) in accordance with the Sale Agreements constitute legal, valid, and effective transfers

of the Purchased Assets and shall vest the Buyer (or Back-Up Buyer as applicable) with all right, title, and interest of the Sellers in and to the Purchased Assets, free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, as set forth in sections 105 and 363(f) of the Bankruptcy Code.

17.    On the Closing Date, the Debtors' creditors and any other holder of a Lien and Claim, or other interest of any kind or nature whatsoever is authorized and directed to execute such documents and take all other actions as may be necessary to release its Lien and Claim, or other interest in the Purchased Assets, if any, as such Lien and Claim, or other interest may have been recorded or may otherwise exist.

18.    If any person or entity that has filed financing statements, mortgages, mechanic's Liens, *lis pendens*, or other documents or agreements evidencing a Lien and Claim, or other interest in and against the Purchased Assets shall not have delivered to the Sellers prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens and Claims, or other interests that the person or entity has with respect to the Purchased Assets, or otherwise, then (a) the Sellers and the Buyer (or the Back-Up Buyer as applicable) are each authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Sellers and the Purchased Assets, and (b) the Buyer (or the Back-Up Buyer as applicable) is authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Liens and Claims, and other interests of any kind or nature whatsoever in and against the Purchased Assets.

19.    On the Closing Date, all persons or entities in possession of any of the Purchased Assets, including, but not limited to Jon Steinmeyer, the receiver, are directed to

surrender and turnover possession of such Purchased Assets to the Buyer (or the Back-Up Buyer as applicable).

20.     Following the Closing Date, neither the Debtors, nor their affiliates, or any creditor or holder of any Lien and Claim, or other interest of any kind or nature whatsoever shall interfere with the Buyer's (or the Back-Up Buyer's, as applicable) title to, or use and enjoyment of, the Purchased Assets, based on, or related to, any such Lien and Claim, or other interest, or based on any actions the Debtors may take in the bankruptcy cases or otherwise.

21.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to the Buyer (or the Back-Up Buyer as applicable) in accordance with the Sale Agreements and this Order; provided, however, that the foregoing restriction shall not prevent any person or entity from appealing this Order or opposing any appeal of this Order.

22.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to grant or renew any permit, license, or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of the Debtors' Chapter 11 Cases or the consummation of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

## Assumption and Assignment of the Assumed Contracts

23.     Except as otherwise expressly provided in the Sale Agreements or this Order, upon the Closing Date, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors are authorized to assume each of the Assumed Contracts free and clear of all Liens and Claims, and other interests of any kind or nature whatsoever. However, the Sale Transaction authorized herein shall not be free and clear of the Larkin Lease in any manner.

24.     There are no Cure Amounts owing in connection with the Assumed Contracts, except as set forth in the Assumption and Assignment Notices. *See* ECF Nos. 203 and 207.  To the extent that an Assumed Contract constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, all requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors of such Assumed Contracts have been satisfied.  Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, (i) the Buyer (or the Back-Up Buyer as applicable) shall be fully and irrevocably vested with all right, title and interest of the Debtors in, to and under the Assumed Contracts, in accordance with the terms of the Sale Agreements, (ii) the Buyer (or the Back-Up Buyer as applicable) shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts, in accordance with the terms of the Sale Agreements, and (iii) the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Contracts.

25.     The Buyer (and Back-Up Buyer) has provided adequate assurance of future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

26.     There shall be no right to payment, termination, modification, acceleration or cancellation, assignment fees, increases, or any other fees charged to the Debtors or the Buyer (or Back-Up Buyer as applicable) as a result of the execution and delivery by Buyer (or Back-Up Buyer as applicable) of the Sale Agreements or any related documents, the consummation of the Sale Transaction, or the compliance by Buyer with any provisions in the Sale Agreements.  The validity of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, shall not be affected by any dispute between the Debtors or their affiliates and another party to an Assumed

Contract regarding the payment of any amount, including any cure amount under the Bankruptcy Code.  Upon assignment to the Buyer (or the Back-Up Buyer as applicable), the Assumed Contracts shall be valid and binding, in full force and effect, and enforceable by the Buyer (or the Back-Up Buyer as applicable) in accordance with their respective terms.

27.    Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assumed Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the Buyer (or Back-Up Buyer as applicable) any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts and existing as of and including the Closing Date, or under the Sale Agreements or arising by reason of the consummation of transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.  Any party that may have had the right to consent to the assignment of an Assumed Contract is deemed to have consented to such assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise, if such party failed to timely object to the assumption and assignment of such Assumed Contract.

## No Successor or Transferee Liability

28.    None of the Buyer (or Back-Up Buyer as applicable), its present or contemplated members, managers, partners. officers, directors or shareholders, its or their respective successors or permitted assigns or designees, or any of the foregoing's respective affiliates, agents, officials, personnel, representatives, or advisors shall have any liability for any claim assertable against the Debtors or the estates or related to the Purchased Assets.  The Buyer (or Back-Up Buyer as applicable) shall not be deemed, as a result of any action taken in connection with the Sale Agreements or any of the transactions or documents ancillary thereto or contemplated thereby, or in connection with the transfer of the Purchased Assets, (a) to be a legal

successor, or otherwise be deemed a successor to the Debtors, (b) to have, *de facto* or otherwise, merged with or into the Debtors, or (c) to be a mere continuation or substantial continuation of the Debtors or the Business or enterprise of the Debtors.  Without limiting the foregoing, the Buyer (or Back-Up Buyer as applicable) shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, without limitation, under any theory of successor or transferee liability, *de facto* merger or continuity, environmental, tax, labor and employment, products, or antitrust liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

29.    Effective upon the Closing Date, and except as otherwise expressly provided in this Order, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding, against the Buyer (or Back-Up Buyer as applicable), its past, present, or contemplated members, managers, partners, officers, directors or shareholders, its or their respective predecessors, successors or permitted assigns or designees, or affiliates, or its or their respective assets, including, without limitation, the Purchased Assets, with respect to any claim against the Debtors, including, without limitation, the following actions: (a) commencing or continuing any action or other proceeding pending or threatened against the Debtors as against the Buyer (or the Back-Up Buyer as applicable), its respective past, present, or contemplated members, managers, partners, officers, directors or shareholders, its respective predecessors, its respective successors or permitted assigns or designees, or affiliates, or its respective assets, including, without limitation, the Purchased Assets, (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtors as against the Buyer (or the Back-Up

Buyer as applicable), its respective past, present, or contemplated members, partners, officers, directors or shareholders, its respective predecessors, its respective successors or permitted assigns or designees, or affiliates, or its respective assets, including, without limitation, the Purchased Assets, (c) creating, perfecting, or enforcing any Lien and Claim, or interest against the Debtors as against the Buyer (or Back-Up Buyer as applicable), its respective past, present, or contemplated members, officers, directors, partners or shareholders, its respective predecessors, its respective successors or permitted assigns or designees, or affiliates, or its respective assets, including, without limitation, the Purchased Assets, (d) asserting any setoff, right of subrogation, recapture, or recoupment of any kind for any obligation of the Debtors as against any obligation due the Buyer (or Back-Up Buyer as applicable), its respective past, present, or contemplated members, officers, directors, partners or shareholders, its respective predecessors, its respective successors or permitted assigns or designees, or affiliates, or its respective assets, including, without limitation, the Purchased Assets, (e) commencing or continuing any action, in any manner or place, that does not comply, or is inconsistent with, the provisions of this Order, or the agreements or actions contemplated or taken in respect thereof, or (f) revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the Businesses operated with such assets.

30.    Except for only the Assumed Liabilities (solely in the case of the Buyer, or Back-Up Buyer, as applicable, with respect to the Purchased Assets) or as expressly provided in the Sale Agreements or this Order, the Buyer (or Back-Up Buyer as applicable) shall not have any liability or responsibility for any liability or other obligation of the Sellers or their estates arising under or related to the Purchased Assets.    Without limiting the generality of the foregoing, and except as expressly provided in the Sale Agreements or this Order, the Buyer (or Back-Up Buyer as applicable) shall not be liable for any Liens and Claims, or other interests of

any kind or nature against the Sellers or their estates or any of their predecessors or affiliates, and the Buyer (or Back-Up Buyer as applicable) shall have no successor, transferee, or vicarious liabilities of any kind or character, including, without limitation, liabilities based on any theory of antitrust, environmental, tax, successor, or transferee liability, labor law, *de facto* merger, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Sellers or their estates or any obligations of the Sellers or their estates arising prior to the Closing Date.

31.    After the Closing Date, the Sellers shall have no liability or responsibility for the Assumed Liabilities associated therewith.

32.    Without limiting the generality of the foregoing, neither the Buyer (or Back-Up Buyer as applicable) nor its respective past, present, or contemplated members, managers, partners, officers, directors or shareholders, its respective predecessors, successors or permitted assigns or designees, or affiliates or the Purchased Assets shall have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens and Claims, and other interests relating to any U.S. federal, state, or local tax liabilities (income or otherwise), including, without limitation, any such tax liabilities that are attributable to the recapture of an excess loss account under Treasury Regulation Section 1.1502-19 (or any similar provision of state or local tax law), that the Debtors are obligated for or incur in connection with consummation of the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

33.    This Order (a) shall be effective as a determination that, except for only the Assumed Liabilities (solely in the case of the Buyer, or Back-Up Buyer, as applicable, with

respect to the Purchased Assets), on or prior to the Closing Date, all Liens and Claims, and other interests of any kind or nature whatsoever existing as to the Sellers with respect to the Purchased Assets have been unconditionally released and terminated, and that the transfers described in this Order have been effected, and (b) shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

34.    Each and every federal, state, and local governmental agency or department is authorized to accept any and all documents and instruments necessary or appropriate to consummate the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

35.    To the fullest extent permissible under applicable law, except as otherwise provided in the Sale Agreements or this Order, the Debtors irrevocably and unconditionally release, remise, and forever discharge the Buyer (or the Back-Up Buyer as applicable), solely in its capacity as the purchaser of the Purchased Assets and not in any other capacity, from any and all suits, legal or administrative proceedings, claims, demands, damages, losses, costs, liabilities, interest or causes of action whatsoever, at law or in equity, known or unknown, which the Debtors and the estates might now have or subsequently may have as of the Closing Date, based on, relating to or arising out of the Sale Agreements, the Sale Transaction and this Order, and the

ownership, use or operation of the Purchased Assets, other than those obligations that expressly survive the Closing under the Sale Agreements. The foregoing provisions shall have no effect whatsoever with regard to: (a) the Debtors' rights and defenses regarding the proof(s) of claim filed by HPI, (b) claims subject of the pending adversary proceedings: (i) Adv. Pro. No. 15-01378-JKO, and (ii) Adv. Pro. No. 15-01380-JKO; and (c) any other claims or causes of action that may exist against HPI solely in its capacity as the holder of loan and security documents regarding the Debtors.

36.    The transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, are undertaken by the Buyer (or Back-Up Buyer as applicable) without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and were negotiated by the parties at arm's length, and accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, shall not affect the validity of such transactions, unless such authorization is duly stayed pending such appeal.  The Buyer (or Back-Up Buyer as applicable) is a purchaser in good faith and the Buyer (or Back-Up Buyer as applicable) and its agents, officials, personnel, representatives, and advisors are entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

37.    The Buyer (or Back-Up Buyer as applicable) has given fair and substantial consideration under the Sale Agreements for the benefit of the Debtors and their estates and creditors.  The consideration provided by the Buyer (or Back-Up Buyer as applicable) for the Purchased Assets under the Sale Agreements is greater than the liquidation value of the Purchased Assets, and shall be deemed to constitute reasonably equivalent value and fair

consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

38.    The consideration provided by the Buyer (or the Back-Up Buyer as applicable) for the Purchased Assets under the Sale Agreements is fair and reasonable, and the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, may not be avoided under section 363(n) of the Bankruptcy Code.

### Related Relief

39.    Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.  The Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order, and may, subject to the terms and conditions of the Sale Agreements, and in their discretion and without further delay, close the transactions contemplated under the Sale Agreements and take any action and perform any act authorized under this Order.

40.    The Buyer (or Back-Up Buyer as applicable) shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Sale Agreements or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; provided, however, that this Court shall retain jurisdiction over any and all disputes with respect thereto.

41.    The terms and provisions of the Sale Agreements and this Order shall be binding in all respects upon the Debtors, their affiliates, estates, and creditors, all holders of equity interests of the Debtors, all holders of any claims, all counterparties to each Assumed

Contract, all interested parties in the Debtors' Chapter 11 Cases and their respective successors and assigns, the Buyer (or Back-Up Buyer as applicable) and its successors and permitted assigns and designees, and any trustees, if any subsequently appointed in the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases. The terms of this Order and the Sale Agreements shall inure to the benefit of the Debtors, their estates and creditors, the Buyer (and the Back-Up Buyer as applicable), and each of their respective successors and permitted assigns and designees, and each of the foregoing's respective agents, officials, personnel, representatives, and advisors.

42.     No law of any state or other jurisdiction relating to bulk sales or similar laws shall apply in any way to the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, the Motion and/or this Order.

43.     The failure to specifically include any particular provision of the Sale Agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreements be authorized and approved in its entirety.

44.     The Sale Agreements and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.  Any such proposed modification, amendment, or supplement that does have a material adverse effect on the Debtors' estates shall be subject to further order of the Court, on five (5) days' prior written notice.

45.     The provisions of this Order are non-severable and mutually dependent on each other.

46.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

47.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion or the transactions contemplated by the Sale Agreements, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, the terms of this Order shall govern.

48.     This Court retains jurisdiction to enforce and implement the terms and provisions of this Order, the Sale Agreements, all ancillary documents, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Buyer (or Back-Up Buyer as applicable), (b) resolve any disputes arising under or related to the Sale Agreements, (c) interpret, implement, and enforce the provisions of this Order, and (d) protect the Buyer (or Back-Up Buyer as applicable) against the assertion of any Lien and Claim, or other interest, of any kind or nature whatsoever, in and against the Purchased Assets.

49.     Notwithstanding anything herein to the contrary, the implementation of this Order and the consummation of the Sale Transaction are subject to approval by Judge Huck in the action styled *United States of America v. Karen Kallen-Zury*, Case No. 12-cv-23601-HUCK pending in the United States District Court (the "District Court"). The Debtors are hereby directed to seek immediate approval of the Sale Transaction in the District Court based on the findings and rulings hereinabove, and to report the results thereof to this Court.

# # #

**Submitted by:**

Grace E. Robson, Esq.

Markowitz, Ringel, Trusty & Hartog, P.A.

*Counsel to the Debtors-in-Possession*

101 NE Third Avenue, Suite 1210

Fort Lauderdale, Florida 33301

Tel: (954) 767-0030

**Copies to:**

Grace E. Robson, Esq.

*(Attorney Robson is directed to mail a copy of this Order to all interested parties and to file a certificate of service).*

586265.4

## <u>EXHIBIT A</u>
## (Legal Description of Real Property)

**<u>PARCEL A:</u>**
Lots 1 through 12, Block 45, HOLLYWOOD HILLS, according to the Plat thereof, as recorded in Plat Book 6, Page 22 of the Public Records of Broward County, Florida.

TOGETHER WITH:

**<u>PARCEL B:</u>**
Lessee's interest under that certain lease by and between the City of Hollywood and High Ridge Management Corp., a Florida Corporation, for the following described property:

That portion of Garfield Street right-of-way lying south of and adjacent to Block 45 of Hollywood Hills, according to the Plat thereof, recorded in Plat Book 6, Page 22, of the Public Records of Broward County, Florida being more particularly described as follows:

> Said portion of Garfield Street bounded on the north by the south line of said Block 45, bounded on the south by a line 18.0 feet south of and parallel with the South line of said Block 45, bounded on the west by a line of 20.0 feet east of and parallel with the southerly extension of the west line of said Block 45 and bounded on the east by a line 79.0 feet west of and parallel with the southerly extension of the east line of said Block 45.